IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUSAN C. TILLEY, | : | |
| | : | No. 3:02CV1312 (JCH) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| ANIXTER INCORPORATED, et al. | : | November 10, 2004 |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO NON-PARTY
DEPONENT'S MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER**

The Motion to Quash and/or for Protective Order of the non-party deponent Timothy Broderick (the "witness") should be denied. Among the many fatal problems with the motion are the following:

- The witness (or counsel for the witness) has failed to "in good faith confer[] or attempt[] to confer with other affected parties in an effort to resolve the dispute without court action," as required by Rule 26(c) of the Federal Rules of Civil Procedure. As explained further below, had such discussions occurred, they ought to have resolved this dispute without Court intervention.

- The witness' claim that the information sought is protected from discovery is wrong. The individuals whose privacy interests are at stake – David and Susan Tilley, the parties in the underlying divorce and support enforcement proceedings – have no objection to this discovery and have explicitly waived any right to confidentiality. In addition, the federal and state statutory provisions cited by the witness as the grounds for his claims of confidentiality are inapplicable to the request for information and documentation by Defendants Anixter Incorporated and Pacer/Anixter, a Division of Anixter Incorporated ("Corporate Defendants").

- Contrary to the witness' claims, the Corporate Defendants' demand does not impose an undue burden because, among other things, to help resolve this dispute the Corporate Defendants are prepared to limit their demand to a narrow set of documentation and information, consisting essentially of Ms. Tilley's communications to Support Enforcement regarding the claims she is raising in this case, as described further below. This request is not only narrowly tailored, it seeks evidence that is undeniably important and relevant – to, *inter alia*, Corporate Defendants' defenses based on the statute of limitations and prior contractual release.

Accordingly, as further explained below, the witness' motion should be denied.

### I. THE WITNESS' COUNSEL FAILED TO CONFER WITH THE CORPORATE DEFENDANTS IN A GOOD FAITH EFFORT TO RESOLVE THIS MATTER WITHOUT COURT INTERVENTION, AS REQUIRED BY RULE 26(c).

The witness has failed to satisfy the certification and conferral requirements of Rule 26(c) ("Protective Orders"), and for this reason alone his motion should be denied. Rule 26(c) requires that a motion for a protective order (including requests "that the disclosure or discovery not be had") be "accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action . . . ." Fed. R. Civ. P. 26(c) (emphasis added). The witness' motion is unaccompanied by any such certification, and for good reason: Counsel for the witness made no attempt to confer with the undersigned in a good faith "effort to resolve the dispute without court action," as required by the rule.

Following the issuance and service of the subpoena by the Corporate Defendants on October 26, 2004, see Subpoena dated 10/26/04 (Tab A hereto), the undersigned heard nothing from the witness or his counsel until 4:00 p.m. on October 29, 2004 – Friday afternoon after the undersigned had left the office. At that time, the secretary of the undersigned received the service copy of Mr. Broderick's motion papers in a facsimile from Assistant Attorney General Nagy. That facsimile announced peremptorily: "In view of this motion, Mr. Broderick will not appear on Tuesday November 2, 2004 [the time called for by the subpoena]." Facsimile from Assistant Attorney General Robert Nagy to Steven D. Ecker, Esq., and James R. Smart, Esq., dated 10/29/04 (Tab B hereto). Although the undersigned (without having seen the faxed motion papers) attempted to confer with Attorney Nagy at that time, Mr. Nagy indicated that he was insistent on filing his motion to quash and was unwilling to negotiate or seek a compromise in

2

any respect. This conduct clearly fails to satisfy Rule 26(c)'s requirement that the "movant . . . in good faith confer[] or attempt[] to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c).

Had counsel for Mr. Broderick undertaken to confer with the affected parties, as required by Rule 26(c), he would have learned that the individuals whose privacy interests are at stake – Susan Tilley and David Tilley, the parties to the underlying divorce case and Support Enforcement proceedings – have no objection to the subpoena or to disclosure of the information sought by the subpoena and waive any confidentiality rights that they may have in regard to such information. This was explicitly confirmed to the undersigned by counsel for Mr. and Ms. Tilley in telephone conversations shortly after the witness served his motion.[1] As described further below, this waiver dooms the motion to quash.

