Exhibit G

```
 1              UNITED STATES DISTRICT COURT          COPY
                     DISTRICT COURT
 2

 3    ------------------------X    CIVIL ACTION NO.
      SUSAN C. TILLEY,         |   3:02CV1312(JCH)
 4              Plaintiff,     |
                               |
 5         vs.                 |   October 6, 2004
                               |
 6    ANIXTER INCORPORATED,    |
      PACER/ANIXTER INC. and   |   Volume II
 7    DAVID G. TILLEY,         |
                Defendants.    |
 8    ------------------------X

 9

10

11       CONTINUED DEPOSITION of SUSAN C. TILLEY

12

13
         Taken before Elzbieta A. Sirois, RPR,
14       LSR 350, a Court Reporter and Notary
         Public within and for the State of
15       Connecticut, pursuant to Notice and the
         Federal Rules of Civil Procedure, at the
16       offices of Cowdery, Ecker & Murphy, L.L.C,
         750 Main Street, Hartford, Connecticut on
17       October 6, 2004, commencing at 11:47 a.m.

18

19

20

21
                  FALZARANO COURT REPORTERS
22                 117 North Saddle Ridge
                  West Simsbury, CT 06092
23                     860-651-0258

24

25

                  ─── Falzarano Court Reporters ───
```

```
 1              (Deposition commenced:  11:47 a.m.)
 2
 3         SUSAN C. TILLEY, Deponent, of
 4    14 Pillsbury Hill, Vernon, Connecticut,
 5    being first duly sworn by the Notary
 6    Public, was examined and testified, on her
 7    oath, as follows:
 8
 9              DIRECT EXAMINATION
10
11  BY MR. SMART:
12       Q    Good morning, Ms. Tilley.
13       A    Good morning.
14       Q    How are you?
15       A    Good, thank you.
16       Q    I just wanted to remind you that we should
17  have the same ground rules in place that we had
18  last time and just to remind you, specifically
19  please, to give audible answers to my questions and
20  please keep your voice up so that the reporter can
21  take down your answers.
22       A    Okay.
23       Q    I'd like to ask you some questions about
24  how long you've been living with this issue, and to
25  start, I'd like to mark this exhibit, please.
```

```
 1
 2                (Defendants' Exhibit No. 11:
 3                Marked for Identification.)
 4
 5  BY MR. SMART:
 6      Q    Showing you what has been marked as
 7  Plaintiff's Exhibit 11.  Is that a letter from you?
 8      A    Yes.  Yes, it is.
 9           MR. MUCHINSKY:  You gave me two.  Are
10           there two here?
11           MR. SMART:  No.
12      Q    Is that a letter that you sent to the
13  Review and Adjustment Unit of Support Enforcement
14  Division on July 9, 1998?
15      A    I have to read it.
16           MR. SMART:  Can we read back the
17           pending question, please.
18
19           (Record read by the
20           Court Reporter.)
21
22      A    I'm not sure.  I wrote a lot of letters.
23  Some of them got sent and some weren't.  So I don't
24  know if this was in my file or something that they
25  received from Support Enforcement.  I, I did write
```

```
 1   letters.  Some of them were never sent and some
 2   were.  So, I'm not sure.
 3        Q    This is a letter that you produced to me.
 4   Is it not?
 5        A    If it was in my file, yes.  It doesn't
 6   mean I sent it to this person because I wrote a lot
 7   of letters, but they weren't always sent out.
 8        Q    So what you're saying is you're not sure
 9   whether you sent it?
10        A    Yes.
11        Q    But you did write it?
12        A    Yes.
13        Q    It was something that you wrote in July of
14   1998?
15        A    That's what the date says.
16        Q    In the document you state that, with
17   reference to David Tilley, that his employer is
18   hiding his income; is that right?
19        A    Yes.  It says that -- I don't know if --
20   it says, it says my child support has been based on
21   his fraudulent misrepresentation of his wages.
22        Q    Okay.  And that's a reference to the
23   allegations that you're making about the alleged
24   misrepresentations at the time of the trial, at the
25   time of the divorce rather regarding Mr. Tilley's
```

```
 1   income?
 2        A    Yes, I believe so.
 3        Q    Just drawing your attention to the page
 4   marked 1689, in the second full paragraph there.
 5   Perhaps that will refresh your recollection on the
 6   question of whether you were writing at this time
 7   about the diversion of -- the alleged diversion of
 8   income from David to Terri Tilley?
 9        A    And what are you referring to?
10        Q    If you see the second full paragraph on
11   page 1689?
12        A    Which paragraph?
13        Q    The one that starts, Based on the facts
14   and the folders.
15        A    You want to know what I'm referring to in
16   that paragraph?
17        Q    Yeah.  In that paragraph you're referring
18   to the allegations that you're making in this case
19   about the alleged diversion of income by the
20   corporate defendants from David to Terri, right?
21        A    Yes, and also from his previous employer
22   IMS.
23        Q    Having now looked briefly at the letter,
24   does that refresh your recollection as to whether
25   or not you sent this to Support Enforcement?
```

```
 1   BY MR. SMART:
 2       Q    While my paralegal is looking through the
 3   documents to try to find that tax information so we
 4   can talk further about that, let's table that for a
 5   second and move on.  We'll come back to that once
 6   she gets back to us, okay.
 7            So, looking again at Exhibit 11.  And just
 8   a few more questions on this for you.  The letter
 9   says, Dear Ellen at the top.  Do you know who Ellen
10   is?
11       A    No, I don't.  I don't remember who Ellen
12   is.
13       Q    In the first sentence in the letter you
14   said, "Here's the information I said I would send."
15   Does that refresh your recollection as to whether
16   you had conversations with Ellen?
17       A    I probably called Support Enforcement and
18   told them what I needed -- what I wanted from them.
19   And she probably told me to send some information.
20   I don't remember talking to Ellen or that was in
21   1998.
22       Q    When you say, "Here's the information I
23   said I would send," were you referring to some
24   attachments to this letter?
25       A    Did I attach anything to this letter, is
```

```
 1  that what you're asking me?
 2     Q   Yes.  Why don't you tell me that.  Did you
 3  attach anything to the letter?
 4     A   I don't remember.
 5     Q   Just to come back to the question I had
 6  asked you earlier now that we have talked about
 7  Exhibits 13 and 12 as well.  That has refreshed
 8  your recollection as to whether you did send this
 9  letter in Exhibit 11 to Support Enforcement?
10     A   I don't know if I actually sent it.  I
11  wrote a lot of letters to a lot of people trying to
12  get help.  I don't know which ones I sent and which
13  ones I didn't, to be honest with you.
14
15              (Defendants' Exhibit No. 14:
16               Marked for Identification.)
17
18  BY MR. SMART:
19     Q   Showing you now what's been marked as
20  Exhibit 14.  Is this a report by U.S. Search to you
21  responding to your request for information about
22  Susan Tilley?
23     A   About Theresa Tilley.
24     Q   I'm sorry.  About Theresa Tilley?
25     A   Yes, it is.  It's is.  1-800 U.S. Search.
```