## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUSAN C. TILLEY, | : | |
| | : | No. 3:02CV1312 (JCH) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| ANIXTER INCORPORATED, | : | |
| PACER/ANIXTER INC. and | : | |
| DAVID G. TILLEY, | : | APRIL 15, 2005 |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## CORPORATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### Preliminary Statement

Plaintiff's one remaining claim, for intentional infliction of emotional distress, is fatally

flawed. That claim was left hanging by a thread in the Court's earlier ruling that the absolute

privilege afforded communications in a judicial proceeding barred plaintiff's allegations that

defendants deceived the divorce court concerning her ex-husband's compensation. (Dkt. 38).

The Court stopped short of dismissing plaintiff's suit outright because it concluded that her

claims concerning the alleged diversion of compensation by the Corporate Defendants from the

plaintiff's ex-husband to his new wife could conceivably support her intentional infliction cause

of action. This brief demonstrates why summary judgment should be entered against plaintiff on

this last remaining claim, for the following four reasons:

First, plaintiff lacks standing to pursue the remaining claim due to her failure to disclose

it as personal property in her bankruptcy proceeding commenced in June 2000 – almost a year

after she claims to have discovered the existence of the cause of action. Complaint, ¶ 15

(alleging discovery of Corporate Defendants' supposed payroll diversion from ex-husband, defendant David Tilley, to new wife, Terri Tilley).[1]  Because of that failure, under well-established precedent, the claim remains the property of the bankruptcy estate, and Ms. Tilley lacks standing to prosecute this case.  See, e.g., Corell v. Equifax Check Services, Inc., 234 B.R. 8, 10 (D. Conn. 1997) (Arterton, J.); Rosenshein v. Kleban, 918 F. Supp. 98, 102-03 (S.D.N.Y. 1996).  In addition, due to that same omission, plaintiff's claim is also barred by judicial estoppel.  See, e.g., id. at 104-05.

    Second, plaintiff's claim is barred by the statute of limitations.  Notwithstanding plaintiff's allegation that she first learned of the claimed shielding of David Tilley's income in August 1999, Complaint, ¶ 15, plaintiff in fact indisputably was aware of the claim during the period from June 1998 through June 1999 – more than three years before the July 30, 2002 filing of the instant action.  For example, in July 1998, Ms. Tilley drafted a letter addressed to the Support Enforcement Unit of the Superior Court asserting that "His [her ex-husband's] employer [Pacer Electronics, Inc.] is masking his income, I am positive of it."  S. Tilley Letter to Support Enforcement, 7/9/98 (emphasis added).  Just a short while later she called Support Enforcement to report that "RESP[ONDENT DAVID TILLEY] AND EMPLOYER . . . PACER . . . ARE CONSPIRING TO DIVERT INCOME BY PAYING RESP[ONDENT DAVID TILLEY'S] CURRENT SPOUSE."  Support Enforcement Case Note, 12/1/98, Ex. 14 to Affidavit of Timothy Broderick, 2/10/05.  Connecticut law prescribes a three-year limitations period for claims of intentional infliction of emotional distress.  Conn. Gen. Stat. § 52-577.  Because

---

[1] In fact, as shown below at pp. 5-8, 10-13, plaintiff was actually aware of the existence of these claims much earlier.  For purposes of this argument, however, summary judgment must be entered even if plaintiff's allegations are taken as true.

plaintiff indisputably knew the basis of her claims more than three years before she brought suit, her action is untimely.

Third, the action is also barred by a general release signed by plaintiff on June 17, 1998. That release was given in return for a substantial payment to plaintiff by Pacer Electronics, Inc. ("Pacer") and Anixter International, Inc. ("Anixter"), as part of the settlement of plaintiff's previous lawsuit brought against these entities and others. Rittenband/Deluco Dep. at 22, 29; Release, 6/17/98. The facts establish that plaintiff was aware of her claim about Pacer's alleged diversion of compensation by Pacer from David's payroll to Terri's, in order to reduce David's child support obligations, in advance of the filing of that June 1998 lawsuit. Rittenband/Deluco Dep. at 31. Indeed, according to plaintiff's own attorney at the time, that precise claim constituted the very basis for the 1998 lawsuit. Id. at 23-26, 34-35, 50-52. Accordingly, in signing the June 17, 1998 release, Ms. Tilley released Pacer and Anixter from that claim. Id. at 29, 35, 50-52.

