voluntary petition for Chapter 7 bankruptcy after that time, in June 2000. Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00, Tab 26. Moreover, she did so with assistance of bankruptcy counsel, while being represented by Mr. Muchinsky, counsel in this action, who was then pursuing claims on her behalf in the divorce court based on these same facts. S. Tilley Dep. 10/6/04 at 117, 69, Tab 6; Ex. 22, Motion for Contempt, 6/21/00 at 1, Tab23; Ex. 23, Motion for Modification of Orders, 6/30/00 at 2, ¶ 2b, Tab 24. Yet the plaintiff at no point scheduled or disclosed to the estate or the Bankruptcy Court her property interest in the instant claim for intentional infliction of emotional distress – or any other cause of action sounding in tort – not even in response to a direct question on the Court's form calling explicitly for disclosure of "[o]ther contingent and unliquidated claims of every nature." Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00 at 000965, Tab 26; S. Tilley Dep. 10/6/04 at 121, Tab 6. Accordingly, because the unscheduled claim was never abandoned by the trustee for the bankruptcy estate pursuant to 11 U.S.C. § 554, the claim remains the property of the estate. Plaintiff therefore has no standing to assert this cause of action for intentional infliction of emotional distress, and summary judgment in favor of the Corporate Defendants must enter.[12]

---

[12] To the extent that plaintiff may attempt to assert standing in this action, or to avoid judicial estoppel, on the putative basis of the listing of the claim for "back child support" in her bankruptcy petition, Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00 at 000965, Tab 26, Corporate Defendants reassert their motion for dismissal on the basis that this is a domestic relations matter over which the Court has no jurisdiction, Corporate Defendants' Motion to Dismiss, 10/2/02 (Dkt. 10), and the arguments advanced in support thereof. Memoranda of Corporate Defendants, 10/2/02 and 12/13/02 (Dkt. 11, 18). Plaintiff cannot have it both ways. She cannot simultaneously claim that this lawsuit is distinct from the family relations case for jurisdictional purposes under the domestic relations exception to federal jurisdiction, but identical to the family relations case for jurisdictional purposes under of the laws governing bankruptcy disclosures.

B.    **Alternatively, Plaintiff's Claim Is Barred By Judicial Estoppel.**

The Corporate Defendants are also entitled to summary judgment because plaintiff is barred by judicial estoppel from pursuing the claim that she failed to disclose in bankruptcy.

Many courts have recognized that a party who failed to disclose a claim in bankruptcy is barred by judicial estoppel from pursuing a claim after bankruptcy. See, e.g., In the Matter of Coastal Plains, Inc., 179 F.3d 197, 207-213 (5th Cir. 1999); Payless Wholesale Distributors, Inc. v. Alberto Culver, Inc., 989 F.2d 570, 571-72 (1st Cir.), cert denied, 510 U.S. 931 (1993); Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419-20 (3rd Cir.), cert. denied, 488 U.S. 967 (1988); Rosenshein, 918 F. Supp. at 104-05; Welsh v. Quabbin Timber, Inc., 199 B.R. 224 (D. Mass. 1996); In re Hoffman, 99 B.R. 929, 935-36 (N.D. Iowa 1989); Pako Corp. v. Citytrust, 109 B.R. 368, 376 -77 (D. Minn. 1989); In re Galerie Des Monnaies of Geneva, Ltd., 55 B.R. 253, 259-60 (Bankr. S.D.N.Y. 1985), aff'd, 62 B.R. 224 (S.D.N.Y. 1986). These holdings constitute a natural application of the doctrine, which provides for estoppel "when a party, after assuming a certain position in a legal proceeding, attempts to assume a contrary position." Hoffman, 99 B.R. at 935.

> As explained by the Rosenshein court:
>
> The rationale of these decisions is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interest of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to [provide a discharge] on the same basis, are impaired when the disclosure provided by the debtor is incomplete.

