UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN C. TILLEY, | : |
| | : No. 3:02CV1312 (JCH) |
| Plaintiff, | : |
| v. | : |
| | : |
| ANIXTER INCORPORATED, | : |
| PACER/ANIXTER INC. and | : |
| DAVID G. TILLEY, | : APRIL 15, 2005 |
| | : |
| Defendants. | : |

## CORPORATE DEFENDANTS' LOCAL RULE 56(a)(1) STATEMENT

Pursuant to Rule 56(a)(1) of the Local Civil Rules of this Court, defendants Anixter Inc. and Pacer/Anixter, a Division of Anixter Inc. (collectively, the "Corporate Defendants") submit the following statement of material facts as to which there is no genuine issue to be tried:

### The Tilleys' Divorce and Mr. Tilley's Employment with Pacer

1. In 1992, Susan Tilley filed a divorce action in Connecticut Superior Court, seeking a dissolution of her marriage to David G. Tilley. Ex. 8,[1] Memorandum of Decision, Tilley v. Tilley, FA 92-0513362S (Conn. Super., Family Div., Oct. 18, 1994) at 1, 2, Tab 1 hereto. The Tilleys had married in 1984, and had three young children at the time. Id.

2. As the divorce action was pending, David Tilley left his job at IMS, Inc., where he had worked as a salesman since the date of the marriage, and he began to work for Pacer Electronics, Inc. ("Pacer") out of Charlotte, North Carolina. Id. at 3; D. Tilley Dep. at 7-8, Tab 2 hereto.

---

[1] References to "Ex. __" refer to the exhibits marked by the Corporate Defendants during depositions in this matter, unless otherwise indicated.

3. At the time that Mr. Tilley joined Pacer, and for several years thereafter, Michael Rosa, the President and CEO of the company, was Mr. Tilley's boss. Ex. 8, Memorandum of Decision, <u>Tilley v. Tilley</u>, FA 92-0513362S (Conn. Super., Family Div., Oct. 18, 1994) at 1, Tab 1 hereto; D. Tilley Dep. at 23, Tab 2 hereto.

4. David Tilley's girlfriend, and later wife, Terri Tilley (maiden name Terri Stevenson) worked at the same company as Mr. Tilley, first at IMS and later at Pacer and its successor entity, Anixter Inc. Ex. 8, Memorandum of Decision, <u>Tilley v. Tilley</u>, FA 92-0513362S (Conn. Super., Family Div., Oct. 18, 1994) at 2, 5-6, Tab 1 hereto; D. Tilley Dep. at 30, Tab 2 hereto.

5. During the divorce proceeding, both Mr. Tilley and Mr. Rosa testified in the Superior Court regarding, among other things, Mr. Tilley's compensation at Pacer. Ex. 8, Memorandum of Decision, <u>Tilley v. Tilley</u>, FA 92-0513362S (Conn. Super., Family Div., Oct. 18, 1994) at 3, 5, Tab 1 hereto.

6. On October 18, 1994, the Superior Court issued a final judgment of dissolution, dissolving the marriage of Susan and David Tilley. <u>Id.</u> at 1. Among the terms of the divorce were the requirements that Mr. Tilley pay plaintiff $100 per week in alimony for five years and child support in the amount of $260 per week, for a total of $360 per week. <u>Id.</u> at 8-9.

7. In December 1994, the Superior Court ordered a wage garnishment directing Pacer to garnish David Tilley's wages in the amount of $360 per week to pay plaintiff's support order. Withholding Order For Support, 12/2/94, Tab 3 hereto; Ex. 29, Verified Complaint and Temporary Injunction paperwork, <u>Susan Tilley v. Pacer Electronics, et al</u>, Conn. Sup. Ct., 6/8/98, ¶¶ 10-11, Tab 4 hereto.

2

## Ms. Tilley's First Action Against the Corporate Defendants Based on Alleged Diversion of David's Income to Terri

8. By May, 1998, Susan Tilley believed she was owed an arrearage on her support payments because she had been paid less than the $360 per week ordered by the divorce court, dating back to the initiation of the garnishment. S. Tilley Dep. 10/6/04 at 25-26, Tab 6 hereto; Ex. 13, Letter from S. Tilley to Support Enforcement dated May 12, 1998, Tab 7 hereto; Ex. 29, Verified Complaint and Temporary Injunction paperwork, Susan Tilley v. Pacer Electronics, et al, Conn. Sup. Ct., 6/8/98, ¶ 12, Tab 4 hereto.

