NO. FA 92-0513362S

SUSAN C. TILLEY                         :  SUPERIOR COURT

V.                                      :  JUDICIAL DISTRICT OF
                                           HARTFORD-NEW BRITAIN
                                           AT HARTFORD

DAVID G. TILLEY                         :  OCTOBER 18, 1994


MEMORANDUM OF DECISION

This is a contested action for dissolution brought by the Plaintiff wife, against the Defendant husband, on the grounds of irretrievable breakdown.

The Plaintiff and Defendant were intermarried in Manchester, Connecticut on October 3, 1984. Both have been residents of the state of Connecticut for at least a year preceding this action. There are three minor children born of the marriage: REDACTED. Their respective birth dates are REDACTED and REDACTED.



It appears from all the credible evidence that this was a troubled marriage from the outset. The Defendant described the Plaintiff as controlling and possessive of his time and related a number of specific examples of this. Although this was not refuted by Plaintiff, Defendant's own Exhibit 2 may provide somewhat of an explanation. It appears that Plaintiff, the child of an alcoholic mother, had a very tragic childhood and has had difficulty in forming relationships. She testified that as a result of this background she had very low self-esteem. This insecurity appears to have contributed to the failure of the marriage. Yet it was not until Defendant's extra-marital affair with a co-worker, Terry Stevenson, that the marriage failed completely. Defendant remained in the marital home for approximately a month after the Plaintiff confronted him with her knowledge of the affair and attempted to get both of them counseling to try to reconcile their differences. The Defendant attended counseling only on one occasion, however, and vacated the marital residence in June of 1992, just prior to the filing of the complaint in the instant case.

The Plaintiff worked for about three years from the date of the marriage until the birth of her first child, for about one-third of that time working two jobs simultaneously. For at least part of those first three

years she was employed as a manager of Super Cuts, a hairdressing salon and also as a sales secretary for the Hartford Insurance Group. From the birth of her first child in 1987 to the present she has attempted to build a hairdressing business which she has run out of the marital home in two different locations. Her current income from this business is approximately $50.00 per week. She testified that she is experiencing some health problems which make it difficult to stand for long periods of time.

Defendant was employed by IMS, Inc. as a salesman since the date of the marriage. For the years 1991 through 1993 his income was $90,000.00 or more. Some time in 1993 he voluntarily terminated his employment with IMS and took a position with Pacer Electronics working out of Charlotte, North Carolina. He originally was hired at a salary of $1212.00 per week with no commissions or bonuses. There was also a $400.00 a month auto allowance. Because of attorney's fees incurred in litigation instituted by Pacer against IMS, Defendant's former employer, involving certain accounts serviced by the Defendant, Defendant's salary was reduced to $500.00 per week for a period of time. At Defendant's request the President and CEO of Pacer, Michael Rosa, raised that salary to an $800.00 a week level. Mr. Rosa stated, however, that there would be no further raise any earlier than August of 1995. Defendant appears to be

in good health and did not state he had any particular health problems.

For a short time after the marriage the parties lived in Manchester after which they purchased a home in Vernon. Part of the down payment on the home, approximately $6000.00, was borrowed from Defendant's employer. Some time thereafter Plaintiff inherited $34,000.00 from her father, $3,000.00 of which was used to pay the remaining amount on the debt owed to Defendant's employer and the rest was invested in the Vernon home. One of the improvements on the home was to build a salon for the Plaintiff. This home was later sold and another was purchased in Coventry, where Plaintiff currently lives. The Coventry home is the subject of a foreclosure proceeding. It is an 11-room Victorian home to which a salon was added after the parties moved there. For a period of time after the complaint was filed in this matter, Defendant agreed, by way of Court Order, to pay the first mortgage taxes and insurance on this property in the amount of $1,900.00 per month. He also agreed to pay $525.00 per week support for the three minor children. During this period of time the Plaintiff failed to make any payments toward the second mortgage. Defendant's income from IMS took a downward turn and on August 3, 1993 the Court modified his child support payment to $408.00 per week and ordered that he pay $225.00

toward the first mortgage. The plaintiff did not use the $225.00 as partial payment toward the first mortgage, but rather used it for living expenses. Since she had almost no income at that time, she needed the full $633.00 per week for food and clothing for herself and her three children. Although she was not making either the first or second mortgage payment on the Coventry home, she had utility expenses, some day care expenses and other miscellaneous expenses in addition to food and clothing costs.

