1



UNITED STATES DISTRICT COURT
DISTRICT COURT

```
-----------------------X    CIVIL ACTION NO.
SUSAN C. TILLEY,         |   3:02CV1312(JCH)
          Plaintiff,     |

     vs.                 |   September 28, 2004

ANIXTER INCORPORATED,    |
PACER/ANIXTER INC. and   |
DAVID G. TILLEY,         |
          Defendants.    |
-----------------------X
```

<u>DEPOSITION of SUSAN C. TILLEY</u>

Taken before Elzbieta A. Sirois, RPR,
LSR 350, a Court Reporter and Notary
Public within and for the State of
Connecticut, pursuant to Notice and the
Federal Rules of Civil Procedure, at the
offices of Cowdery, Ecker & Murphy, L.L.C,
750 Main Street, Hartford, Connecticut on
September 28, 2004, commencing at
10:47 a.m.

FALZARANO COURT REPORTERS
117 North Saddle Ridge
West Simsbury, CT 06092
860-651-0258

1   the past, an award of that money from this court?

2      A   I thought that was thrown out.  As far as

3   I know that's what the judge said, threw out was

4   the fraud.  Wouldn't that have something to do with

5   the fraud, and we already answered that question.

6      Q   Okay.  So --

7      A   If I'm understanding you right, I think we

8   already answered that question.

9      Q   And the answer is that you are not seeking

10   that?

11           MR. MUCHINSKY:  What was the

12           question?

13  BY MR. SMART:

14      Q   And the answer is that you are not seeking

15   that award of back --

16      A   Not seeking --

17      Q   -- support payments?

18      A   As far as I can recall, yes, that's

19   correct.

20      Q   The back support payments, that's a

21   separate and distinct claim from the emotional

22   distress claim?

23      A   According to what I read and what I

24   understood by reading, that's correct.

25      Q   Is one of the -- I want to ask you some

1    questions to help me understand the alleged

2    improper conduct of my client, the corporate

3    defendants.

4         Is one of your claims that the corporate

5    defendants have made alleged inaccuracies or

6    misstatements to the divorce court at the time the

7    divorce court entered the child support award?

8         A    You have to repeat the question, please.

9         Q    The question is whether one of the things

10   you say my clients did wrong is misstating

11   Mr. Tilley's income in representation to the

12   divorce court?

13        A    Yes, I believe so.

14        Q    And that connection, the claim is that

15   Michael Rosa made misrepresentations to the divorce

16   court, right?

17        A    As far as I recall.

18        Q    It's your understanding that Mr. Rosa was

19   then an official with Pacer at the time he made

20   those alleged misrepresentations?

21        A    Yes.

22        Q    Are you also alleging that there was a

23   diversion of Mr. Tilley's income to another

24   employee, namely Terri Stevenson also Terri Tilley,

25   minimizing his reportable income?

1         A     That's what I believe to be true.

2         Q     Is there anything else that you're

3    alleging that the corporate defendants did wrong?

4         A     Can you be more specific?

5         Q     I'd like you to be more specific.

6         A     Repeat the question.

7         Q     Is there anything else that you allege?

8         A     Other than?

9         Q     Other than the things you've already told

10   me about that the corporate defendants allegedly

11   did wrong?

12        A     And what have I told you?

13        Q     I believe what you just told me was that

14   there was a misrepresentation made by the corporate

15   defendants to the divorce court regarding

16   Mr. Tilley's income and a shifting of compensation

17   away from Mr. Tilley and paying instead to Terri

18   Tilley.

19        A     Yes.

20        Q     Do you allege any other wrongdoing by the

21   corporate defendants?

22        A     They sent false documents to Support

23   Enforcement when I tried to modify through Support

24   Enforcement.

25        Q     So a third item is an alleged

1    misrepresentation to Support Enforcement personnel

2    regarding Mr. Tilley's income?

3        A    I believe so.

4        Q    Which Support Enforcement office are you

5    referring to?

6        A    Hartford.

7        Q    To Hartford?

8        A    Or it would have been -- Hartford deals

9    with North Carolina.  So it could have been -- it

10   was probably sent to North Carolina and then back

11   to Hartford from there.  I requested it from

12   Hartford.

13       Q    When was that alleged misrepresentation?

14       A    I don't recall exactly.  1999, I believe.

15       Q    So one specific instance?

16       A    As far as I can recall right now.  I don't

17   remember.  Also medical bills.

