1      MR. SMART:  Could you read it back.

3           (Record read by the
4            Court Reporter.)

6    A    No.  I was seeking for a modification in
child support and contempt.  I don't know.  It says
contempt in order to show cause.  I don't know.
I'm totally confused.
BY MR. SMART:
     Q    Would you agree that Exhibit 15 makes an
allegation that Mr. Tilley had committed fraud in
the reporting of his income?
     A    Based on the payroll records that she
received that she subpoenaed, she put, "The
Defendant's actual income was considerably greater
at said time of orders."  I didn't tell her how to
type this up, but that's what she put down.
     Q    So in other words, you would agree that
there is an allegation there?
     A    Based on his records she received.
     Q    I'm just actually not asking about the
records, but just asking whether you would agree in
this exhibit, in this motion in April of 1999,
there was an allegation made that Mr. Tilley's

1   question one more time.
2              MR. SMART:  Can you read it back,
3       please.
4
5              (Record read by the
6              Court Reporter.)
7
8       A    She says here, "At the time of said orders
9   was and is considerably less than his actual
10  current income, numerous details to which shall be
11  presented through evidence at the hearing on this
12  motion."
13          So I don't know what she was going to
14  show, but it says that his income at this time,
15  December 1st, was considerably more than his
16  actual -- is considerably less than his actual
17  current income.  So I'm assuming she had in her
18  possession something that said he was earning more
19  than what he was making when we were first
20  divorced.
21      Q    Okay.  It also says, doesn't it, "That the
22  income claimed by Defendant at the time of said
23  order was and is considerably less than his actual
24  current income," right?
25      A    That's what it says.

1  Q    Do you know whether that was a reference
2  to the alleged misrepresentation at the time of the
3  divorce proceeding, do you know?
4  A    I don't know what she was referring to.
5  Q    Showing you now what's been marked as
6  Defendants' Exhibit 21. That is a motion for
7  contempt filed by Beth Rittenband on your behalf in
8  the divorce proceeding on around December 1st,
9  1999, right?
10 A    Yes.
11 Q    Have you seen this before?
12 A    I remember seeing this when it was, but I
13 don't remember when I actually saw this. I don't
14 know whether it was when I received my file from
15 her or if it was during this time.
16 Q    When did you --
17 A    I don't know when she actually showed me
18 these documents before she filed.
19 Q    When did you receive --
20 A    I don't remember.
21 Q    -- her file?
22 A    I received her file after I told her I
23 didn't want her to represent me anymore. She
24 dropped my file off in a parking lot where I met
25 her, and then she gave me my whole file at that

1  time, but I don't remember during the time of these
2  orders, I don't remember if she gave them to me or
3  not.
4     Q   When she gave you her file, did she give
5  you any of her notes?
6     A   She gave me whatever was in the file.  I
7  don't know.
8     Q   Meaning you don't know whether she gave
9  you her notes?
10    A   I don't think she gave me any notes.  I
11 think she just gave me documents of what she did
12 and I don't remember seeing any notes.
13    Q   Did she give you back documents that you
14 had given her?
15    A   I don't think I gave her any documents,
16 really.  I don't remember.  If I did give her
17 documents, I don't even remember what they were.
18 It was a long time ago.
19    Q   Did you produce to me through
20 Mr. Muchinsky in this action all the materials that
21 she gave you when she returned the file to you?
22    A   Yes, I did.  All of it.
23    Q   Showing you now what has been marked as
24 Defendants' Exhibit 22.  That is the motion for
25 contempt filed on your behalf from the divorce

```
 1    proceeding on or around June 21, 2000, by Attorney
 2    Muchinsky, right?
 3         A    Yes.
 4         Q    Have you seen this document before?
 5         A    Yes.
 6         Q    Showing you now what's been marked as
 7    Defendants' Exhibit 23.  That is a motion for
 8    modification filed by Mr. Muchinsky on your behalf
 9    in the divorce proceeding around June 30th, 2000,
10    right?
11         A    Yes.
12         Q    Have you seen that before?
13         A    Yes.
14         Q    Now, do you know whether Exhibits 22 and
15    23 are raising an allegation that there was a
16    misrepresentation made before the divorce court in
17    1994 regarding Mr. Tilley's income?
18         A    It says that, Income claimed by defendant
19    at the time of said orders was considerably less
20    than actual current income.
21         Q    Which document are you looking at now?
22         A    This is document number 23.
23         Q    Okay.
24         A    "Numerous details which failed to be
25    presented through evidence at the hearing of this
```

