1    Q    If you look down at the bottom of Schedule
2  B, what does it say is the total?
3    A    9,910.
4    Q    You're looking at the first page of
5  Schedule B there?
6    A    Yes.
7    Q    Where it says the subtotal total of this
8  page?
9    A    Subtotal, yes.
10   Q    That's 9,910?
11   A    That's what it says.
12   Q    Then the subtotal on the next page is
13  what?
14   A    Schedule B, personal property.
15   Q    Yeah.  It's a continuation sheet, right,
16  the next page, subtotal is zero, right?
17   A    It says zero.
18   Q    And the then there's a subtotal on the
19  third page, number 965, right, you see that?
20   A    Yes.
21   Q    Where it says the subtotal there is 5,702?
22   A    Yes.
23   Q    Then there's a total, total including all
24  the subtotals from all the pages, right?
25   A    Yes.

```
 1      Q    That's the 15,612?
 2      A    Yes.
 3      Q    That's actually what's written in the
 4  summary page at page 961; is that right?
 5      A    It looks to be.
 6      Q    So on page 961, the summary of schedules,
 7  there isn't actually any additional personal
 8  property being listed there, correct?
 9      A    Not that I can see.  I don't see any.  It
10  says creditors holding secured claims something.
11      Q    So, you don't see it, and it just isn't
12  there, right?
13      A    It says 15,612.
14      Q    Yes.  I can read it too.
15      A    In assets.
16      Q    That is the total from Schedule B, right?
17      A    Yes.
18      Q    Okay.  So there isn't any separate listing
19  there or anywhere else in this schedule of your
20  personal property, right?
21      A    Right.
22      Q    And anywhere else in any of these
23  documents you filed as part of your petition?  No
24  other additions were made by you to the list of
25  your personal property, right?
```

1  A   Not that I found in here.

2  Q   You don't have any recollection of making
3  any additions or changes to that Schedule B?

4  A   No, not to Schedule B, no.

5  Q   Okay. So Schedule C, it's a list of the
6  property you claim as exempt, correct, that's on
7  page 966.

8  A   That's what it says, Schedule C, property
9  claim as exempt.

10 Q   Do you recall -- just to try to shorten
11 this a little bit. Did you schedule, on this
12 Schedule C basically, all the personal property you
13 claimed in Schedule B?

14 A   Say that again please.

15 Q   In Schedule C you were listing things that
16 were your personal property that you claimed were
17 exempt from the bankruptcy proceeding, right?

18 A   My lawyer did. I gave him all my
19 information and that's what he put, so that's what
20 it was, yes. I didn't type this up. I just gave
21 him my information, and he did my bankruptcy. I
22 gave him a check, and it was done.

23 Q   The things that are listed on Schedule C
24 as exempt property include your cash on hand,
25 right?

```
 1      A    Yes.
 2      Q    It includes also your business and your
 3 personal checking accounts?
 4      A    Yes.
 5      Q    And it includes your household goods and
 6 furnishings at the premises?
 7      A    Yes.
 8      Q    And your decorative pictures and books?
 9      A    Yes.
10      Q    Also your clothing?
11      A    Yes.
12      Q    Your rings and costume jewelry?
13      A    Yes.
14      Q    And your possible right to a tax refund
15 for 1999?
16      A    Yes.
17      Q    Your claim against ex-husband and
18 ex-husband's employer for back child support?
19      A    Yes.
20      Q    Your 19995 Grand Am?
21      A    Yes.
22      Q    Hairdressing chairs, scissors, or combs?
23      A    Yes.
24      Q    Do you recall making any additions to that
25 list of exemptions?
```

```
 1      A    I don't remember.
 2      Q    Flipping just to 939, again, that's your
 3   declaration concerning debtors schedules under
 4   penalty of perjury, right?
 5      A    Yes.
 6      Q    Again, that's your signature there, right?
 7      A    Yes.
 8      Q    Right?
 9      A    Yes.
10      Q    There you're declaring that you have read
11   the foregoing summaries and schedules and that
12   included Schedule A and Schedule B and Schedule C,
13   right?
14      A    That we went over?
15      Q    Yes.
16      A    Yes.
17      Q    You declared that they were true and
18   correct to the best of your knowledge, information,
19   and belief at that time?
20      A    Yes.
21      Q    You took the whole process very seriously?
22      A    Yes, I did.
23
24              (Defendants' Exhibit No. 32:
25               Marked for Identification.)
```

───── Falzarano Court Reporters ─────

1
2    BY MR. SMART:
3        Q    Is that your bankruptcy discharge that you
4    received from the bankruptcy court?
5        A    Yes.
6        Q    You've seen that before?
7        A    Probably.  This was at the court?  Was
8    this -- I don't remember seeing it, but...
9        Q    Do you understand this to be the document
10   from the court providing you have been discharged
11   from the bankruptcy process?
12       A    It says that, yes.
13       Q    So, turning to a chapter before the
14   bankruptcy, namely the foreclosure on your house,
15   can you tell me why the foreclosure happened?
16       A    My attorney told me to -- it was no use
17   trying to hang onto it because all kinds of
18   reasons.  Finally, I let it go, and my child
19   support was lowered to $200 per week and prior to
20   that when David took me to court again, because he
21   said he was no longer getting bonuses or
22   commissions from IMS, they lowered my child
23   support.  And then with Pacer they lowered the
24   child support again, and because David refused to
25   help me refinance or even put the house on the