Moreover, had counsel for Mr. Broderick bothered to confer with the undersigned in conformance with Rule 26(c), he would have learned that the Corporate Defendants are prepared to substantially limit their demand for documents and information. There is nothing

---

[1] In telephone conversations with the undersigned on November 1, 2004, counsel for Ms. and Mr. Tilley explicitly confirmed on behalf of their clients that they have no objection to the subpoena or to disclosure of the information sought by the subpoena and that they waive any confidentiality rights that they may have in regard to such information. Even before this communication, Ms. Tilley had implicitly waived any such confidentiality rights, insofar as she had: (1) identified a support enforcement officer as a trial witness in this action; see Plaintiff's Answer Corporate Defendants' First Set of Interrogatories, dated September 2, 2004, Response # 7 (Tab C hereto) (although Plaintiff had identified Support Enforcement Officer George Fan, the supervisor for Mr. Fan, as well as Mr. Broderick and Mr. Fan himself, have all told the undersigned that Mr. Broderick is the officer currently assigned to the Tilley case); (2) identified documentation from Support Enforcement as evidence supposedly supporting her core claims see Plaintiff's Reply to Corporate Defendant's First Set of Requests for Production, dated 9/2/04, Response # 7-9 (Tab D hereto) (identifying Bates # 214, Facsimile from Support Enforcement dated 4/26/00 (Tab E hereto)); and (3) disclosed in discovery numerous written communications between herself and Support Enforcement Services; see, e.g., Ms. Tilley's correspondence with Support Enforcement, various dates (Tab F hereto).

inappropriate about Plaintiff's original requests, as set forth in the subpoena.[2] However, in an effort to avoid the need for Court intervention, the Corporate Defendants would have been prepared to substantially limit their demand for information and documents. Specifically, they would have been willing – and they currently remain willing – to narrow their demand to information and documentation constituting or reflecting communications from Ms. Tilley to Support Enforcement Services concerning: (1) any requests by her for review or modification of the support orders in the underlying divorce case, (2) the income earned by or compensation paid to Mr. Tilley, and (3) any allegations of fraudulent or deceitful conduct or shielding of Mr. Tilley's income by Mr. Tilley's employer(s), including Pacer Electronics, Anixter Incorporated, or Michael Rosa. By any accounting, this demand is not unreasonable or over-broad, and, in light of the statute of limitations and release issues discussed in Part III, below, it targets extremely relevant and important information.

In short, had counsel for the witness made a good faith effort to confer with the undersigned about the subpoena and tried to work this matter out as the rules require, this dispute probably could have been resolved without the Court. Having failed to satisfy the conferral requirement of Rule 26(c), the witness' motion should be denied. See, e.g., Palumbo v. Shulman, 1998 WL 635534, *2, No. 97 CIV4314 (S.D.N.Y. Sept. 16, 1998); Rosen v. Tabby,

---

[2] In light of Plaintiff's claims that Defendants caused her emotional distress through payment of improperly low support payments due to Defendants' alleged shielding of some of Mr. Tilley's income, starting with their divorce proceeding in 1994; see, e.g., Complaint (Pacer Docket Doc. # 1), ¶¶ 15-18, 25-29; given her assertion that documentation from Support Enforcement supports her core claims; see Plaintiff's Reply to Corporate Defendant's First Set of Requests for Production, dated 9/2/04, Response # 7-9 (Tab D hereto) (identifying Bates # 214, Facsimile from Support Enforcement dated 4/26/00 (Tab E hereto)); in light of the statute of limitations and release issues discussed in Part III, below; and in light of Plaintiff's disclosure of a Support Enforcement Officer as a trial witness, as discussed in the previous footnote, the demands set forth in the subpoena are fully justified.

4

1996 WL 636158, *2, No. 95-CV2968 (E.D.Pa. Oct. 29, 1996); <u>Black & Veatch International Co. v. Wartsila NSD North America, Inc.</u>, 1999 WL 79625, No. Civ. A. 97-2556 (D.Kan. Feb. 11, 1999).