Fourth, discovery has confirmed that plaintiff's remaining claim, in its entirety, is non-actionable due to a combination of the common law privilege for communications in a judicial proceeding and a lack of causation. As noted, in response to an earlier motion for judgment on the pleadings, this Court held that plaintiff's claims regarding receipt of a low support award due to supposed misrepresentations to the divorce court about Mr. Tilley's earnings were barred by the privilege. (Dkt. 38) However, in response to defendants' argument that the alleged diversion of income from David to Terri lacked a causal connection to plaintiff's asserted harm, the Court sustained plaintiff's claim at that early stage because the pleadings could be read to "allege[] that, as a result of learning about the falsification of the payroll records, [plaintiff] suffered severe

3

emotional distress." (Dkt. 38 at 8). The Court stated that, "While it remains to be seen if the plaintiff can prove facts in support of such a claim . . . th[at] issue [is] not before the court today." (Dkt. 38 at 8). With discovery complete, it is now apparent that plaintiff cannot prove facts in support of such a claim because her own testimony confirms that her alleged emotional distress arose solely from financial pressures due to her supposedly low support award. S. Tilley Dep. 9/28/04 at 57-59, 66-70.

Accordingly, as explained further below, judgment should enter in favor of Anixter Inc. and Pacer/Anixter, a Division of Anixter Inc. (the "Corporate Defendants").

## STATEMENT OF FACTS

There is no genuine dispute as to the following material facts.

1. **The Tilleys' Divorce and Mr. Tilley's Employment with Pacer**

In 1992, Susan Tilley filed a divorce action in Connecticut Superior Court, seeking a dissolution of her marriage to David Tilley. Ex. 8,[2] Memorandum of Decision, Tilley v. Tilley, FA 92-0513362S (Conn. Super., Family Div., Oct. 18, 1994) at 1, 2, Tab 1.[3] The Tilleys, who had married in 1984, had three young children at the time. Id.

As the divorce action was pending, David Tilley began to work for Pacer out of Charlotte, North Carolina. Id. at 3; D. Tilley Dep. at 7-8, Tab 2 . At the time that Mr. Tilley joined Pacer, and for several years thereafter, Michael Rosa, the President and CEO of the company, was Mr. Tilley's boss. Ex. 8, Memorandum of Decision, Tilley v. Tilley, FA 92-0513362S (Conn. Super.,

---

[2] References to "Ex. __" refer to the exhibits marked by the Corporate Defendants during depositions in this matter, unless otherwise indicated.

[3] Citations to "Tab __" refer to the attachments to Corporate Defendants' Local Rule 56(a)(1) Statement submitted herewith, unless otherwise indicated.

Family Div., Oct. 18, 1994) at 1, Tab 1; D. Tilley Dep. at 23, Tab 2.  David Tilley's girlfriend, and later wife, Terri Tilley (maiden name Terri Stevenson) also worked at Pacer and its successor entity, defendant Anixter Inc.  Ex. 8, Memorandum of Decision, <u>Tilley v. Tilley</u>, FA 92-0513362S (Conn. Super., Family Div., Oct. 18, 1994) at 2, 5-6, Tab 1; D. Tilley Dep. at 30, Tab 2.  During the divorce proceeding, both Mr. Tilley and Mr. Rosa testified in the Superior Court regarding, among other things, Mr. Tilley's compensation at Pacer.  Ex. 8, Memorandum of Decision, <u>Tilley v. Tilley</u>, FA 92-0513362S (Conn. Super., Family Div., Oct. 18, 1994) at 3, 5, Tab 1.

On October 18, 1994, the Superior Court issued a final judgment of dissolution, dissolving the marriage of Susan and David Tilley.  <u>Id.</u> at 1.  Among the terms of the divorce were the requirements that Mr. Tilley pay plaintiff $100 per week in alimony for five years and child support in the amount of $260 per week, for a total of $360 per week.  <u>Id.</u> at 8-9.  In December 1994, the Superior Court ordered a wage garnishment directing Pacer to garnish David Tilley's wages in the amount of $360 per week to pay plaintiff's support order.  Withholding Order For Support, 12/2/94, Tab 3; Ex. 29, Verified Complaint and Temporary Injunction paperwork, <u>Susan Tilley v. Pacer Electronics, et al</u>, Conn. Sup. Ct., 6/8/98, ¶¶ 10-11, Tab 4.

### 2. Ms. Tilley's First Action Against the Corporate Defendants Based on Alleged Diversion of David's Income to Terri

By May 1998, Susan Tilley believed she was owed an arrearage on her support payments because she had been paid less than the $360 per week ordered by the divorce court, dating back to the initiation of the garnishment.  S. Tilley Dep. 10/6/04 at 25-26, Tab 6; Ex. 13, Letter from S. Tilley to Support Enforcement dated May 12, 1998, Tab 7; Ex. 29, Verified Complaint and Temporary Injunction paperwork, <u>Susan Tilley v. Pacer Electronics, et al</u>, Conn. Sup. Ct., 6/8/98,

¶ 12, Tab 4.  In or about May 1998, Susan Tilley began working with an attorney, Beth

Rittenband (now known as Beth Deluco), seeking assistance in connection with the alleged

arrearage.  Rittenband/Deluco Dep. at 10, 23-24, 58, Tab 9;[4] Ex. 18, Fee Agreement, 5/29/98,

Tab 10.