Rosenshein, 918 F. Supp. at 104. The Second Circuit recognizes that this doctrine applies where the integrity of the judicial system is at stake. AXA Marine & Aviation v. Seajet Industries, 84 F.3d 622, 628 (2d Cir. 1996); Mitchell v. Washtonville Cent. School Dist., 190 F.3d 1, 7-8 (2d Cir. 1999); Bates v. Long Island Railroad Co., 997 F.2d 1028, 1037-38 (2d Cir.), cert. denied, 510 U.S. 992 (1993). The elements are: "[1] the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and [2] the prior inconsistent position must have been adopted by the court in some manner." Id. at 1038.

Here, plaintiff had a clear, affirmative obligation under 11 U.S.C. § 521(1) to disclose to the trustee and the bankruptcy court all of her property. Plaintiff nevertheless submitted disclosures that, under penalty of perjury, represented that her bankruptcy was a "no asset" case. Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00 at 000959, Tab 26. At no time did she inform the court of her claims for intentional infliction of emotional distress, or any tort claims at all[13] – "although the allegations in the complaint reveal that [she was] aware of the circumstances underlying those claims before [she] filed for bankruptcy." Rosenschein at 104. In reliance on her representations, the bankruptcy trustee then issued a "no asset report," stating that he had not administered any property of the estate and finding that there was no property available for distribution to creditors, and the court "discharged [her] debts on the basis of [her] incomplete disclosure of assets, thereby adopting [her] position." Id. at 105.[14] Plaintiff now attempts to assert the opposite position – that she has a tort claim against defendants. "This is precisely the

---

[13] Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00, Schedule B, 00963-00965, Tab 26; S. Tilley Dep. 10/6/04 at 119-22, 124-25, Tab 6.

[14] Trustee's Report of No Distribution, 7/18/00, Tab 28; Ex. 32, Discharge of Debtor, 9/26/00, Tab 29; S. Tilley Dep. 10/6/04 at 128, Tab 6; Final Decree, 10/11/00, Tab 30.

22

sort of 'about-face' that undermines the integrity of the bankruptcy process. Therefore, the doctrine of judicial estoppel provides an alternative basis on which to grant summary judgment dismissing" the claims of plaintiff.[15] Id.; see also Tuttle, 1997 WL 835055 at *3.

## II. THIS ACTION IS BARRED BY THE STATUTE OF LIMITATIONS.

This action, which was filed on July 30, 2002, is also barred by the applicable three-year statute of limitations. Between June 1998 and June 1999, Ms. Tilley repeatedly asserted the very same allegations against Pacer, Anixter and her ex-husband that form the basis of the instant claim. Indeed, during that period she brought a lawsuit against Pacer and Anixter on that basis, pursued motion and discovery practice in her dissolution action on the basis of the same claims, and repeatedly asserted the same allegations to Support Enforcement Services – <u>all more than three years before her July 30, 2002 filing of the instant action</u>. The suit is therefore time-barred.

The limitations period applicable to a claim for intentional infliction of emotional distress is set forth at Conn. Gen. Stat. § 52-577, which provides a three-year limitations period. See, e.g., DeCorso v. Watchtower Bible & Tract Society of New York, Inc., 78 Conn. App. 865, 873, cert denied, 266 Conn. 931 (2003). Because Ms. Tilley knew the basis of her claims in this

---

[15] Intent to deceive is not a part of the Second Circuit test for application of judicial estoppel, Rosenschein, 918 F. Supp. at 105, See also, e.g., AXA Marine, 84 F.3d at 628; Tuttle, 1997 WL 835055 at *3. Nevertheless if intent were a material consideration, it could be inferred from plaintiff's non-disclosure of her claims. Rosenschein, 918 F. Supp. at 105. This conclusion would be bolstered by the fact that the petition form filled out by plaintiff explicitly prompted her to list not only "all personal property of the debtor of whatever kind," but also "contingent and unliquidated claims of every nature," Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00 at 00963, 965, Tab 26; and the fact that she was represented not only by bankruptcy counsel, but also by the attorney who represents her in the current matter and who, at the time, was making claims in the divorce court based on the same alleged facts (that is, that hundreds of thousands of dollars of Mr. Tilley's income had been hidden due to Pacer's shifting of income from David to Terri), Ex. 22, Motion for Contempt, 6/21/00 at 1, Tab 23; Ex. 23, Motion for Modification of Orders, 6/30/00 at 2, ¶ 2B, Tab 24.