9. In or about May 1998, Susan Tilley began working with an attorney, Beth Rittenband, now known as Beth Deluco, seeking assistance in connection with the alleged arrearage. Rittenband/Deluco Dep. at 10, 23-24, 58, Tab 9 hereto;[2] Ex. 18, Fee Agreement, 5/29/98, Tab 10 hereto.

10. Ms. Tilley communicated to Attorney Rittenband that the support payment arrearage had developed because Pacer, through Michael Rosa, was diverting some of David's compensation to his new wife, Terri. Rittenband/Deluco Dep. at 23-26, Tab 9 hereto.

11. Susan had come to the belief that the arrearage was due to this alleged diversion of income by Pacer from David to Terri because "she had been researching and following the business and financial goings on and doings of her ex-husband and her ex-husband's new wife at the time." Rittenband/Deluco Dep. at 23, Tab 9 hereto.

---

[2] Because Attorney Rittenband has changed her last name to Deluco since representing Ms. Tilley, to avoid confusion we refer herein to the transcript of her deposition as the "Rittenband/Deluco Dep."

3

12. According to Susan's communications to her attorney in the May-June 1998 time frame, Pacer's diversion of income from David to Terri allowed David to take advantage of a provision of North Carolina law that bars garnishment for family support purposes of more than a certain percentage of the garnishee's income. Rittenband/Deluco Dep. at pp. 34-35, 50-52 (on cross), Tab 9 hereto.

13. On the strength of information provided by Susan to her attorney concerning Pacer's alleged shielding of David's income, Attorney Rittenband prepared a lawsuit against Pacer, Michael Rosa, and Anixter, Inc. ("Anixter") among others. Rittenband/Deluco Dep. at pp. 26, 11, 55-56, Tab 9 hereto; Ex. 29, Verified Complaint and Temporary Injunction paperwork, Susan Tilley v. Pacer Electronics, et al, Conn. Sup. Ct., 6/8/98, Tab 4 hereto.

14. Based on this information, the complaint filed in June 1998 on Susan's behalf charged Pacer and Rosa with, among other things, fraudulently violating the divorce court's orders and "willfully and wantonly defraud[ing] plaintiff out of money rightfully due her." Id. at ¶¶ 36-38, 41-44.

15. Susan claimed that as a result of Pacer and Rosa's fraudulent conduct, she lacked sufficient money to provide for the care and well being of her children or pay for basic living expenses or medical care for her children, that she suffered the loss of her business, and that she sustained severe emotional distress. Id. at ¶¶ 22-26, 31-35, 40, 45.

16. According to Attorney Rittenband, Susan Tilley's allegation that Pacer was putting some of David's compensation into Terri's paychecks was the basis of the 1998 action. Rittenband/Deluco Dep. at pp. 26, 11, Tab. 9 hereto; Ex. 29, Verified Complaint and Temporary

Injunction paperwork, <u>Susan Tilley v. Pacer Electronics, et al</u>, Conn. Sup. Ct., 6/8/98, Tab 4 hereto.

17. Attorney Rittenband believed that her communications with Susan Tilley and the information and documentation that she received from Ms. Tilley provided good grounds for the June 1998 action, generally, and, specifically, for the underlying claim that Pacer was improperly transferring income from David to Terri in order to avoid David's child support obligations. Rittenband/Deluco Dep. at 55, Tab 9 hereto.

18. Susan cannot remember whether she gave Attorney Rittenband any documents as background material during the course of her representation. S. Tilley Dep. 10/6/04 at 66, Tab 6 hereto.

19. Ms. Tilley also does not recall seeing or reading the 1998 Complaint, notwithstanding that the June 1998 Complaint includes a Verification bearing the signature of "Susan C. Tilley" and stating that Ms. Tilley had read the entire Complaint. S. Tilley Dep. 10/6/04 at 114, 95-96, Tab 6 hereto; Ex. 29, Verified Complaint and Temporary Injunction paperwork, <u>Susan Tilley v. Pacer Electronics, et al</u>, Conn. Sup. Ct., 6/8/98, Verification page, Tab 4 hereto.