Some time prior to the August 3, 1993 hearing, on or about April of 1993, Defendant ceased to visit with his three children. Defendant claims that Plaintiff somehow interfered with his visitation. He did not attempt to obtain specific orders regarding visitation until he planned a move from the state of Connecticut to North Carolina to assume his new position with Pacer Electronics. Since January of 1994 he has made no further attempt to seek Court intervention involving visitation.

There were two other witnesses besides the parties who testified in this matter. One was Edward Stevens, President and CEO of IMS, Inc., Defendant's former employer, and Michael Rosa, President and CEO of Pacer Electronics, Defendant's current employer. Mr. Stevens testified that some time during 1993, $15,000.00 of Defendant's income was diverted to one Terry Stevenson, a

co-worker and, then, girlfriend of the Defendant. Although Defendant would like this court to believe that it was at Mr. Stevens' suggestion and continued insistence that the income be diverted, the Court finds more credible Mr. Stevens' explanation that this occurred at Defendant's request. Defendant did state, however, that he participated in this action and that it was an improper action. Nevertheless, had those funds not been diverted they would have been used to some extent for the benefit of the Plaintiff and the children in this case.

In arriving at financial orders in this matter, the Court has considered all the criteria contained in Sections 46b-61, 46b-81, and 46b-82, and 46b-84 of the Connecticut General Statutes.

Accordingly, dissolution of the marriage shall enter on the grounds of irretrievable breakdown and the following order shall enter:

1. Both parties shall have custody of the three minor children, **REDACTED**. The children shall reside with the Plaintiff with reasonable rights of visitation in the Defendant. However, since Defendant has not seen the children for about one and one-half years, the manner and schedule for visitation shall be at

6

the discretion of Nathan's counselor, Dr. Mark Brown, who shall determine the schedule and manner of visitation for all three children. Plaintiff shall provide Defendant with the full name, address and telephone number of said counselor and cooperate with affecting this order.

2. Defendant will pay child support to the Plaintiff in the amount of $260.00 per week. Any additional income which the Defendant receives above that reflected on his October 6, 1994 financial affidavit, including, but not limited to, a raise in salary, must be reported to Plaintiff within two weeks of receipt by Defendant until September 30, 1995. The parties shall exchange copies of their respective tax returns by April 15 of each year for a period of five years.

3. The Court finds that there is an arrearage due from Defendant to Plaintiff as a result of a June 9, 1994 order of this

   Court, in the amount of $1,897.00. Said arrearage shall be paid within 30 days of this order.

4. Defendant shall provide medical and dental insurance, as available through his place of employment, for the benefit of the minor children. Plaintiff and Defendant will share equally in payment of any unreimbursed medical and dental expenses for the minor children.

5. The Defendant shall pay to the Plaintiff $100.00 per week alimony for a period of five years, which shall be non-modifiable as to term and shall terminate upon remarriage of the Plaintiff or the death of either party.

6. The parties shall retain their respective one-half interests in the family home at 1105 Main Street, Coventry, Connecticut. If any deficiency judgment enters as a result

of the pending foreclosure action on said property, one-half shall be the responsibility of the Defendant and one-half shall be the responsibility of the Plaintiff, except that $10,000.00 shall be deducted from Plaintiff's share and borne by the Defendant. If her one-half share is less than $10,000.00, Defendant will be responsible for the entire deficiency.

7. Plaintiff is to return certain items of personal property to the Defendant within two weeks of judgment, to wit: a painted wooden box from Mexico, a stereo system, and cross-country skis, poles and shoes.

8. Defendant will be entitled to declare all three children as dependents for IRS purposes, until such time as Plaintiff earns a minimum gross annual income of $20,000.00. At that time, Plaintiff will be entitled to claim the oldest child as a dependent for IRS purposes.

9. Each party shall be responsible for his or her respective legal expenses.

_____, J.
Santos