18       Q    You just mentioned medical bills.  I don't

19   understand.

20       A    I asked Support Enforcement to help

21   collect unreimbursed medical bills.

22       Q    Do the medical bills, the unreimbursed

23   medical bills, you mean unreimbursed by Mr. Tilley?

24       A    Yes.  And I believe there was a -- they

25   wrote back saying they don't enforce the

1    unreimbursed medical.

2        Q    But getting back to your claims against

3    the corporate defendants, my clients.  Aside from

4    the three things that you've told me about, is

5    there anything else that you allege the corporate

6    defendants did wrong?  And if you'd like I'd be

7    happy to list the three things I think you've put

8    on the transcript.

9        A    As far as I can remember, there's probably

10    more but at this time, that's all I can remember.

11    I'm sure there's possibly other things.  Right now,

12    that's all I can remember.

13        Q    Okay.  Well, now's the time to tell me so

14    you want to take a second and think about it?

15        A    I'd like to take a break and think about

16    it.

17        Q    Why don't we give you some time right here

18    to think about it and you can let me know.

19        A    They've diverted income.  They've lied to

20    Child Support Enforcement.

21                (Pause.)

22        A    Right now, that's all I can remember at

23    this time.

24        Q    I'd like to talk now about the harm or the

25    injury that you claim to have suffered because of

1      A    That's not what I said.

2      Q    At Christmastime?

3      A    I received gifts from friends, for my

4  children for Christmas.  My mother helped with

5  Christmas so they could have a Christmas.

6      Q    Right.  Okay.

7      A    I didn't receive...

8      Q    Was it your inability to provide gifts to

9  your children at Christmastime to the extent you

10 wanted to, was that a source of stress for you?

11     A    It was part of the stress, part of it.  I

12 went to the Town for food, and the embarrassment

13 and just when I couldn't buy groceries.

14     Q    That was a source of stress having to go

15 to the Town for food?

16     A    Applying for state medical was a source of

17 stress.

18     Q    Applying for state medical, that was a

19 source of stress?

20     A    Yes.  Anything that was enough to bring up

21 three children, timewise and stresswise and without

22 all the extra added, how am I going to pay this and

23 how am I going to feed my children, and.

24     Q    So is it fair to say that the stress that

25 you hold my clients responsible for and the harm

1    that you hold my clients responsible for is due to

2    the financial hardship that you experienced from

3    the low support award?

4        A    I believe that to be true, as far as I

5    understand.

6        Q    Some of the symptoms of stress that you're

7    claiming are your hair falling out, right?

8        A    Yes.

9        Q    Another one is having a physical condition

10   that I think you referred to as MVP with your

11   heart?

12       A    Yes, but it was -- I recently went last

13   year to Rockville Hospital, and they told me that

14   it was not MVP.  It was a stress-related condition.

15   That the MVP valve in my heart was okay.  That they

16   diagnosed it as stress as far as I remember.  That

17   would be at my doctor's records.

18       Q    Your claim is that the stress that brought

19   about that condition was due to the financial

20   hardship that you experienced?

21       A    Yes.

22       Q    Yes?

23       A    It was hard to support three children.

24       Q    And the financial hardship --

25       A    On a limited income.

1       Q    Excuse me.  I just want to get the

2   question out.  The financial hardship that you

3   experienced due to the low support award which you

4   blame on the conduct of my clients in part?

5       A    Yes.

6       Q    Likewise, with the hair falling out,

7   that's distress that you experienced?

8       A    It's a part of stress.

9       Q    And that's part of the stress that you

10  experienced due to the financial hardship?

11      A    Yes.

12      Q    Again, financial hardship that's linked to

13  the alleged --

14      A    I believe that to be so.

15      Q    -- misconduct of my clients in bringing

16  about a low support order?

17      A    I believe that to be true.

18      Q    Okay.  So, the claims, the claims against

19  my clients, in other words, are about the fact that

20  you got a low support award?

21      A    Yes.

22      Q    And why is my client responsible for the

23  low support award?

24      A    I'm not sure I understand the question.

25      Q    You feel that you received a support award

1          By having lower child support it creates

2     stress when you're raising three children and you

3     can't find a place to live or provide for your

4     children properly, so.

5          Q    So the alleged alteration of the pay

6     records, the alleged diversion of income to

7     Ms. Tilley, your claim is that that led to the

8     unduly low support award which caused you financial

9     stress?