1  motion since the time of said orders. Defendant
2  has concealed over $300,000 in income."
3      Q   Okay. So, I'll just repeat my question
4  and ask you to answer it. Do you know whether this
5  motion is requesting a modification on the basis
6  of, among other things, the claim there was a
7  misrepresentation made at the time of the 1994
8  divorce proceedings regarding Mr. Tilley's income?
9      A   No. It is pertaining to a modification
10 based on his current income. That he was -- it's a
11 modification based on what the payroll records were
12 saying he was earning.
13     Q   Okay. When it says the income claimed by
14 the Defendant at the time of said orders was
15 considerably less than his actual current income,
16 doesn't that mean that his income at the time of
17 the 1994 divorce proceeding was actually higher
18 than he represented at the time?
19     A   It doesn't indicate that at all.
20     Q   Okay. That's not how you read it then?
21     A   It indicates that the income claimed by
22 Defendant at the divorce trial was lower than what
23 it was at the time of this order.
24     Q   Okay. When it says, "Defendant has
25 concealed over $300,000 in income," that's

1  reference --

2     A    A reference to?

3     Q    -- to his -- that is a reference to the

4  allegation that income was diverted from David to

5  Terri Tilley, isn't it?

6     A    Based on that piece of paper?  The wage

7  switch, yes, it looks like it.  From what I'm

8  understanding, it looks that way, yes.  Based on

9  the wage document of the wage switch, and what he

10 was earning at this time, his current...

11    Q    Showing you now what has been marked as

12 Defendants' Exhibit 24.  That's a motion for

13 contempt filed in the divorce proceeding on or

14 around September 1st, 2000, by Attorney Gersten on

15 behalf of David Tilley, correct?

16    A    I don't know.  I'm reading it.  I don't

17 remember reading this.

18    Q    Would you answer my question, please,

19 though?

20    A    Yes.

21              MR. SMART:  Could you read it back.

22

23              (Record read by the

24              Court Reporter.)

25

```
 1    A    No, I didn't.  I didn't even know she
 2  filed -- I didn't even know she even filed this
 3  paper, Exhibit Number 29.  I just thought she filed
 4  an injunction.
 5    Q    So it's your testimony that you didn't,
 6  you didn't read it and sign it before it got filed?
 7    A    Not that I remember, no.
 8    Q    Is there any problem with your memory?
 9    A    There is so much paperwork and so many
10  years, but I do not remember.  I remember she was
11  in a hurry to go to Florida, and she called me from
12  Florida when she came back and she did not show me
13  because I was asking her for anything like this.
14    Q    So is there any problem with your memory?
15    A    No.
16    Q    No?
17    A    Not that -- I mean.
18    Q    So can we rely on your memory?
19    A    I hope so.
20    Q    So it's your testimony that we can rely on
21  the things that you say you remember?
22    A    I'm relying on my own memory from what I
23  can remember I guess.
24    Q    Okay.  You don't remember swearing to the
25  veracity of -- withdrawn.
```

1          You would remember if you had read and
2    signed something saying you had read this document
3    before it got filed?  You would remember that?
4        A    I would hope I would remember.  I don't --
5    I don't remember seeing this.
6        Q    So can we assume from the fact that you
7    don't remember it that what you're asserting is
8    that you didn't sign it?
9        A    I'm telling you that I never remember
10   seeing this document.
11       Q    When you take an oath, Ms. Tilley, does it
12   make an impression on you?
13       A    Yes, it does.
14       Q    Do you take an oath seriously?
15       A    Yes, I do.
16       Q    When you swear you're telling the truth,
17   you really mean you're going to tell the truth?
18       A    Yes.  I don't have anything to lie about
19   here.
20       Q    Is taking an oath to tell the truth
21   important enough that you would remember it?
22       A    Yes.  I would hope to remember something
23   like this or anything.
24       Q    So did you know this was going to be filed
25   before it got filed or not?