II.  **THE CONFIDENTIALITY PROVISIONS RELIED UPON BY THE WITNESS ARE NO OBSTACLE TO THE DISCOVERY SOUGHT BY CORPORATE DEFENDANTS.**

According to the witness, the "most important" basis for his motion to quash is "that the information and documents sought are [supposedly] protected against disclosure by controlling state and federal law." Witness Mem., 10/29/02. However, the truth is that neither the state nor the federal provisions cited by the witness bars disclosure of the information sought by Corporate Defendants.

The federal provision relied upon by the witness, 42 U.S.C. § 654 (26), is clearly no obstacle to production of the material sought by Corporate Defendants. That provision requires "safeguards . . . to protect the <u>privacy rights of the parties</u>." 42 U.S.C. § 654(26) (emphasis added). Any safeguards required by this provision are inapplicable here, because, as noted in Part I, the "parties" to the underlying divorce and support enforcement proceedings have explicitly consented to the witness' production of the information and documents sought by Corporate Defendants's subpoena. Had counsel for the witness bothered to confer with the undersigned before completing the Motion to Quash, counsel for the "parties" could have been quickly consulted and this non-issue could have been deflated without judicial intervention.[3]

The state confidentiality provision supposedly passed in response to the foregoing federal

---

[3] The witness also cites a provision of the Internal Revenue Code, 26 U.S.C. § 6103(p)(4), claiming that this provision also bars disclosure of the information and documents sought by Corporate Defendants. Witness Mem. 10/29/04 at 3-4. Once again, this provision is inapplicable here. Insofar as Corporate Defendants are willing to narrow the subpoena's focus, to the exclusion of any information produced by the IRS, this provision is no obstacle.

5

requirement of "safeguards . . . to protect the privacy rights of the parties," 42 U.S.C. § 654(26) (emphasis added), is also not an obstacle to the discovery sought by the Corporate Defendants. Witness Mem. 10/29/03 at 2-3. Even if this state provision, Conn. Gen. Stat. § 17b-90(b), were nominally applicable, it would not bar the disclosure of the communications of Ms. Tilley that are sought by Corporate Defendants insofar as both Mr. and Ms. Tilley have consented to that disclosure. Morever, by its terms this confidentiality provision is applicable only to information regarding participation in programs of the Department of Social Services; see Conn. Gen. Stat. § 17b-90(b);[4] it makes no reference to the Superior Court, the Judicial Branch, or their Support Enforcement Division, and it therefore has no application to information submitted to that office. Accordingly, the provision is no bar to the disclosure of the limited documentation and information sought by Corporate Defendants.

Finally, if there were any residual confidentiality concerns regarding the documentation and information sought by the Corporate Defendants, the witness could declare such material "Confidential" and bring it within the scope of the Stipulated Protective Order to which the parties have agreed (which is being submitted to the Court concurrently with this filing). This readily available means of addressing the asserted confidentiality concerns is yet another reason to deny the motion to quash.

---

[4] Conn. Gen. Stat. § 17b-90(b) provides that: "No person shall . . . disclose . . . any information concerning . . . persons participating in a program administered by said department [the Department of Social Services.]" Conn. Gen. Stat. § 17b-90(b) (emphasis added). The provision makes absolutely no reference to the Superior Court's Support Enforcement Services.

### III. THE CORPORATE DEFENDANTS' DEMAND FOR INFORMATION AND DOCUMENTATION DOES NOT PLACE AN UNDUE BURDEN ON THE WITNESS OR HIS EMPLOYER.

The witness also claims that the subpoena should be quashed because it supposedly places an undue burden on the witness and his employer, the Superior Court's Support Enforcement Services division. Witness Mem. 10/29/04 at 5-6. This assertion is also unavailing. As noted in Part I, Corporate Defendants' full set of requests, as set forth in the subpoena, are entirely appropriate under the circumstances of this case. Certainly Corporate Defendants had no way to know that such requests would be understood to be "extremely broad," as asserted by the witness. Witness Mem. 10/29/04 at 6. In any event, any such concern is simply obviated by Corporate Defendants' willingness to narrow its demand to information and documentation constituting or reflecting communications from Ms. Tilley to Support Enforcement Services concerning: (1) any requests by her for review or modification of the support orders in the underlying divorce case, (2) the income earned by or compensation paid to Mr. Tilley, and (3) any allegations of fraudulent or deceitful conduct or shielding of Mr. Tilley's income by Mr. Tilley's employer(s), including Pacer Electronics, Anixter Incorporated, or Michael Rosa. As thus limited, Corporate Defendants' demand is anything but over-broad.