 Ms. Tilley communicated to Attorney Rittenband that the support payment arrearage had

developed because Pacer, through Michael Rosa, was diverting some of David's compensation to

his new wife, Terri.  Rittenband/Deluco Dep. at 23-26, Tab 9.  Susan had come to the belief that

the arrearage was due to this alleged diversion of income by Pacer from David to Terri because

"she had been researching and following the business and financial goings on and doings of her

ex-husband and her ex-husband's new wife at the time."  Id. at 23.  According to Susan's

communications to her attorney in the May-June 1998 time frame, Pacer's diversion of income

from David to Terri allowed David to take advantage of a provision of North Carolina law that

bars garnishment for family support purposes of more than a certain percentage of the

garnishee's income.  Id. at 34 -35, 50-52 (on cross).

 On the strength of information provided by Susan to her attorney concerning Pacer's

alleged shielding of David's income, Attorney Rittenband prepared a lawsuit against Pacer,

Michael Rosa, and Anixter, among others.  Id. at 26, 11, 55-56; Ex. 29, Verified Complaint and

Temporary Injunction paperwork, Susan Tilley v. Pacer Electronics, et al, Conn. Sup. Ct., 6/8/98,

Tab 4 ("the 1998 Lawsuit").  Based on this information, the complaint filed in June 1998 on

Susan's behalf charged Pacer and Rosa with, among other things, fraudulently violating the

---

[4] Since representing Ms. Tilley, Attorney Rittenband has changed her last name to
Deluco.  To avoid confusion, we refer herein to the transcript of her deposition as the
"Rittenband/Deluco Dep."

divorce court's orders and "willfully and wantonly defraud[ing] plaintiff out of money rightfully due her." Id. at ¶¶ 36-38, 41-44.

Susan claimed in the 1998 Lawsuit – as she claims in the instant matter – that as a result of Pacer and Rosa's fraudulent conduct, she lacked sufficient money to provide for the care and well being of her children or pay for basic living expenses or medical care for her children, that she suffered the loss of her business, and that she sustained severe emotional distress. Id. at ¶¶ 22-26, 31-35, 40, 45.

According to Attorney Rittenband, the foundation of the 1998 Lawsuit was Susan Tilley's claim that Pacer was putting some of David's compensation into Terri's paychecks. Rittenband/Deluco Dep. at 26, 11, Tab. 9; Ex. 29, Verified Complaint and Temporary Injunction paperwork, Susan Tilley v. Pacer Electronics, et al, Conn. Sup. Ct., 6/8/98, Tab 4. Attorney Rittenband believed that her communications with Susan Tilley and the information and documentation that she received from Ms. Tilley provided good grounds for the June 1998 Lawsuit, generally, and specifically, for the underlying claim that Pacer was improperly transferring income from David to Terri in order to avoid David's child support obligations. Rittenband/Deluco Dep. at 55, Tab 9.

Susan Tilley does not now have a good memory regarding the 1998 Lawsuit. She cannot remember whether she gave Attorney Rittenband any documents as background material during the course of her representation. S. Tilley Dep. 10/6/04 at 66, Tab 6. Ms. Tilley also does not recall seeing or reading the 1998 Complaint, notwithstanding that the June 1998 Complaint includes a Verification bearing the signature of "Susan C. Tilley" and stating that Ms. Tilley had read the entire Complaint. Id. at 114, 95-96; and Verified Complaint and Temporary Injunction

paperwork, <u>Susan Tilley v. Pacer Electronics, et al</u>, Conn. Sup. Ct., 6/8/98, Verification page, Tab 4.

Ms. Tilley filed the 1998 Lawsuit against Pacer, Anixter, Michael Rosa et al. on or about June 8, 1998, shortly before the scheduled acquisition of Pacer by Anixter.  Rittenband/Deluco Dep. at 11, 21, 24, Tab 9; Ex. 29, Verified Complaint and Temporary Injunction paperwork, <u>Susan Tilley v. Pacer Electronics, et al</u>, Conn. Sup. Ct., 6/8/98, first page, Tab 4.  Concurrent with the filing of the Verified Complaint, Susan Tilley applied for a temporary injunction to stop the acquisition.  Rittenband/Deluco Dep. at 11-12, 21-22, Tab 9; Ex. 29, Verified Complaint and Temporary Injunction paperwork, <u>Susan Tilley v. Pacer Electronics, et al</u>, Conn. Sup. Ct., 6/8/98, Applic. for Temp. Inj.,Tab 4.  Plaintiff chose this time to sue because of defendants' vulnerability based on their desire to complete the acquisition on a timely basis. Rittenband/Deluco Dep. at 21-23, 28, Tab 9.