23

lawsuit more than three years before the filing of her action on July 30, 2002, her claim is time-barred. See, e.g., Mountaindale Condominium Association, Inc. v. Zappone, 59 Conn. App. 311, 327-28 (2000) (where action brought more than three years beyond time plaintiff knew or should have known of facts underlying actionable harm, tort claims untimely under Conn. Gen. Stat. § 52-577 and statute of limitation not tolled by fraudulent concealment or continuing course of conduct doctrines); BellSouth Telecommunications, Inc. v. W.R. Grace & Co., 77 F.3d 603, 613-15 (2d Cir. 1996) (where plaintiff knew or should have known of actionable harm more than three years before it filed suit, its products liability claim was barred by the applicable statute of limitations and could not be saved by claims of fraudulent concealment).[16]

---

[16] Indeed, because Conn. Gen. Stat. § 52-577 is an "occurrence statute," and the supposed occurrence that caused Ms. Tilley's alleged harm took place in 1994, Ms. Tilley's claim is barred irrespective of when she learned of it. "When applying this statute, the courts in this jurisdiction have held that '§ 52-577 is an occurrence statute, meaning that the time period within which the plaintiff must commence an action begins to run at the moment the act or omission complained of occurs.' S.M.S. Textile Mills, Inc. v. Brown, Jacobson, Tillinghast, Lahan & King, P.C., 32 Conn. App. 786, 790 (1993)." Gibbons v. NER Holdings, Inc., 983 F. Supp. 310, 314 (D. Conn. 1997). Thus, the statute is applied without regard to when plaintiff learned of her harm or the injury occurred. Id.; Fenn v. Yale, 283 F. Supp. 2d 615, 636 (D. Conn. 2003); Zimmerer v. General Electric Co., 126 F. Supp. 690, 692-93 (D. Conn. 1954). Here, by plaintiff's admission, her alleged emotional distress has all been caused by financial hardship due to the allegedly low support award, which was supposedly improperly diminished due to defendants' fraudulent conduct. S. Tilley Dep. 9/28/04 at 57-59, 66-70, Tab 5. She fails to identify any other way in which the alleged misconduct of the Corporate Defendants has caused her emotional distress. Id. at 68. Insofar as the support award was set in the final judgment of dissolution in October 1994, the "occurrence" in this case took place almost eight years before she filed suit. Plaintiff has not pleaded any basis for avoiding this statute of limitations problem, such as fraudulent concealment. See, e.g., In re Colonial Limited Partnership Litigation, 854 F. Supp. 64, 89-90 (D. Conn. 1994) (plaintiffs may not avail themselves of Connecticut's fraudulent concealment doctrine unless they have satisfied "stringent pleading requirements"). For this reason, alone, judgment should enter against plaintiff.

However, even if plaintiff had attempted to plead fraudulent concealment, the undisputed facts would nevertheless doom her claim for the reasons explained above. See, e.g., Mountaindale Condominium Association, Inc. v. Zappone, 59 Conn. App. 311, 327-28 (2000) (where plaintiff knew or should have known of facts underlying actionable harm, statute of

24

The undisputed facts, stated above, establish that Ms. Tilley knew the basis of her claims in this lawsuit more than three years before the July 30, 2002 filing of her action. The relevant facts are summarized here to highlight the key points:

- Before June 1998 Ms. Tilley communicated to her attorney that Pacer was allegedly putting some of David's compensation into Terri's paychecks to minimize his child support payments. Rittenband/Deluco Dep. at 10-23, 34-35, 50-52, Tab 9.

- In June 1998 she brought a lawsuit against Pacer and Anixter on the basis of her claims that Pacer was helping David to avoid support payments by putting some of his compensation into Terri's paychecks. Id. at 26, 11.