20. The 1998 action by Ms. Tilley against Pacer, Anixter, Michael Rosa, et al. was initiated on or about June 8, 1998. Rittenband/Deluco Dep. at 11, 24, Tab 9 hereto; Ex. 29, Verified Complaint and Temporary Injunction paperwork, <u>Susan Tilley v. Pacer Electronics, et al</u>, Conn. Sup. Ct., 6/8/98, first page, Tab 4 hereto.

21. The action was initiated shortly before a planned acquisition of Pacer by Anixter. Rittenband/Deluco Dep. at 21, Tab 9 hereto. Concurrent with the filing of the Verified

Complaint, Susan Tilley applied for a temporary injunction to stop the acquisition. Id. at 11-12, 21-22; Ex. 29, Verified Complaint and Temporary Injunction paperwork, <u>Susan Tilley v. Pacer Electronics, et al</u>, Conn. Sup. Ct., 6/8/98, Applic. for Temp. Inj., Tab 4 hereto. Plaintiff chose this time to sue because of defendants' vulnerability based on their desire to complete the acquisition on a timely basis. Rittenband/Deluco Dep. at 21-23, 28, Tab 9 hereto.

22. In filing the action at that time, Attorney Rittenband was following the lead of her client, Susan Tilley, who had been closely tracking the business and financial affairs of Pacer and Anixter, as well as her ex-husband and her ex-husband's new wife. Rittenband/Deluco Dep. at 23, Tab 9 hereto.

23. In fact, counsel for Pacer and Anixter advised Attorney Rittenband that plaintiff had indeed caught them at a vulnerable time, and the defendants quickly settled the matter with a $10,000 payment to plaintiff. Id. at 22, 29; Ex. 30, Release, 6/17/98, Tab 9 hereto.

## The June 1998 Release

24. In return for the settlement payment, Ms. Tilley provided defendants, including Pacer and Anixter, with a signed Release. Rittenband/Deluco Dep. at 29, Tab 9 hereto. That Release, by its terms, covered

> all debts, obligations, suits, actions, causes of actions, trespasses, variances, judgments, extents, executions, damages, claims or demands, in law or in equity, which against [Pacer, Anixter, et al.], the Releasor [Susan Tilley] ever had, now has or hereafter can, shall, or may have, for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these Presents.
> More particularly all claims or demands in law or equity arising or asserted in or in connection with [the action then pending against Pacer, Anixter, Rosa, et al., in Superior Court.]

Ex. 30, Release, 6/17/98, Tab 11 hereto.

6

25. Prior to signing the Release, Susan Tilley had shared with Attorney Rittenband information about her allegation that Pacer had shifted income rightly payable to David and paid it instead to Terri Tilley, and about her allegation that David Tilley and Michael Rosa had misrepresented David's income during the divorce proceeding. Rittenband/Deluco Dep. at 31, Tab 9 hereto.

26. According to counsel for Susan Tilley at the time of the 1998 action and execution of the June 17, 1998 Release, the underlying claim in the 1998 action was that Pacer had shielded David's income by shifting pay from David to Terri, and that underlying claim, as to Pacer and Anixter, was settled and released through that Release. Rittenband/Deluco Dep. at 35, 50-52 (on cross), Tab 9 hereto.

27. In her deposition testimony, Susan Tilley agreed that the Release provides for the release of Pacer and Anixter from all claims that she had against them at the time of her signing the Release. S. Tilley Dep. 10/6/04 at 111, Tab 6 hereto.

28. The June 17, 1998 Release did contain an explicit exception as to any claims by plaintiff against David Tilley. Ex. 30, 6/17/98 Release, Tab 11 hereto; Rittenband/Deluco Dep. at 37-38, Tab 9 hereto.

29. Following the settlement of the June 1998 action against Pacer, Anixter and Michael Rosa, Ms. Tilley pursued remedies against David in the divorce proceeding for the alleged shielding of David's income through Pacer's diversion of compensation from David to Terri, as described in the next two sections.