10         A    From what I remember, yes.

11         Q    Is there any other way that the alleged

12    alteration of payroll records caused you distress,

13    except by virtue of your getting, what you claim to

14    be, improperly low support awards?

15         A    At this time, there's more, but at this

16    time, I can't answer that.  I'm sure there's more.

17    I could list, I physically, mentally, that I could

18    tell you, but...

19         Q    In other words, you're saying you could

20    tell me more symptoms of your stress?

21         A    Yes.

22         Q    Yes, and all those symptoms would be

23    related to financial distress caused by the unduly

24    low support award, right?

25         A    Yes.

1    Q    The alleged alteration of their payroll

2    records and diversion of income to Terri Tilley,

3    the alleged misrepresentations to the divorce court

4    about Mr. Tilley's income, and the alleged

5    misrepresentations to the Support Enforcement

6    authorities, all those three alleged kinds of

7    misconduct by my clients caused you injury,

8    according to your claim, because they led to low

9    support awards, a low support award, right?

10    A    Yes.

11    Q    Okay.

12    A    Which led to emotional distress?

13    Q    Yes.

14    A    Don't want to forget that.

15    Q    And all the emotional distress that you're

16    claiming is linked to this financial hardship that

17    you blame in part on my clients?

18    A    All of the -- it has something -- all

19    related.  It's all related.

20    Q    It's all related to the --

21    A    Everything's related.

22    Q    -- financial distress that you blame on my

23    clients?

24    A    Emotionally, financially.  It's related to

25    many things.

1      Q    Aside from financial distress, that you

2  blame on my clients, can you identify any other way

3  in which the alleged misconduct of my clients

4  caused you emotional distress?

5      A    At this time...

6      Q    Are you saying at this time, no?

7      A    At this time, no.

8      Q    So as you sit here now, you can't identify

9  injuries -- at this time as you sit here, you

10  cannot identify any injuries attributable, caused

11  by, my clients other than financial distress linked

12  to the low support award, correct?

13      A    There's emotional distress.  I didn't say

14  just financial.

15      Q    The emotional distress?

16      A    The emotional distress that's linked to

17  lower child support awards.  There's medical

18  distress, there's.

19      Q    And the medical distress you're claiming

20  is linked also to the low child support awards?

21      A    I believe so.

22      Q    The distress that you're claiming, in

23  general, in other words, is linked to the low child

24  support award?

25      A    There's a lot of stress that comes to --

1    with financial.  So that's what you're asking,

2    there is, but at this time that's...

3        Q    As you sit here now, the distress that

4    you're telling me about is all linked to the

5    financial distress due to the low support award?

6    It's a simple yes or no question.

7                    MR. MUCHINSKY:  I think she's

8                answered that 15 times

9                    THE WITNESS:  I know.

10   BY MR. SMART:

11       Q    And the answer is, no, you can't identify

12   anything other than --

13       A    I can identify a lot.  At this time under

14   this circumstance here, there's medical, there's

15   being thrown out of a home with three children and

16   not having anywhere to live but a shelter or your

17   mom.  If it weren't for my mom purchasing a home

18   for us, all right.

19            There's the stress of whether or not

20   you're going to have electricity next week.

21   There's the stress of whether or not you're going

22   to heat the house.  There's stress of the

23   children's school clothes.  Why they can't have a

24   pair of shoes for school.  There's stress of -- I

25   could sit here for two, three hours probably and

1    give you a million reasons or instances, situations

2    where I have been in stress.  Embarrassing

3    situations.

4        Q    Yes.

5        A    But I don't know what you're asking me at

6    this time.

7        Q    I'm really just asking a simple question,

8    which is all of that stress.

9        A    But you're not naming all -- name all the

10   stress I just named to you, and I'll go on.

11       Q    All the stress that you just described,

12   the embarrassment of having to go on a -- the

13   embarrassment of taking -- having to take gifts,

14   the uncertainty about housing, the distress

15   associated with difficulty in making ends meet, the

16   distress involved in --

17       A    Not feeding my children.

18       Q    -- having to say no to your children.  The

19   stress involved in not feeding your children as you

20   would like, it's all connected to the low support

21   award, correct?  It's just a simple question.

22       A    That's correct.

23       Q    All right.

24            MR. MUCHINSKY:  When do you want to

25            take a break?  It's 1 o'clock.