1  arising or through in or in connection with an
2  action" which was the injunction she placed in
3  Superior Court for me is what I hired her to do.
4  "Pending in Superior Court of the state of
5  Connecticut for Judicial District for Hartford/New
6  Britain," I asked her what it was. She says, As
7  pertaining to the CV docket number and the
8  injunction that was placed on the company.
9     Q   You would agree with me, though, that the
10 passage that I read to you is much broader than
11 that, isn't it?
12    A   Yes, it is.
13    Q   What the document actually says is that
14 you're releasing the releasees from any and all
15 claims that you had against them at that time,
16 right?
17    A   At that time. At that time up until the
18 time of 1998. Sorry.
19          (Interruption.)
20    A   Up until the time of 1998.
21    Q   Let's just go off the record. There's a
22 telephone ringing in Ms. Tilley's bag.
23
24          (Off-the-record discussion.)
25

1   because of the actions of the defendants?
2       A   That's what it says.
3       Q   And specifically because of the action of
4   defendant Pacer, right?
5       A   It says, "As a further result of defendant
6   Pacer's actions, plaintiff suffered severe
7   emotional strain."
8       Q   This was an action filed by your attorney,
9   correct?
10      A   Yes, that's what it says.
11      Q   You aren't claiming that it wasn't filed
12  by your attorney in your name, are you?
13      A   I'm not denying that my attorney filed
14  this, no.  I just don't remember seeing it or
15  signing it.
16      Q   But she was working for you at the time?
17      A   Yes, she was.
18      Q   Ms. Tilley, have you filed for bankruptcy?
19      A   Yes, I have.
20      Q   When was that?
21      A   1999, July, I believe.
22      Q   It's your recollection it was July of
23  1999?
24      A   I don't remember, but I think so.
25      Q   Have you ever been diagnosed with a memory

```
 1   problem, Ms. Tilley?
 2       A    No, I haven't, no.
 3       Q    No.  Have you ever --
 4       A    I always have a lot on my mind with three
 5   children raising them on your own, yes.
 6       Q    Have you ever talked to a doctor about
 7   having a memory problem?
 8       A    No.
 9       Q    No.  All right.
10            MR. SMART:  Could you mark this as
11       Defendants' 31, please.
12
13            (Defendants' Exhibit No. 31:
14             Marked for Identification.)
15
16   BY MR. SMART:
17       Q    Just showing you now what's been marked as
18   Defendants' Exhibit 31.  Are those documents that
19   you produced to me in this action?
20       A    Yes.
21       Q    Is that your bankruptcy petition --
22       A    Yes, it is.
23       Q    -- you filed in U.S. Bankruptcy Court?
24       A    Yes.
25       Q    You signed this petition, didn't you?
```

```
1    A    Yes, I did.
2    Q    Your signature is on page 960?
3    A    I only have until 956.
4    Q    If you look at the second page of the
5  exhibit?
6    A    Okay.  Yes.
7    Q    You signed there, right?
8    A    Yes.
9    Q    It's -- your signature is dated there?
10   A    June 8, 2000.
11   Q    Okay.  So it was 2000 that you signed?
12   A    That's correct.
13   Q    Signed and filed in 2000, right?
14   A    It says June 8, 2000, I don't know when he
15  actually filed it.
16   Q    But you didn't file it in 1999, correct?
17   A    No.
18   Q    So you want to change your testimony on
19  that?
20   A    Yes, I have no reason to lie about when I
21  filed my bankruptcy.
22   Q    Everything was aboveboard with regard to
23  your bankruptcy filing?
24   A    I handed Neal Ossen what he asked me to
25  hand him, everything I had concerning my debts and
```

```
 1    he filed the bankruptcy for me.
 2        Q    So, as far as you know then, everything
 3    was aboveboard --
 4        A    Yes.
 5        Q    -- in your -- let me finish.  In your
 6    filing bankruptcy petition?
 7        A    Yes.
 8        Q    Right.  You did have an attorney at the
 9    time?
10        A    Yes, I did.
11        Q    Who was that?
12        A    Neal Ossen.
13        Q    Okay.  Where is his practice?
14        A    In Hartford.
15        Q    You actually had another attorney at that
16    time too, didn't you?
17        A    Robert Muchinsky.
18        Q    When you signed here on the second page of
19    the packet, you signed that under penalty of
20    perjury, right?
21        A    Yes.
22        Q    Okay.  You took this signing pretty
23    seriously?
24        A    Of course, yes.
25        Q    You also signed in another place right on
```