Not only is the information and documentation sought quite narrow, its relevance cannot be seriously questioned. Ms. Tilley claims to have suffered emotional distress as the result of receiving too little child support due to Corporate Defendants' alleged shielding of Mr. Tilley's compensation. Complaint (Pacer Docket Doc. # 1), ¶¶ 15-18, 25-29. The Corporate Defendants have asserted defenses based on, among other things, the three-year statute of limitations, Conn. Gen. Stat. § 52-577, and Ms. Tilley's release of this same claim in the settlement of her June 1998 action against Anixter Incorporated. (Corporate Defendants have also asserted a

7

counterclaim for breach of contract based on the 1998 settlement.) See Corporate Defendants' Amended Answer and Counterclaim, dated 6/3/04, 3rd and 5th Affirmative Defenses and Counterclaim, (Pacer Docket Doc. # 39). The evidence that the Corporate Defendants seek from Support Enforcement Services goes directly to these central issues.

In addition, Defendants are unable to obtain the targeted documentation and information from any other source. Documentation gathered from Ms. Tilley indicates that during the spring and summer of 1998 (around the time of her settlement of the prior action and long before the window of time left open by the applicable statute of limitations) she communicated extensively with Support Enforcement Services about her allegations of diversion of Mr. Tilley's income by his employer. See, e.g., Letter from Susan Tilley to Support Enforcement Services dated 7/9/98 ("His employer is masking his income, I am positive of it") (Tab F hereto); see also Correspondence dated 6/2/98 and 5/12/98 (Tab F hereto). However, Ms. Tilley has been unable or unwilling to confirm certain aspects of her dealings with Support Enforcement around that time or to provide a complete set of documentation concerning her communications. See, e.g., Deposition Testimony of Susan Tilley, 10/6/04 at pp. 1-7, 38-39 (Tab G hereto) (Ms. Tilley unable to recall whether she had prior communications with Support Enforcement regarding the allegations of her 7/9/98 letter, whether she had delivered that letter, or what attachments were originally included with that letter). Accordingly, discovery from Support Enforcement is essential not only because the desired information is extremely relevant and important, but also because it cannot be obtained from any other source.

In light of these factors, the demands of the subpoena – as limited by the voluntary narrowing described above – are hardly unduly burdensome.

IV. **THE TIMING OF COMPLIANCE WITH THE SUBPOENA IS A NON-ISSUE.**

The final issue raised by the witness, the allegedly unreasonable time for compliance granted by the subpoena, see Witness Mot.10/29/04 at 1, and Witness Mem.10/29/04 at 6, is simply a red-herring. Although Corporate Defendants submit that the six days allowed for compliance was sufficient, the undersigned would have been ready to arrange for compliance at a mutually convenient time, had he been consulted by counsel for the witness as required by Rule 26(c). Looking ahead, the Corporate Defendants will be happy to depose the witness and accept his production at whatever time the Court deems appropriate.

For the foregoing reasons, the non-party deponent's Motion to Quash Subpoena and/or for Protective Order should be denied and the witness should be ordered to appear for his deposition and produce the documents sought by the Corporate Defendants.

Respectfully submitted,

DEFENDANTS

ANIXTER INC. and PACER/ANIXTER, A DIVISION OF ANIXTER INC.

By: _____
James R. Smart (ct20982)
Steven D. Ecker (ct03762)
Cowdery, Ecker & Murphy L.L.C.
750 Main Street
Hartford, CT 06103
(860) 278-5555
(860) 249-0012 Fax
E-mail: jsmart@cemlaw.com

-- Their Attorneys