In filing the action at that time, Attorney Rittenband was following the lead of her client, Susan Tilley, who had been closely tracking the business and financial affairs of Pacer and Anixter, as well as her ex-husband and her ex-husband's new wife.  <u>Id.</u> at 23.  In fact, counsel for Pacer and Anixter advised Attorney Rittenband that plaintiff had indeed caught them at a vulnerable time, and the defendants quickly settled the matter with a $10,000 payment to plaintiff.  <u>Id.</u> at 22, 29; Ex. 30, Release, 6/17/98, Tab 11.

### 3.   <u>The June 1998 Release</u>

In return for the settlement payment, Ms. Tilley released the defendants from her claims, including any claims concerning alleged masking of David's income through transfer to Terri.

8

Rittenband/Deluco Dep. at 29, Tab 9. That Release, which covered Pacer and Anixter, provided for release of:

> all debts, obligations, suits, actions, causes of actions, trespasses, variances, judgments, extents, executions, damages, claims or demands, in law or in equity, which against [Pacer, Anixter, et al.], the Releasor [Susan Tilley] ever had, now has or hereafter can, shall, or may have, for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these Presents.
>    More particularly all claims or demands in law or equity arising or asserted in or in connection with [the action then pending against Pacer, Anixter, Rosa, et al., in Superior Court.]

Ex. 30, Release, 6/17/98, Tab 11.

Significantly, according to counsel for Susan Tilley at the time, this release covered the claim that Pacer had shielded David's income by shifting pay from David to Terri, which, according to her, was the basis of the 1998 Lawsuit. Rittenband/Deluco Dep. at 34-35, 50-52 (on cross), Tab 9. Susan Tilley herself acknowledges that the language of the Release provides for the release of Pacer and Anixter from all claims that she had against them at the time of her signing the Release. S. Tilley Dep. 10/6/04 at 111, Tab 6. In this regard, it bears emphasis that prior to signing the Release, Susan Tilley had shared with Attorney Rittenband information about her allegation that Pacer had shifted income rightly payable to David and paid it instead to Terri Tilley, and about her allegation that David Tilley and Michael Rosa had misrepresented David's income during the divorce proceeding. Rittenband/Deluco Dep. at 31, Tab 9.

The June 17, 1998 Release contained an explicit exception as to any claims by plaintiff against David Tilley personally. Ex. 30, 6/17/98 Release, Tab 11; Rittenband/Deluco Dep. at 37-38, Tab 9. Accordingly, following the settlement of the June 1998 Lawsuit against Pacer, Anixter and Michael Rosa, Ms. Tilley pursued remedies against David in the divorce proceeding,

9

for the alleged shielding of David's income through Pacer's diversion of compensation from David to Terri, as described further below.

### 4.    Ms. Tilley's 1998 Assertions Regarding the Conduct Alleged in this Case

Through additional statements made by Ms. Tilley in 1998 in connection with her continued efforts against David – four years before she filed this matter – Ms. Tilley made very clear her awareness of her claims at issue in the instant case.  On or about July 9, 1998, she drafted a letter addressed to the Review and Adjustment Unit of the Connecticut Support Enforcement Division of the Superior Court regarding her husband and his employer, Pacer/Anixter.  S. Tilley Dep. 10/6/04 at 5-7, Tab 6;  Ex. 11, Letter from Susan Tilley to Support Enforcement Division of Connecticut Superior Court, 7/9/98, Tab 13.[5]  In that July 9, 1998 letter Ms. Tilley stated, "His employer is masking his income, I am positive of it."  Id. (emphasis added).  Ms. Tilley acknowledges that the foregoing statement, made in July 1998, was referring to the same allegations that she makes in the instant case pending in U.S. District Court regarding the Corporate Defendants' alleged hiding of David's compensation through diversion of income from David to Terri.  S. Tilley Dep. 10/6/04 at 7, Tab 6.