- As in the instant lawsuit, based on those claims, Ms. Tilley's lawsuit in June 1998 alleged that Pacer and David Tilley's supervisor there, Michael Rosa, had "willfully and wantonly defrauded plaintiff out of money rightfully due her," and that, as a result, she lacked sufficient money to provide for the care and well being of her children or pay for basic living expenses or medical care for her children, suffered the loss of her business, and sustained severe emotional distress. Ex. 29, Verified Complaint and Temporary Injunction paperwork, Susan Tilley v. Pacer Electronics, et al, Conn. Sup. Ct., 6/8/98, ¶¶ 36-38, 41-44, 22-26, 31-35, 40, 45. Tab 4. These are the very claims advanced in this case.

- Shortly after settlement of the June 1998 Lawsuit, on or around July 9, 1998, Ms. Tilley drafted a letter addressed to the Support Enforcement Division of the Superior Court regarding the alleged fraudulent manipulation of her husband's compensation by his employer, Pacer/Anixter. In that letter, she stated, "His employer is masking his income, **I am positive of it.**" Ex. 11, Letter from Susan Tilley to Support Enforcement, 7/9/98 at 1689 (emphasis added), Tab 13.

---

limitation not tolled by fraudulent concealment or continuing course of conduct doctrines); Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409, 427-28 (2d Cir. 1999) ("plaintiff's ignorance of the facts is a necessary element of tolling under" Connecticut's fraudulent concealment statute, Conn. Gen. Stat. § 52-595; plaintiff bears burden of proof to establish own ignorance); Zimmerer v. General Electric Co., 126 F. Supp. 690, 693 (D. Conn. 1954) (under Connecticut law, to establish fraudulent concealment, plaintiff had to establish that he was ignorant of existence of right of action); Conn. Gen. Stat. § 52-595 ("Fraudulent concealment of cause of action: If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefore at the time when the person entitled to sue thereon first discovers its existence").

- Ms. Tilley acknowledged in her deposition testimony that the foregoing statement, in July 1998, was referring to the same allegations that she makes in the instant case regarding the Corporate Defendants' alleged hiding of David's compensation through diversion of income from David to Terri. S. Tilley Dep. 10/6/04 at 7, Tab 6.

- In that same July 9, 1998 letter Ms. Tilley stated that "[m]y child support has been based on his [David's] fraudulent misrepresentation of his wages for the past 7 years through our separation, during and after the final divorce." Ex. 11, Letter from Susan Tilley to Support Enforcement Division of Connecticut Superior Court, 7/9/98 at 1688, Tab 13. Ms. Tilley has acknowledged that the foregoing statement was a reference to the same allegations that she makes in the instant case. S. Tilley Dep. 10/6/04 at 7, Tab 6.

- On December 1, 1998, Ms. Tilley called the Support Enforcement Division of Connecticut Superior Court and reported that "RESP[ONDENT DAVID TILLEY] AND EMPLOYER (MIKE ROSA, CEO OF PACER 617-935-8330) ARE CONSPIRING TO DIVERT INCOME BY PAYING RESP[ONDENT DAVID TILLEY'S] CURRENT SPOUSE." Support Enforcement Case Note, 12/1/98, Ex. 14 to Affidavit of Timothy Broderick, 2/10/05, Tab 12 (capitalization in original). This is another outright assertion of Ms. Tilley's core claim in this action – almost four years before she filed this matter.

- In April of 1999, through motions for contempt and modification filed by her attorney, Beth Rittenband (now Deluco), Susan Tilley brought directly to family court her claims that Pacer and Mr. Tilley had been conspiring to hide the latter's income by diverting his compensation to his current spouse. According to the attorney who drafted them on behalf of Ms. Tilley, those April 1999 motions sought relief based on the supposed diversion of income by Pacer from David to Terri Tilley. Rittenband/Deluco Dep. at 38-39, 45, Tab 9; Ex. 15, Motion for Contempt and Order to Show Cause, 4/19/99, ¶¶ 2, 3, Tab 14; Ex. 16, Motion for Modification of Orders and Order to Show Cause, 4/19/99, ¶ 2(b), Tab 15.