### Ms. Tilley's 1998 Assertions Regarding the Conduct Alleged in this Case.

30. The Judicial Branch of the State of Connecticut maintains a division entitled the Support Enforcement Services division, which, in general, provides assistance to the beneficiaries of child support ordered by a court in dissolution of marriage and other family actions, including matters related to the establishment, enforcement and, in some instances, modification of child support orders. Affidavit of Timothy Broderick of Support Enforcement Services 2/10/05 at ¶ 2, Tab 12 hereto. At various times, Susan Tilley has communicated with and used the services of Support Enforcement Services in connection with her support award. Id. at ¶¶ 4, 5.

31. On or about July 9, 1998, Susan Tilley drafted a letter addressed to the Review and Adjustment Unit of the Connecticut Support Enforcement Division of the Superior Court. S. Tilley Dep. 10/6/04 at 5-7, Tab 6 hereto; Ex. 11, Letter from Susan Tilley to Support Enforcement Division of Connecticut Superior Court, 7/9/98, Tab 13 hereto.

32. In that July 9, 1998 letter Ms. Tilley stated, "His [David's] employer [Pacer] is masking his income, I am positive of it." Ex. 11, Letter from Susan Tilley to Support Enforcement Division of Connecticut Superior Court, 7/9/98 at 1689, Tab 13 hereto.

33. At her deposition in this matter, Ms. Tilley acknowledged that the foregoing statement, in July 1998, was referring to the same allegations that she makes in the instant case regarding the Corporate Defendants' alleged hiding of David's compensation through diversion of income from David to Terri. S. Tilley Dep. 10/6/04 at 7, Tab 6 hereto.

34. In that same July 9, 1998 letter Ms. Tilley stated that "[m]y child support has been based on his [David's] fraudulent misrepresentation of his wages for the past 7 years through our

separation, during and after the final divorce." Ex. 11, Letter from Susan Tilley to Support Enforcement Division of Connecticut Superior Court, 7/9/98 at 1688, Tab 13 hereto.

35. At her deposition in this matter, Ms. Tilley acknowledged that the foregoing statement was a reference to the same allegations that she makes in the instant case. S. Tilley Dep. 10/6/04 at 7, Tab 6 hereto.

36. On December 1, 1998, Ms. Tilley called the Support Enforcement Division of Connecticut Superior Court and reported that "RESP[ONDENT DAVID TILLEY] AND EMPLOYER (MIKE ROSA, CEO OF PACER 617-935-8330) ARE CONSPIRING TO DIVERT INCOME BY PAYING RESP[ONDENT DAVID TILLEY'S] CURRENT SPOUSE." Support Enforcement Case Note, 12/1/98, Ex. 14 to Affidavit of Timothy Broderick, 2/10/05, Tab 12 hereto.

### Ms. Tilley's Pursuit in the Divorce Action of the Same Claims Pursued Here

37. In the spring of 1999, through her attorney, Beth Rittenband, Susan Tilley brought directly to Superior Court her claims that Pacer and Mr. Tilley had been conspiring to hide the latter's income by diverting his compensation to his current spouse. Ex. 15, Motion for Contempt and Order to Show Cause, 4/19/99, Tab 4 hereto; Ex. 16, Motion for Modification of Orders and Order to Show Cause, 4/19/99, Tab 15 hereto; Rittenband/Deluco Dep. at 45, Tab 9 hereto.

38. On or about April 19, 1999, Attorney Rittenband filed on behalf of Susan Tilley a Motion for Contempt and a Motion for Modification in the dissolution action. Ex. 15, Motion for Contempt and Order to Show Cause, 4/19/99, Tab 14 hereto; Ex. 16, Motion for Modification

of Orders and Order to Show Cause, 4/19/99, Tab 15 hereto; Rittenband/Deluco Dep. at 38-39, Tab 9 hereto.

39. Those April 1999 motions sought relief based on the supposed diversion of income by Pacer from David to Terri Tilley, according to the attorney who drafted them. Rittenband/Deluco Dep. at 45, Tab 9 hereto; Ex. 15, Motion for Contempt and Order to Show Cause, 4/19/99, ¶¶ 2, 3, Tab 14 hereto; Ex. 16, Motion for Modification of Orders and Order to Show Cause, 4/19/99, ¶ 2(b), Tab 15 hereto.