1  page 939?
2     A   Yes.
3     Q   What you signed to there was a declaration
4  under penalty of perjury, right?
5     A   Yes.
6     Q   This declaration pertains particularly to
7  the schedules that were submitted with your
8  petition, right?
9     A   Yes. I believe so.
10    Q   You signed that you had read the foregoing
11 schedules and that you were attesting that they
12 were true and correct to the best of your
13 knowledge, information, and belief, right?
14    A   I believe I met my attorney in his office
15 and we went over it together, and I signed it at
16 that time, yes.
17    Q   Okay. And it pertains -- this signature
18 on 939 pertains specifically by the language of the
19 declaration to the schedules, correct?
20    A   First time I filed bankruptcy, as far as I
21 know, I was signing on the bankruptcy, yes.
22    Q   This, as I said, there was two signature
23 and this one in particular, what you stated here
24 was that you had read the foregoing schedules and
25 that they are true and correct to the best of your

```
 1   knowledge, information, and belief, right?
 2       A    Yes.
 3       Q    Some of those schedules include
 4   Schedule A, right, on page 962?  That's asking
 5   about all the real property that you owned at that
 6   time?
 7       A    Yes.
 8       Q    What you put down there is that you didn't
 9   own any, right?
10       A    No.
11       Q    Schedule B is a list of your personal
12   property at that time, right?
13       A    Yes.
14       Q    Right?
15       A    Yes.
16       Q    What you were doing there was listing all
17   your personal property that you owned at that time,
18   right?
19       A    Yes.
20       Q    The things that you listed included a
21   certain amount of cash on hand on your person,
22   right?
23       A    Yes.
24       Q    And your checking account at First
25   Federal?
```

```
 1        A    Yes.
 2        Q    $200?
 3        A    Yes.
 4        Q    Checking business account at First
 5   Federal, $200?
 6        A    Yes.
 7        Q    Is that a separate account you had for the
 8   salon?
 9        A    Yes.
10        Q    And your household goods in the amount of
11   $4,500 at the premises?
12        A    Yes.
13        Q    That was at your residence in other words?
14        A    Yes.
15        Q    Your decorative pictures and certain books
16   for $500 were listed there?
17        A    Yes.
18        Q    And you listed certain clothes that you
19   had at the premises valued at $3,500?
20        A    For me and the children, yes.
21        Q    And you listed your rings and your costume
22   jewelry valued at $1,000?
23        A    Yes.
24        Q    Then there's a lot of nones or a number of
25   other categories in form, right?
```

```
 1     A    I have no annuities or savings plans.
 2     Q    So going to number 20, it says one of the
 3  items was your possible right to a tax refund for
 4  1999, you listed a current market value of one
 5  dollar?
 6     A    Well, I didn't know what it was so my
 7  attorney put down one dollar.
 8     Q    That was his advice to you?
 9     A    Yes, it was.
10     Q    You also listed as one of the items of
11  property you owned there a claim for ex-husband and
12  ex-husband's employer, claim against husband and
13  ex-husband's employer for back child support,
14  right, for one dollar value?
15     A    Yes, because we didn't know, again.
16     Q    Sorry?
17     A    We weren't sure of the amount so he told
18  me to put a dollar.
19     Q    He told you to put a dollar?
20     A    Yes.
21     Q    And you listed your 1995 Grand Am?
22     A    Yes.
23     Q    5,500?
24     A    Yes.
25     Q    Your hairdressing chair, scissors, and
```

```
 1   combs for $200, right?
 2       A    Yes.
 3       Q    And is that the extent of the personal
 4   property that you disclosed to the bankruptcy
 5   court?
 6       A    That I can remember, yes.
 7       Q    You didn't file, you know, a list
 8   somewhere else in this packet or anything?
 9       A    I haven't looked at this in a while.  I
10   don't know.
11       Q    Why don't you just take your time and just
12   let me know if there's any other personal property
13   that you disclosed to the court.
14       A    Just under personal property, but it's
15   15,000 personal property for assets.
16       Q    What are you looking at?
17       A    B on summary of schedules.
18       Q    Summary of schedules, and is that on
19   page 961?
20       A    Yes, it is.
21       Q    That has a total asset figure of 15,612?
22       A    Yes.
23       Q    That's actually the sum of all the things
24   that you listed in Schedule B, isn't it?
25       A    I don't know.
```