In that July 9, 1998 letter Ms. Tilley stated that "[m]y child support has been based on his [David's] fraudulent misrepresentation of his wages for the past 7 years through our separation,

---

[5]  The Judicial Branch of the State of Connecticut maintains a division entitled the Support Enforcement Services division, which, in general, provides assistance to the beneficiaries of child support ordered by a court in dissolution of marriage and other family actions, including matters related to the establishment, enforcement and, in some instances, modification of child support orders.  Affidavit of Timothy Broderick of Support Enforcement Services 2/10/05 at ¶ 2, Tab 12.  At various times, Susan Tilley has communicated with and used the services of Support Enforcement Services in connection with her support award.  Id. at ¶¶ 4, 5.

during and after the final divorce." Ex. 11, Letter from Susan Tilley to Support Enforcement Division of Connecticut Superior Court, 7/9/98 at 1688, Tab 13. Ms. Tilley has acknowledged that the foregoing statement was also a reference to the same allegations that she makes in the instant case. S. Tilley Dep. 10/6/04 at 7, Tab 6.

Similarly, on December 1, 1998, Ms. Tilley called the Support Enforcement Division of Connecticut Superior Court and reported that "RESP[ONDENT DAVID TILLEY] AND EMPLOYER (MIKE ROSA, CEO OF PACER 617-935-8330) ARE CONSPIRING TO DIVERT INCOME BY PAYING RESP[ONDENT DAVID TILLEY'S] CURRENT SPOUSE." Support Enforcement Case Note, 12/1/98, Ex. 14 to Affidavit of Timothy Broderick, 2/10/05, Tab 12. These statements amount to outright assertions of Ms. Tilley's core claim in the present federal action – pre-dating the filing of this case by substantially more than three years, the time limit established by the applicable statute of limitation.

### 5.    Ms. Tilley's Pursuit in the Divorce Action of the Same Claims Pursued Here

In the spring of 1999, through her attorney, Beth Rittenband, Susan Tilley brought directly to family court her claims that Pacer and Mr. Tilley had been conspiring to hide the latter's income by diverting his compensation to his current spouse. On or about April 19, 1999, Attorney Rittenband filed on behalf of Susan Tilley a Motion for Contempt and a Motion for Modification in the dissolution action. Ex. 15, Motion for Contempt and Order to Show Cause, 4/19/99, Tab 14; Ex. 16, Motion for Modification of Orders and Order to Show Cause, 4/19/99, Tab 15; Rittenband/Deluco Dep. at 38-39, 45, Tab 9.

According to Attorney Rittenband, who drafted those April 1999 motions, they sought relief based on the supposed diversion of income by Pacer from David to Terri Tilley.

Rittenband/Deluco Dep. at 45, Tab 9; Ex. 15, Motion for Contempt and Order to Show Cause, 4/19/99, ¶¶ 2, 3, Tab 14; Ex. 16, Motion for Modification of Orders and Order to Show Cause, 4/19/99, ¶ 2(b), Tab 15.[6] At the time that she filed the April 1999 motions for modification and the motion for contempt in the divorce proceeding, Attorney Rittenband believed she had good grounds for the claim that income was being transferred improperly by Pacer from David to Terri to assist in the avoidance of child support obligations, and for the allegation that fraud had been committed at the time of the divorce regarding Mr. Tilley's income at that time. The good grounds consisted of communications with, and information obtained from her client, Susan Tilley. Rittenband/Deluco Dep. at 55-56, Tab 9.

Significantly, Susan Tilley does not remember what Attorney Rittenband was asserting in the April 1999 motions or what she was doing in connection with them. S. Tilley Dep. 10/6/04 at 49, 52, 53, 65, 66, Tab 6 .

That these April 1999 motions asserted the same claims pursued here is underscored by the nature of the discovery sought by Ms. Tilley at that time from the Corporate Defendants. On May 11, 1999, on Susan Tilley's behalf, Attorney Rittenband issued a notice of deposition in support of the April 1999 motions seeking to depose Michael Rosa, CEO of Pacer, and to obtain all payroll, wage and benefit records for both David Tilley and his current spouse, Terri, reflecting all years of David's employment (going back to 1994). Rittenband/Deluco Dep. at 40-41, Tab 9; Ex. 48, Notice of Deposition, 5/11/99, Tab 16. Attorney Rittenband communicated to

---

[6] The April 1999 motions also raised a claim regarding the alleged fraudulent representations during the divorce proceeding regarding the compensation paid by Pacer to Mr. Tilley – again according to the attorney who drafted them. Rittenband/Deluco Dep. at 45-46, Tab 9; Ex. 15, Motion for Contempt and Order to Show Cause, 4/19/99, ¶¶ 2, 3, Tab 14; Ex. 16, Motion for Modification of Orders and Order to Show Cause, 4/19/99, ¶ 2(b), Tab 15.

counsel for Pacer that she was seeking "all wage records of both David and Theresa Tilley, including regular pay, commissions, bonuses, car allowances, benefit plans and anything else that can be considered income for the last five years." Attorney Rittenband stated that this information was "essential" to the April 1999 motions that were currently pending, Rittenband/Deluco Dep. at 42-43, Tab 9; Ex. 50, Letter from Beth Rittenband to Steven Ecker, 6/11/99, Tab 17, because those pending motions asserted that Pacer and Anixter had been improperly diverting David's income to Terri to minimize his child support obligations.