- That these April 1999 motions asserted the same claims pursued here is underscored by the nature of the discovery sought by Ms. Tilley at that time from the Corporate Defendants. On May 11, 1999, on Susan Tilley's behalf, Attorney Rittenband issued a notice of deposition in support of the April 1999 motions seeking to depose Michael Rosa, CEO of Pacer, and to obtain all payroll, wage and benefit records for both David Tilley and his current spouse, Terri, reflecting all years of David's employment (going back to 1994). Rittenband/Deluco Dep. at 40-41, Tab 9; Ex. 48, Notice of Deposition, 5/11/99, Tab 16. Attorney Rittenband communicated to counsel for Pacer that she was seeking "all wage records of both David and Theresa Tilley, including regular pay, commissions, bonuses, car allowances, benefit plans and anything else that can be considered

26

income for the last five years." Attorney Rittenband stated that this information was "essential" to the April 1999 motions that were currently pending. Rittenband/Deluco Dep. at 42-43, Tab 9; Ex. 50, Letter from Beth Rittenband to Steven Ecker, 6/11/99, Tab 17. The requested material regarding the income records of both David and Terri Tilley was "essential" because those pending motions asserted that Pacer and Anixter had been improperly diverting David's income to Terri to minimize his child support obligations – the very same claim made in the instant lawsuit.

These facts establish beyond dispute that Ms. Tilley was aware of the core allegations forming the basis of her claims in this lawsuit more than three years before the July 30, 2002 filing of her action. Accordingly, her suit is time-barred and judgment should enter in favor of the Corporate Defendants.

### III. THE ACTION IS BARRED BY THE JUNE 1998 RELEASE.

This action is also barred by the June 1998 release. That release was given in return for a $10,000 payment to plaintiff, as part of the settlement of plaintiff's action against Pacer, Anixter and others, as more fully described above. Rittenband/Deluco Dep. at 22, 29, Tab 9; Ex. 30, Release, 6/17/98, Tab 11. Ms. Tilley released the defendants from her claims, including any claims concerning alleged masking of David's income through transfer to Terri. Rittenband/Deluco Dep. at 29, Tab 9.

#### A. The June 1998 Release Is a General Release That Bars the Instant Action.

The June 1998 Release, which covered Pacer and Anixter, provided for release of:

> <u>all</u> debts, obligations, <u>suits, actions, causes of actions</u>, trespasses, variances, judgments, extents, executions, damages, <u>claims or demands,</u> in law or in equity, which <u>against [Pacer, Anixter</u>, et al.], the Releasor <u>[Susan Tilley] ever had, now has or hereafter can, shall, or may have</u>, for, upon or <u>by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these Presents</u>.
> More particularly all claims or demands in law or equity arising or asserted in or in connection with [the action then pending against Pacer, Anixter, Rosa, et al., in Superior Court.]

Ex. 30, Release, 6/17/98, Tab 11 (emphasis added). Under the rules of construction applicable to interpreting such releases, this release bars the instant action.

A release is a contract, and its construction is therefore guided by the well established principles applicable to interpreting contracts. See, e.g., Tallmadge Brothers, Inc. v. Iroquois Gar Transmission System, L.P., 252 Conn. 479, 498 (2000). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact ... [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." Levine v. Massey, 232 Conn. 272, 277, 654 A.2d 737 (1995) (citations omitted; internal quotation marks omitted). In other words, in the absence of ambiguity, the question of the parties' intent is properly answered by reference to the terms of the contract itself:

> [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms.

Pesino v. Atlantic Bank of New York, 244 Conn. 85, 91-92 (1998). In addition, the Connecticut appellate courts "have frowned on interpreting a contract in a way that renders a clause in the contract mere surplusage and inoperative." Patron v. Konover, 35 Conn. App. 504, 518, cert. denied, 231 Conn. 929 (1994).