40. The April 1999 motions also raised a claim regarding the alleged fraudulent representations during the divorce proceeding regarding the compensation paid by Pacer to Mr. Tilley – again according to the attorney who drafted them. Rittenband/Deluco Dep. at 45-46, Tab 9 hereto; Ex. 15, Motion for Contempt and Order to Show Cause, 4/19/99, ¶¶ 2, 3, Tab 14 hereto; Ex. 16, Motion for Modification of Orders and Order to Show Cause, 4/19/99, ¶ 2(b), Tab 15 hereto.

41. At the time that she filed the April 1999 motions for modification and the motion for contempt in the divorce proceeding, Attorney Rittenband believed she had good grounds for the claim that income was being transferred improperly by Pacer from David to Terri to assist in the avoidance of child support obligations, and for the allegation that fraud had been committed at the time of the divorce regarding Mr. Tilley's income at that time. The good grounds consisted of communications with and information obtained from her client, Susan Tilley. Rittenband/Deluco Dep. at 55-56, Tab 9 hereto.

42. Susan Tilley cannot remember what Attorney Rittenband was asserting through the April 1999 motions or what she was doing in connection with them. S. Tilley Dep. 10/6/04 at 49, 52, 53, 65, 66, Tab 6 hereto.

43. On May 11, 1999, on Sue Tilley's behalf, Attorney Rittenband issued a notice of deposition in support of the April 1999 motions seeking to depose Michael Rosa, CEO of Pacer and to obtain payroll, wage and benefit records for David Tilley and his current spouse, Terri, reflecting all years of David's employment (going back to 1994). Rittenband/Deluco Dep. at 40-41, Tab 9 hereto; Ex. 48, Notice of Deposition, 5/11/99, Tab 16 hereto.

44. Attorney Rittenband communicated to counsel for Pacer that she was seeking "all wage records of both David and Theresa Tilley, including regular pay, commissions, bonuses, car allowances, benefit plans and anything else that can be considered income for the last five years." Attorney Rittenband stated that this information was "essential" to the April 1999 motions that were currently pending. Rittenband/Deluco Dep. at 42-43, Tab 9 hereto; Ex. 50, Letter from Beth Rittenband to Steven Ecker, 6/11/99, Tab 17 hereto.

45. Following service of a subpoena from Attorney Rittenband, which was voluntarily accepted by counsel for Pacer, Pacer provided Attorney Rittenband with extensive documentation regarding the compensation paid to David and Terri Tilley during their employment with Pacer, and changes to that compensation over time. Ex. 51, Letter from Steven Ecker, 7/1/99, Tab 18 hereto; Ex. 17, Letter and Subpoena from Beth Rittenband to Steven Ecker, 8/2/99, Tab 19 hereto; Ex. 19, Letter from Steven Ecker to Beth Rittenband, 8/18/99, Tab 20 hereto; Rittenband/Deluco Dep. 43-45, 47-48, Tab 9 hereto.

46. Shortly after receiving these documents, Susan Tilley fired Attorney Rittenband and hired Attorney Robert Muchinsky (who is plaintiff's counsel in the instant matter) instead. Rittenband/Deluco Dep. at 19-20, Tab 9 hereto; Ex. 47, Letter from Beth Rittenband to Susan Tilley, 12/6/99, Tab 21 hereto; Appearance of Robert Muchinsky in Tilley v. Tilley in lieu of Beth Rittenband, 12/23/99, Tab 22 hereto.

47. Mr. Muchinsky soon appeared for Susan in Superior Court, where he provided representation in regard to the pending modification and contempt matters, which he later renewed and ultimately assisted Ms. Tilley in resolving through a stipulated judgment. He eventually would file the instant matter in federal court on Ms. Tilley's behalf. Id.; Ex. 22, Motion for Contempt, 6/21/00, Tab 23 hereto; Ex. 23, Motion for Modification of Orders, 6/30/00, Tab 24 hereto; Ex 25, Stipulation, 11/13/00, Tab 25 hereto.