Following service of a subpoena from Attorney Rittenband, which was voluntarily accepted by counsel for Pacer, Pacer provided Attorney Rittenband with extensive documentation regarding the compensation paid to David and Terri Tilley during their employment with Pacer, and changes to that compensation over time. Ex. 51, Letter from Steven Ecker, 7/1/99, Tab 18; Ex. 17, Letter and Subpoena from Beth Rittenband to Steven Ecker, 8/2/99, Tab 19; Ex. 19, Letter from Steven Ecker to Beth Rittenband, 8/18/99, Tab 20; Rittenband/Deluco Dep. at 43-45, 47-48, Tab 9.

Plaintiff identifies her receipt of this material, in August 1999, as the source of her "discovery" of the alleged scheme to conceal David's income through shifting it to Terri. Complaint, ¶ 16. In light of the foregoing facts, plaintiff's suggestion that she thus incidentally stumbled upon her claims in this action for the first time in 1999 is seriously misleading. In fact, her receipt of documents in August 1999 was just one more step in a long series of deliberate, premeditated actions to obtain relief for the very same claims she pursues now, claims that she had been making to various persons, officials and courts since, at the very latest, mid-1998.

6. **Susan Tilley's Loss of Standing to Pursue the Instant Claim through Inadequate Bankruptcy Disclosures**

In June 2000, Susan Tilley filed a voluntary bankruptcy petition in U.S. Bankruptcy Court pursuant to Chapter 7. Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00, Tab 26. Through the inadequate disclosures in her bankruptcy proceeding, Ms. Tilley surrendered her standing to pursue the instant action.

Her bankruptcy was represented to be a "no asset" case. On the very first page of her filing, which was submitted under penalty of perjury, Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00 at 000960, 000939,[7] Tab 26; S. Tilley Dep. 10/6/04 at 117, 118, 127, Tab 6, Ms. Tilley indicated to the Bankruptcy Court and to the trustee appointed to administer her case that "after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors." Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00 at 00959.

She submitted to the Bankruptcy Court and to the bankruptcy estate a schedule purporting to list all her property, yet she omitted any reference to the claims pursued here. S. Tilley Dep. 10/6/04 at 119, Tab 6. The directions on this portion of the Court's pre-prepared form ("Schedule B: Personal Property") instructed her to "list all personal property of the debtor of whatever kind." Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00 at 00963, Tab 26. However, nowhere in her bankruptcy petition did Ms. Tilley disclose that she possessed any claim for intentional infliction of emotional distress – nor any sort of tort claim at all, against anybody. Id. at Schedule B 00963-00965, Tab 26; S. Tilley Dep. 10/6/04 at 119-22, Tab 6. Nor did she

---

[7] The Bates numbering in Exhibit 31, S. Tilley Bankruptcy Petition, 6/8/00, Tab 26, runs as follows: 000959-974, followed by 000927-954, followed by 000958, 955, 956.

supplement or change her list of personal property at any time during the bankruptcy proceeding.
Id. at 124-25.

Although the bankruptcy form for the personal property schedule contained a line explicitly calling for a listing of "[o]ther contingent and unliquidated claims of every nature," Ms. Tilley listed no tort claim there.  Rather, she merely listed a claim arising out of her dissolution proceeding "for back child support," (with a "Current Market Value" of $1), and a "[p]ossible right to tax refund for 1999."  Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00 at 000965, Tab 26; S. Tilley Dep. 10/6/04 at 121, Tab 6.[8]

Significantly, not only did Ms. Tilley have the assistance of bankruptcy counsel in filing her bankruptcy petition, S. Tilley Dep. 10/6/04 at 117, Tab 6, she was also represented during the filing and pendency of the bankruptcy matter by Attorney Robert Muchinsky, her counsel in this matter and in the divorce proceeding.[9]  Id.  Indeed, while the bankruptcy matter was pending,

---

[8]  In keeping with the fact that no emotional distress or other tort claims were disclosed as personal property, Ms. Tilley did not assert any exemption from the estate for any such claims. S. Tilley Dep. 10/6/04 at 126-27, Tab 6; Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00, Schedule C ("Property Claimed as Exempt"), at 000966, Tab 26.  Under the category for exemptions for "Other Contingent and Unliquidated Claims of Every Nature," Ms. Tilley listed claimed exemptions only for her "possible right" to a tax refund for 1999 and her child support claim.  In regard to the latter, Ms. Tilley specified 11 U.S.C. § 522(d)(10)(D) as the "Law Providing [the] Exemption."  Id.  That subsection provides an exemption not for any tort claims, but rather for "the debtor's right to receive . . . alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."  See Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00 at 000966, Tab 26.