Here, these general principles dictate the conclusion that the release bars the instant action. The release explicitly provides for Ms. Tilley's "remise, release, and discharge" of Pacer

and Anixter "from all debts, obligations, reckonings, . . . controversies, suits, actions, causes of actions, trespasses . . . damages, claims or demands, in law or in equity," which Ms. Tilley "ever had, <u>now has or hereafter can, shall or may have, for, upon or by reasons of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these Presents</u>." Ex. 30, Release, 6/17/98, Tab 11 (emphasis added).  The release, in short, is a general release.  As such, it "is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry."  <u>Fair v. Int'l Flavors & Fragrances, Inc.</u>, 905 F.2d 1114, 1116 (7th Cir. 1990).  Indeed, Ms. Tilley admits that the release covered all such claims, to the date of signing.  S. Tilley Dep. 10/6/04 at 111, Tab 6.

    Because Ms. Tilley knew, or could have discovered upon reasonable inquiry, the basis of her claims in the instant lawsuit at the time she signed that general release, it bars her from pursuing the instant action.  As noted above, Statement of Facts, Parts 2 and 3, in advance of filing the June 1998 lawsuit, Ms. Tilley had communicated to her lawyer, Attorney Rittenband, the lawyer who handled the June 1998 Lawsuit settlement, that the alleged support payment arrearage existed because Pacer was supposedly diverting some of David's compensation to his new wife, Terri.  Rittenband/Deluco Dep. 23-26, Tab 9.  According to Susan's communications with her attorney, Pacer's diversion of income from David to Terri allowed David to take advantage of a provision of North Carolina law that bars garnishment for family support purposes of more than a certain percentage of the garnishee's income, allowing the arrearage to develop.  <u>Id.</u> at 34-35, 50-52.  Thus, although the June 1998 Lawsuit focused on the arrearage, the <u>basis</u> of the lawsuit was precisely that Pacer, Michael Rosa and David Tilley had defrauded plaintiff of support payment by diverting David's income to Terri – exactly the alleged conduct at issue in

29

this case. Id. at 11, 26, 55-56; Ex. 29, Verified Complaint and Temporary Injunction paperwork, Susan Tilley v. Pacer Electronics, et al., Conn. Sup. Ct., 6/8/98, ¶¶ 36-38, 41-44, Tab 4.[17] Indeed, the attorney who filed the action on Ms. Tilley's behalf, Attorney Rittenband, believed that her ethical obligation to have good grounds for the suit was satisfied by the information from her client regarding the alleged diversion of income from David to Terri to assist the former in avoiding support payments constituted good grounds for the June 1998 Lawsuit. Rittenband/Deluco Dep. at 55, Tab 9. These facts establish conclusively that the June 1998 release applies to the claim at issue here.

### B. The Specific Reference in the Release to the 1998 Superior Court Case Does Not Detract from Its Generality or Its Applicability to this Action.

Because plaintiff has indicated in earlier proceedings that she intends to challenge the applicability of the release on the basis of the specific reference therein to the 1998 Superior Court action, we pause briefly to rebut that contention. See Ex. 30, Release, 6/17/98, Tab 11 ("More particularly all claims or demands in law or equity arising or asserted in or in connection with [the action then pending against Pacer, Anixter, Rosa, et al. in Superior Court]"). In truth, the Release's specific reference to the 1998 Superior Court action cannot, as a matter of law, be understood to detract from its generality or its applicability to this action.

To begin with, the claims in this action are intentionally intertwined with the claims arising in relation to that earlier action, as explained above. Accordingly, the language of that

---

[17] Moreover, as damages, Susan claimed – as she claims in the instant matter – that due to Pacer and Rosa's fraudulent conduct, she lacked sufficient money to provide for the care and well-being of her children or pay for basic living expenses or medical care for her children, that she suffered the loss of her business, and that she sustained severe emotional distress. Ex. 29, Verified Complaint and Temporary Injunction paperwork, Susan Tilley v. Pacer Electronics, et al., Conn. Sup. Ct., 6/8/98, ¶¶ 22-26, 31-35, 40, 45, Tab 4.

30

specific reference, on its face, operates as a bar to this matter. See id. ("More particularly all claims or demands in law or equity arising or asserted in or in connection with [the action then pending against Pacer, Anixter, Rosa, et al. in Superior Court]" (emphasis added).