### Susan Tilley's Bankruptcy Proceeding

48. In June 2000, Susan Tilley filed a voluntary bankruptcy petition in U.S. Bankruptcy Court for the District of Connecticut pursuant to Chapter 7. Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00, Tab 26 hereto; Docket Sheet for In re: Susan C. Tilley, Tab 27 hereto.

49. She indicated in her petition that "after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors." Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00, Tab 26 hereto at 00959.

50. A trustee for the estate was appointed. Trustee's Report of No Distribution, 7/18/00, Tab 28 hereto.

51. In filing for bankruptcy, Ms. Tilley submitted to the Bankruptcy Court and to the bankruptcy estate a schedule purporting to list all her personal property. S. Tilley Dep. 10/6/04 at

119, Tab 6 hereto. The directions on this portion of the Court's pre-prepared form ("Schedule B: Personal Property") instruct as follows: "list all personal property of the debtor of whatever kind." Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00 at 00963, Tab 26 hereto.

52. Nowhere in her bankruptcy petition did Ms. Tilley disclose that she possessed any claim for intentional infliction of emotional distress – nor any sort of tort claim at all, against anybody. Id. at Schedule B, pp. 00963-00965; S. Tilley Dep. 10/6/04 at 119-22, Tab 6 hereto. Nor did she supplement or change her list of personal property at any time during the bankruptcy proceeding. Id. at 124-25.

53. Although the bankruptcy form for the personal property schedule contained a line explicitly calling for a listing of "[o]ther contingent and unliquidated claims of every nature," Ms. Tilley listed no claim for emotional distress there, nor any tort claim at all. Rather, she merely listed a claim arising out of her dissolution proceeding "for back child support," (with a "Current Market Value" of $ 1), and a "[p]ossible right to tax refund for 1999." Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00 at 000965, Tab 26 hereto; S. Tilley Dep. 10/6/04 at 121, Tab 6 hereto.

54. In keeping with the fact that no emotional distress or other tort claims were disclosed as personal property, Ms. Tilley did not assert any exemption from the estate for any such claims. S. Tilley Dep. 10/6/04 at 126-27, Tab 6 hereto; Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00, Schedule C ("Property Claimed as Exempt") at 000966, Tab 26 hereto.

55. Under the category for exemptions for "Other Contingent and Unliquidated Claims of Every Nature," Ms. Tilley listed claimed exemptions only for her "possible right" to a tax refund for 1999 and her child support claim. In regard to the latter, Ms. Tilley specified 11

U.S.C. § 522(d)(10)(D) as the "Law Providing [the] Exemption." Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00 at 000966, Tab 26 hereto.

56. On or about July 17, 2000, the trustee submitted a "no asset report," stating that he had not administered any property of the estate and finding that there was no property available for distribution to creditors. Trustee's Report of No Distribution, 7/18/00, Tab 28 hereto.

57. On or about September 26, 2000, Ms. Tilley was granted a discharge under the Bankruptcy Code, and the case was closed on October 11, 2000. Ex. 32, Discharge of Debtor, 9/26/00, Tab 29 hereto; Letter from Ossen & Murphy to Susan (Tilley) Caldwell, 2/28/02, (attached as last page in Ex. 31), Tab 26 hereto; S. Tilley Dep. 10/6/04 at 128, Tab 6 hereto; Final Decree, 10/11/00, Tab 30 hereto.

58. At the time that she submitted her bankruptcy petition, Ms. Tilley declared under penalty of perjury that her petition generally, and her schedules of personal property and claimed exemptions from the bankruptcy estate specifically, were true and correct. Ex. 31, S. Tilley Bankruptcy Petition, 6/8/00 at 000960, 000939,[3] Tab 26 hereto; S. Tilley Dep. 10/6/04 at 118, 117, 127, Tab 6 hereto. Ms. Tilley purports to have taken very seriously the process of applying for bankruptcy and completing her schedules of property and exemptions. Id.