[9]  In December 1999, Susan Tilley fired Attorney Rittenband and hired Attorney Robert Muchinsky (who is plaintiff's counsel in the instant matter) instead.  Rittenband/Deluco Dep. at 19-20, Tab 6; Ex. 47, Letter from Beth Rittenband to Susan Tilley, 12/6/99, Tab 21; Appearance of Robert Muchinsky in Tilley v. Tilley in lieu of Beth Rittenband, 12/23/99, Tab 22.  Mr. Muchinsky provided representation to plaintiff in regard to the modification and contempt matters pending in Superior Court (which he later renewed and ultimately assisted Ms. Tilley in resolving through a stipulated judgment), and he eventually would file the instant matter in

Attorney Muchinsky was representing to the divorce court, on the basis of Susan's allegations regarding Pacer's shifting of income from David to Terri, that Mr. Tilley "has hidden over $300,000 in income since the time of [the October 1994 support order]." Ex. 22, Motion for Contempt, 6/21/00 at 1, Tab 23; see also Ex. 23, Motion for Modification of Orders, 6/30/00 at 2, ¶ 2B, Tab 24; S. Tilley Dep. 10/6/04 at 69, Tab 6. Yet not even the renewal of these claims in the divorce court prompted her to make a supplemental disclosure to the Bankruptcy Court or the trustee of any tort claim. S. Tilley Dep. 10/6/04 at 124-25, Tab 6.

Based on Ms. Tilley's representations, the trustee submitted a "no asset report," stating that he had not administered any property of the estate and finding that there was no property available for distribution to creditors. Trustee's Report of No Distribution, 7/18/00, Tab 28. On or about September 26, 2000, based upon the information disclosed to the Court and the trustee, Ms. Tilley was granted a discharge under the Bankruptcy Code; and the case was closed on October 11, 2000. Ex. 32, Discharge of Debtor, 9/26/00, Tab 29; Letter from Ossen & Murphy to Susan (Tilley) Caldwell, 2/28/02, (attached as last page in Ex. 31), Tab. 26; S. Tilley Dep. 10/6/04 at 128, Tab 6; Final Decree, 10/11/00, Tab 30.

### 7.     **The Instant Action**

On July 30, 2002, Susan Tilley filed the instant action against Anixter Incorporated, Pacer/Anixter, Inc. and David G. Tilley, through Attorney Muchinsky. The very first sentence of the Complaint asserts, "This is an action for damages caused to plaintiff by the defendants under the tort laws of the State of Connecticut." Complaint, ¶ 1 (emphasis added).

---

federal court on Ms. Tilley's behalf. Id., Ex. 22, Motion for Contempt, 6/21/00, Tab 23; Ex. 23, Motion for Modification of Orders, 6/30/00, Tab 24; Ex 25, Stipulation, 11/1/3/00, Tab 25.

The Complaint purports to assert tort claims for fraud (dismissed on September 19, 2003), conspiracy (dismissed on September 19, 2003), and intentional infliction of emotional distress arising out of a conspiracy between Mr. Tilley and his employer to misrepresent his income to the Superior Court during the divorce proceedings, and to divert to his new wife income properly payable to him.

As in the 1998 Lawsuit against Pacer, Anixter and Michael Rosa, Susan Tilley claims in this lawsuit that as a result of the defendants' alleged fraudulent conduct, she lacked sufficient money to provide for the care and well being of her children or pay for basic living expenses or medical care for her children, that she suffered the loss of her business, and that she sustained severe emotional distress.  <u>Compare</u> Complaint herein, ¶¶ 26-29, <u>with</u> Ex. 29, Verified Complaint and Temporary Injunction paperwork, <u>Susan Tilley v. Pacer Electronics, et al</u>, Conn. Sup. Ct., 6/8/98, ¶¶ 22-26, 31-35, 40, 45, Tab 4.