Moreover, even if the specific reference did not, by its terms, apply to the claims in the instant action, that reference would nevertheless not detract from the generality of the release, overall, or its applicability to all claims known or discoverable by Ms. Tilley at the time of signing. The courts have long recognized that a release structured in this manner, with general release language followed by a "more particularly" reference to a specific matter, remains a general release despite the specific reference. See, e.g., Murphy v. City of New York, 190 N.Y. 413, 83 N.E. 39 (N.Y. 1907) ("the general principle of construction" is that release remains a general release where the words of limitation follow the general release language); Dunbar v. Dunbar, 71 Mass. 103, 5 Gray 103, 105 (Mass. 1855); Slayton v. Hemken, 36 N.Y.S. 249, 250-51 (N.Y. Gen. Term, 1895). This construction is demanded by the rule that releases are to be read in terms of the "common, natural, and ordinary meaning and usage" of the language therein. Pesino, 244 Conn. at 91-92. Given the structure of the text and the ordinary meaning of the word "particularly," as the equivalent of "especially" or "in particular," this interpretation is the only plausible construction. Thus, as stated by the Court of Appeals of New York in construing a very similar release:

> [W]e have the word "particularly" qualifying the limiting sentence, and that word is frequently used as meaning "especially." Giving to it this definition, we have the words of general release followed by the sentence which fairly may be construed and paraphrased as "being especially a release and discharge" of [the specifically enumerated claims]. So read, the sentence would not operate as a limitation of the release to the date in question, but would amount to an especial mention of, or a specific reference to [the specifically enumerated claims].

31

Murphy, 190 N.Y. at 416.

Moreover, this construction is the only one that gives meaning to all parts of the release. If the "more particularly" clause limits the release to only the claims explicitly stated in the June 1998 complaint, not only the general release language becomes surplusage; the specific exception in the release as to "claims Susan Tilley may have directly against David Tilley," Ex. 30, Release, 6/17/98, Tab 11, who was not a defendant in the June 1998 lawsuit, would also become meaningless surplusage. Why include a specific release as to a non-defendant, if the release is strictly limited to the specific claims made in the Complaint? Because Connecticut's appellate courts "have frowned on interpreting a contract in a way that renders a clause in the contract mere surplusage and inoperative," Patron, 35 Conn. App. at 518, plaintiff's construction must be rejected.

### C.  Even If It Were Appropriate to Refer to Parole Evidence, the Applicability of the Release to this Action Would Be Beyond Dispute.

In light of the foregoing, there is no ambiguity in the contract: it is a general release and applies to all claims that Susan was aware of, or could reasonably have discovered, at the time she signed it. Because there is no ambiguity, parole evidence as to the scope of the release is not allowed.

However, even if there were ambiguity, the parole evidence would confirm beyond a doubt the applicability of this release to the claims raised in the instant action. None other than the attorney who handled the 1998 Lawsuit on behalf of the plaintiff, Attorney Beth Rittenband, confirms that this release covered the claim that Pacer had shielded David's income by shifting pay from David to Terri because Susan was aware of that claim at the time. Rittenband/Deluco Dep. at 34-35, 50-52, Tab 9. This fact is fatal to Susan Tilley's cause of action here.

IV. **THE ACTION IS NOT VIABLE BECAUSE THE ONLY ALLEGATIONS WITH A CAUSAL CONNECTION TO PLAINTIFF'S HARM ARE BARRED BY THE COMMON LAW PRIVILEGE FOR COMMUNICATIONS IN A JUDICIAL PROCEEDING.**

Finally, discovery has confirmed that plaintiff's sole remaining claim, in its entirety, is barred by the combination of the common law privilege for communications in a judicial proceeding and a lack of causation. As set forth in the Corporate Defendants' October 30, 2003 Motion for Judgment on the Pleadings, under Connecticut law, there is an absolute privilege for communications in connection with judicial proceedings. See, e.g., Petyan v. Ellis, 200 Conn. 243, 245 (1986); DeLaurentis v. New Haven, 220 Conn. 225, 264 (1991). This privilege bars actions based on alleged intentional infliction of emotional distress arising from communications related to judicial proceedings. Id. It applies not only to sworn testimony, but to any written or verbal statement, report or communication made in connection with a judicial proceeding. Id. at 251-52 (applying privilege to unsworn "factfinding supplement" submitted by defendant to regulatory agency). This doctrine, applied to the facts of this matter, bars the only part of plaintiff's claim that has any causal connection to her alleged damages.