59. Not only did Ms. Tilley have the assistance of bankruptcy counsel in filing her bankruptcy petition, S. Tilley Dep. 10/6/04 at 117, Tab 6 hereto, she was also represented during the filing and pendency of the bankruptcy matter by Attorney Robert Muchinsky, her counsel in this matter and in the divorce proceeding. Id. Indeed, while the bankruptcy matter was pending,

---

[3] The Bates numbering in Exhibit 31, S. Tilley Bankruptcy Petition, 6/8/00, Tab 26 hereto, runs as follows: 000959-974, followed by 000927-954, followed by 000958, 955, 956.

Attorney Muchinsky was representing to the divorce court, on the basis of Ms. Tilley's allegations regarding the alleged shifting of income by Pacer from David to Terri, that Mr. Tilley "has hidden over $300,000 in income since the time of [the October 1994 support order]." Ex 22, Motion for Contempt, 6/21/00 at 1, Tab 23 hereto; see also Ex. 23, Motion for Modification of Orders, 6/30/00 at 2, ¶ 2B, Tab 24 hereto; S. Tilley Dep. 10/6/04 at 69, Tab 6 hereto.

### The Instant Action

60. On July 30, 2002, Susan Tilley filed the instant action against Anixter Incorporated, Pacer/Anixter, Inc. and David G. Tilley, through Attorney Muchinsky. The very first sentence of the Complaint asserts, "This is an action for damages caused to plaintiff by the defendants under the tort laws of the State of Connecticut." Complaint, ¶ 1.

61. The Complaint purports to assert tort claims for fraud (dismissed on September 19, 2003), conspiracy (dismissed on September 19, 2003), and intentional infliction of emotional distress arising out of a conspiracy between Mr. Tilley and his employer to minimize his child support payments by shifting to his new wife income properly payable to him and to misrepresent his income to the Superior Court during the divorce proceedings. Complaint herein.

62. As in her 1998 action against Pacer, Anixter and Michael Rosa, Susan claims in this lawsuit that as a result of the defendants' alleged fraudulent conduct, she lacked sufficient money to provide for the care and well being of her children or pay for basic living expenses or medical care for her children, that she suffered the loss of her business, and that she sustained severe emotional distress. Complaint, ¶¶ 26-29; Ex. 29, Verified Complaint and Temporary Injunction paperwork, Susan Tilley v. Pacer Electronics, et al, Conn. Sup. Ct., 6/8/98, ¶¶ 22-26, 31-35, 40, 45, Tab 4 hereto.

63. According to Susan, the emotional distress that she has allegedly suffered on account of the Corporate Defendants has all been caused by financial hardship due to her low support award, which was supposedly caused in part by the wrongdoing of the Corporate Defendants. S. Tilley Dep. 9/28/04 at 57-59, 66-70, Tab 5. Plaintiff fails to identify any other way in which the alleged misconduct of the Corporate Defendants has caused her emotional distress. Id. at 68.

64. According to Ms. Tilley, her claims against the Corporate Defendants in this lawsuit are based on three things allegedly done wrong by them: misrepresentations to the divorce court regarding Mr. Tilley's income during the divorce proceeding, misrepresentation of Mr. Tilley's income to Support Enforcement personnel in 1999, and diversion of income from David to Terri. Susan is unable to identify any further wrongdoing by the Corporate Defendants. S. Tilley Dep. 9/28/04 at 39-43, Tab 5 hereto.

DEFENDANTS
ANIXTER INC. and PACER/ANIXTER, A
DIVISION OF ANIXTER INC.

By: _____
James R. Smart (ct20982)
Steven D. Ecker (ct03762)
Cowdery, Ecker & Murphy L.L.C.
750 Main Street
Hartford, CT 06103
(860) 278-5555
(860) 249-0012 Fax
E-mail: jsmart@cemlaw.com

-- Their Attorneys

## **CERTIFICATION**

This is to certify that I caused a copy of the foregoing to be sent on April 15, 2005, via first-class mail, postage pre-paid to all counsel of record as follows:

Robert B. Muchinsky, Esq.
39 Russ Street
Hartford, CT 06106

William M. Bloss, Esq.
Jacobs, Grudberg, Belt & Dow, P.C.
P.O. Box 606
New Haven, CT 06503-0606.

Robert A. Nagy Esq.
Assistant Attorney General
Office of the Attorney General
55 Elm Street
Hartford, CT 06106

James R. Smart