According to Ms. Tilley, the emotional distress that she has allegedly suffered on account of the Corporate Defendants has all been caused by financial hardship due to her low support award. S. Tilley Dep. 9/28/04 at 57-59, 66-70, Tab 5.  Plaintiff is unable to identify any other way in which the alleged misconduct of the Corporate Defendants has caused her emotional distress.  <u>Id.</u> at 68.[10]

---

[10]  She maintains that her claims against the Corporate Defendants in this lawsuit are based on three interrelated things allegedly done wrong by them: misrepresentations to the divorce court regarding Mr. Tilley's income during the divorce proceeding, diversion of income from David to Terri, and, relatedly, misrepresentation of Mr. Tilley's income to Support Enforcement personnel in 1999.  She fails to identify any further wrongdoing by the Corporate Defendants. S. Tilley Dep. 9/28/04 at 39-43, Tab 5.

## ARGUMENT

I.    **PLAINTIFF IS BARRED FROM PURSUING THE INSTANT CLAIM DUE TO HER FAILURE TO DISCLOSE IT IN HER BANKRUPTCY PROCEEDING.**

The plaintiff lacks standing to prosecute this case because she failed to schedule and disclose her tort claims against the Corporate Defendants in her bankruptcy proceeding commenced in June 2000.  Plaintiff's claim is also barred by judicial estoppel, due to that same omission, as explained below.

A.    **Plaintiff Lacks Standing to Prosecute this Case Because It Is Now the Property of the Bankruptcy Estate.**

Initiation of a bankruptcy case creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1). The debtor's causes of action accruing prior to the filing of the petition are part of the property of the estate.  Seward v. Devine, 888 F.2d 957, 963 (2d Cir. 1989).

As recognized repeatedly by this Court (and others), a cause of action that has not been abandoned back to the debtor by the trustee remains part of the bankruptcy estate, and cannot be pursued by the debtor.  See, e.g., Corell v. Equifax Check Services, Inc., 234 B.R. 8, 10 (D. Conn. 1997) (Arterton, J.); Tuttle v. Equifax Check Services, No. 3:96cv948(WWE), 1997 WL 835055 (D. Conn. June 17, 1997) (citing, among other things, Ratterree v. Chemical Bank, No. 5-88cv636(EBB) (D. Conn. Nov. 15, 1989)); Vreugdenhill v. Navistar Int'l Transp. Corp., 950 F.2d 524, 525-26 (8th Cir. 1991); Rosenshein v. Kleban, 918 F. Supp. 98, 102-03 (S.D.N.Y. 1996).  Scheduled property, including causes of action, may be abandoned through the trustee's

inaction in regard to it.  11 U.S.C. § 554(c).[11]  However, causes of action or other assets that are

not scheduled as required by 11 U.S.C. § 521(1) remain the property of the bankruptcy estate,

even after the estate is closed.  11 U.S.C. § 554(d); see, e.g., Correll, 234 B.R. at 10; Tuttle, 1997

WL 835055, *2; Vreugdenhill, 950 F.2d at 525-26.  A debtor is under a continuing duty to

amend her schedules to disclose claims or contingent claims to the trustee.  See, e.g., Tuttle,

1997 WL 835055, *2.

It follows that "because an unscheduled claim remains the property of the bankruptcy

estate, the debtor lacks standing to pursue the claim after emerging from bankruptcy, and the

claim must be dismissed."  Rosenshein, 918 F. Supp. at 103 (emphasis added); see also, e.g.,

Corell, 234 BR at 10; Tuttle, 1997 WL 835055, *2; Robinson v. J.A. Wiertel Construction, 185

A.D.2d 664, 586 N.Y.S.2d 59, 60 (1992); Chilinsky v. Torres, No. CV020388589, 2002 WL

31440800 (Conn. Super. Oct. 7, 2002), and Connecticut cases cited therein.

This legal framework, applied to the undisputable facts summarized in the Statement of

Facts, Part 6 above, requires that judgment in favor of the Corporate Defendants enter in the

instant action.  Based on the admission in her Complaint as to when she learned of the facts

giving rise to her purported cause of action, plaintiff is bound by an accrual date of no later than

August 25, 1999.  Complaint, ¶ 15.  (Indeed, there can be no genuine dispute that she in fact

became aware of the basis of claim much earlier, see Argument II below).  The plaintiff filed her

---

[11]  Subsections 554(a) and (b) also provide for abandonment of property after appropriate
notice and hearing regarding such property.  11 U.S.C. §§ 554(a)-(b).  Here there is no evidence
of any such notice or hearing in regard to the abandonment of any tort claims.  See Docket Sheet
for In re: Susan C. Tilley, Tab 27.  Nor could there have been any such procedure, insofar as the
trustee was never advised of the existence of any such claim, as described above.  Accordingly,
the issue of abandonment pursuant to these provisions does not enter the analysis.