Ms. Tilley's own testimony affirms that the emotional distress claimed in this case arises solely from financial distress due to her supposedly low support award. S. Tilley Dep. 9/28/04 at 57-59, 66-68, Tab 5. Accordingly, although plaintiff makes claims based on both alleged misrepresentations to the divorce court regarding Mr. Tilley's income and asserted payroll manipulations effecting diversion of income from David to Terri, only the former conduct – which is privileged, according to the Court's earlier ruling (Dkt. 38) – could have caused the harm asserted by plaintiff. Due to a lack of causation in regard to the plaintiff's alleged damages, the supposed manipulation of payroll records to divert income from David to Terri is immaterial.

Although the Corporate Defendants raised these points through their October 30, 2003 Motion for Judgment on the Pleadings, see Corporate Defendants' December 5, 2003 Reply Brief (Dkt. 36), the Court at that time ruled that plaintiff's allegations of harm resulting from the alteration of employment records were "susceptible of a broader reading than merely injury resulting from an inadequate award in a divorce proceeding." Ruling on Defendants' Motion for Judgment on the Pleadings, May 20, 2004 at 7 (Dkt. 38). The Court stated, "While it is possible that a jury would find that any injury, economic or non-economic, was caused by the proceeding in court, based on this record, the court cannot conclude at this stage of the pleadings, based on the plaintiff's complaint, that she will be unable to prove her claim before a jury." Id. Specifically, the Court kept alive plaintiff's action on the basis of the "find[ing] that the plaintiff ha[d] fairly and adequately alleged that, as a result of learning about the falsification of the payroll records, she suffered severe emotional distress." Id. at 8. The Court stated that, "While it remains to be seen if the plaintiff can prove facts in support of such a claim . . . th[at] issue [is] not before the court today." Id. at 8.

Discovery has now confirmed that plaintiff cannot prove facts in support of such a claim. Ms. Tilley's own testimony establishes that the emotional distress that she has allegedly suffered on account of the Corporate Defendants has all been caused by financial hardship due to her allegedly low support award. S. Tilley Dep. 9/28/04 at 57-59, 66-70, Tab 5. She does not identify learning about the alleged falsification of the payroll records as a cause of any emotional distress. Id. at 68. Indeed, she is unable to identify any other way in which the alleged misconduct of the Corporate Defendants has caused her emotional distress. Id. Because her distress claim is, in fact, based solely on the allegedly low support award, the plaintiff is barred

from pursuing her claim due to the common law privilege for communications in connection with judicial proceedings.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of the Corporate Defendants.

>
> DEFENDANTS
> ANIXTER INC. and PACER/ANIXTER, A
> DIVISION OF ANIXTER INC.
>
> By: _____
> James R. Smart  (ct20982)
> Steven D. Ecker  (ct03762)
> Cowdery, Ecker & Murphy L.L.C.
> 750 Main Street
> Hartford, CT  06103
> (860) 278-5555
> (860) 249-0012 Fax
> E-mail: jsmart@cemlaw.com
>
> -- Their Attorneys

**CERTIFICATION**

  This is to certify that I caused a copy of the foregoing to be sent on April 15, 2005, via U.S. mail, first-class, postage pre-paid to all counsel of record as follows:

Robert B. Muchinsky, Esq.
39 Russ Street
Hartford, CT 06106

William M. Bloss, Esq.
Koskoff, Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, CT 06604

Robert A. Nagy Esq.
Assistant Attorney General
Office of the Attorney General
55 Elm Street
Hartford, CT 06106

_____
James R. Smart