COPY

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------X
SUSAN C. TILLEY,                  CIVIL ACTION NO.
       Plaintiff,                 3:02CV1312(JCH)

    vs.                           October 20, 2004

ANIXTER INCORPORATED,
PACER/ANIXTER INC. and
DAVID G. TILLEY,
       Defendants.
------------------------X

DEPOSITION of BETH DELUCO

Taken before Elzbieta A. Sirois, RPR,
LSR 350, a Court Reporter and Notary
Public within and for the State of
Connecticut, pursuant to Notice and the
Federal Rules of Civil Procedure, at the
offices of Cowdery, Ecker & Murphy, LLC,
750 Main Street, Hartford, Connecticut on
October 20, 2004, commencing at 4:13 p.m.

FALZARANO COURT REPORTERS
117 North Saddle Ridge
West Simsbury, CT 06092
860-651-0258

——— Falzarano Court Reporters ———

```
 1     APPEARANCES:
 2
 3       For the Plaintiff:
 4          LAW OFFICES OF ROBERT B. MUCHINSKY
            39 Russ Street
 5          Hartford, CT 06106
            860.297.0037
 6               By:   ROBERT B. MUCHINSKY, ESQ.
 7
 8       For the Defendants Anixter Incorporated,
         Pacer/Anixter, Inc.:
 9
            COWDERY, ECKER & MURPHY
10          750 Main Street
            Hartford, CT   06103-2703
11          850.278.5555
                 By:   JAMES R. SMART, ESQ.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

S T I P U L A T I O N S

It is stipulated by counsel for the parties that all objections are reserved until the time of trial, except those objections as are directed to the form of the question.

It is stipulated and agreed between counsel for the parties that the proof of the authority of the Notary Public before whom this deposition is taken is waived.

It is further stipulated that any defects in the Notice are waived.

It is further stipulated that the deposition may be signed before any Notary Public.

```
 1              (Deposition commenced:  4:13 p.m.)
 2
 3         BETH DELUCO, Deponent, of 20 Deer
 4    Run, Plantsville, Connecticut, being first
 5    duly sworn by the Notary Public, was
 6    examined and testified, on her oath, as
 7    follows:
 8
 9              DIRECT EXAMINATION
10
11  BY MR. SMART:
12       Q    Good afternoon, Ms. Deluco.
13       A    Mrs.
14       Q    Mrs. Deluco.  I'm James Smart.  I
15  introduced myself to you earlier.  I represent the
16  Defendants in a Federal court action.  The clients
17  I represent are Anixter Inc and Pacer/Anixter, a
18  division of Anixter Inc.  Before we get into
19  substance, let me just ask you if you've ever been
20  deposed before?
21       A    No.
22       Q    Have you ever conducted a deposition as an
23  attorney before?
24       A    Yes.
25       Q    Very good.  So I'm sure you're familiar
```

1  with the ground rules?
2      A    Yes.
3      Q    So, just to remind you, please keep your
4  voice up, please provide verbal answers so that the
5  Reporter can take down your answers and please
6  allow me to finish my question before you start
7  answering.  I'll also try to let you finish your
8  answer before I ask another question so that we're
9  not talking at the same time.  So to begin, let me
10 just ask if you are appearing here by a subpoena
11 that I issued to you?
12     A    Yes.
13     Q    In a few moments I will actually have that
14 subpoena marked and ask you to identify it for the
15 record, as soon as the copies come back into our
16 room.  Let me move on for now, briefly, to some
17 background information about your professional
18 history and your work as a lawyer.  Let me first
19 ask you, when -- let me just ask you, are you an
20 attorney?
21     A    Yes.
22     Q    At what point were you admitted to the
23 bar?
24     A    1994.
25     Q    That was the bar in Connecticut?

```
 1        A    Correct.
 2        Q    Are you practicing now as an attorney?
 3        A    No.
 4        Q    During what period of time did you
 5   practice as an attorney?
 6        A    1994 to 1999.
 7        Q    Do you remember precisely the month in
 8   1999 when you stopped working as an attorney?
 9        A    Let me think for a minute.  I actually
10   practiced part-time until the spring or summer of
11   2000.  It was my first year teaching the '99-2000
12   school year and I was wrapping up cases and
13   withdrawing from them.  So I didn't officially
14   close my practice until summer of 2000.  I think.
15        Q    So in December of 1999 you were still
16   practicing part-time?
17        A    Part-time, right.
18        Q    After you wrapped up your practice in
19   early 2000, what professional activities did you
20   start doing then?
21        A    Teaching high school.
22        Q    Are you currently doing that?
23        A    I am.
24        Q    Where are you a teacher?
25        A    Southington High School.
```

```
 1        Q    What subject do you teach?
 2        A    Government.
 3        Q    Do you do any kind of legal practice at
 4   all now?
 5        A    Not for money.  Occasionally I help a
 6   friend.
 7        Q    Are you still licensed as an attorney in
 8   Connecticut?
 9        A    Yes.
10        Q    During that time when you were practicing,
11   can you describe to me -- let's just start
12   chronologically.  We don't have to spend a lot of
13   time on these topics, but where did you first
14   practice until when?
15        A    I worked for John Schoenhorn for about
16   11 months and then I opened my own practice.
17        Q    So, you would have opened your own
18   practice some time in 1995, approximately?
19        A    No, wait.  I worked for Mack Buckley until
20   some time -- I think I started working for John
21   Schoenhorn in May of '95 until April of '96.  So, I
22   worked for Mack Buckley up until May of '95, I
23   think.
24        Q    Then after working for Mack Buckley and
25   Mr. Schoenhorn, then you opened your own practice?
```

```
 1        A    Correct.
 2        Q    Where was your practice located?
 3        A    Hartford.
 4        Q    Were you always in the same office or did
 5   you move around?
 6        A    Well, I worked out of my home for a while
 7   and the only actual office space that I had was in
 8   Hartford in the same place.
 9        Q    When was the period when you had a
10   separate office?
11        A    I really don't remember when that started.
12   I had it for the last couple of years.
13        Q    Last couple of years.  Do you remember
14   where that office was?
15        A    40 Grand Street.
16        Q    40 Grand Street, okay.  What was -- let me
17   withdraw that.  Was there a specialty in your
18   practice?
19        A    I did mostly juvenile, child protection,
20   juvenile delinquency, criminal and family.  I had
21   had a couple of personal injury cases and some, a
22   few real estate closings.
23        Q    So it sounds to me as though primarily you
24   were doing different kinds of litigation?
25        A    Correct.
```

```
 1        Q    Did there come a time when you undertook
 2   to represent a woman named Susan Tilley?
 3        A    I need her privilege to be waived on the
 4   record before I can answer any more questions.
 5        Q    Okay.
 6             MR. MUCHINSKY:  I've consulted with
 7             Susan Tilley, and she's agreed to waive
 8             attorney client privilege.
 9        A    Okay.  Yes, I did.
10        Q    So, in other words, you did eventually at
11   some point begin representing Susan Tilley?
12        A    Yes.
13        Q    Do you recall when that was?
14        A    No.
15        Q    Let's take a brief break because there's a
16   document I'd like to show you.
17
18             (Recess taken.)
19
20   BY MR. SMART:
21        Q    Mrs. Deluco, before we went on break I
22   think you mentioned that you did not recall a date
23   when you started to represent Susan Tilley; is that
24   right?
25        A    Correct.
```

1   Q   Perhaps this document will refresh your
2   recollection.  Showing you what was marked earlier
3   as Defendants' Exhibit 18.  Is that your fee
4   agreement that you had with Susan Tilley?
5   A   Yes.
6   Q   Is it dated 5-29-98?
7   A   Well, the last number is cut off but
8   5-29-9.  It looks like it might be an eight.  I
9   don't know.  On this copy the number's cut off on
10  the end.
11  Q   Is there any reason to think that you
12  didn't begin to represent Ms. Tilley around May
13  29th, 1998?
14  A   No.
15  Q   Now, just jumping out of sequence briefly,
16  you had mentioned earlier that you were appearing
17  here by subpoena.  Could we mark this, please.
18  A   Did you want to use the one that was
19  actually served on me or?
20  Q   No, I don't think we need to do that as
21  long as you can tell me that this copy that I'm
22  going to use is the same.  So we can go ahead and
23  mark this as I think Defendants' Exhibit 45.
24
25

```
 1                (Defendant's Exhibit No. 45:
 2                Marked for Identification.)
 3
 4   BY MR. SMART:
 5       Q    And showing you what has been marked as
 6   Defendants' Exhibit 45.  Is that a copy of the
 7   subpoena that I had served on you?
 8       A    Yes.
 9       Q    So going back to your representation of
10   Ms. Tilley, when you undertook to represent her,
11   did there come a point in time when you filed a
12   complaint in Superior Court on her behalf?
13       A    Yes.
14       Q    Was that a complaint against Pacer
15   Electronics, Michael Rosa, Summit Partners, and
16   Anixter?
17       A    Yes.
18       Q    Showing you what has been marked earlier
19   as Defendants' Exhibit 29, is that the complaint
20   that you filed on Susan Tilley's behalf against
21   those Defendants I just listed?
22       A    Yes.
23       Q    Did you obtain a preliminary injunction
24   against the Defendants in that action?
25       A    Did I obtain or did I apply for one?
```

1  Q   Two separate questions.  Let me ask you
2  first if you applied for one?
3  A   Yes.  That's attached to the complaint,
4  right?  You're talking about the temporary request
5  for temporary injunction?
6  Q   There's an application for a temporary
7  injunction attached to the complaint, right?
8  A   Right.  I don't recall if it was ever
9  signed, if it got that far or not.  By a judge I
10 mean.  I don't recall if the injunction was ordered
11 or not.
12 Q   But you did go ahead and file for an
13 injunction?
14 A   Yes.
15 Q   That complaint that you filed in that
16 action, it was entitled a verified complaint,
17 correct?
18 A   Correct.
19 Q   Actually in Exhibit 29 right on it, it's
20 entitled verified complaint, right?
21 A   Correct.
22 Q   It's called a verified complaint because
23 it was, it was verified by the plaintiff, correct?
24 A   Correct.
25 Q   You needed to have it verified by the

```
 1   plaintiff in order to apply for an ex parte
 2   preliminary injunction?
 3        A    Correct.
 4        Q    On a page -- five pages from the back of
 5   that exhibit number 29, is a verification, right?
 6        A    Correct.
 7        Q    That bears the signature of Susan Tilley?
 8        A    Yes.
 9        Q    Yes.  And among other things, there's a
10   statement there which is signed by Susan Tilley
11   saying that she has been sworn and that she is
12   affirming and saying that she is the plaintiff in
13   this action and that she has read the entire
14   complaint and that she affirms the alligations and
15   facts set forth in the complaint, right?
16        A    Yes.
17        Q    Okay.  Then there's an attestation there
18   indicating that the document was signed by Susan
19   Tilley and sworn to by Susan Tilley in front of the
20   person who signed the attestation, right?
21        A    Correct.
22        Q    You're the person who actually signed it,
23   right?
24        A    Yes.
25        Q    In your recollection, it was Susan Tilley
```

```
 1   who signed that verification?
 2       A    Absolutely.
 3       Q    I'd like to show you another document.
 4   Let's mark this at as an exhibit, please.
 5
 6                (Defendant's Exhibit No. 46:
 7                 Marked for Identification.)
 8
 9   BY MR. SMART:
10       Q    Showing you now what has been marked as
11   Defendants' Exhibit 46.  Does that say on the front
12   of it that it's the transcript of a continued
13   deposition of Susan Tilley?
14       A    Yes.
15       Q    The date on it is October 6, 2004?
16       A    Yes.
17       Q    You can take whatever time you might want
18   to read the pages from this transcript if you would
19   like.  I would draw your attention specifically to
20   the page that is marked as page 104.  The
21   pagination is a little off.  It appears more in the
22   middle of the page.
23       A    Right.
24       Q    On the page that's marked 103, 104
25   specifically but with reference to the entire
```

```
 1  exhibit, are you aware that Ms. Tilley is
 2  suggesting that you forged her signature on this
 3  verification?
 4       A    I have previously reviewed this, yes.
 5       Q    I will come back to the question of what
 6  documents you have in a second when I revisit the
 7  issue of the subpoena.  So you are aware that she
 8  is suggesting in her deposition, she has suggested
 9  in her deposition rather that you forged her
10  signature on the verification, correct?
11       A    Yes.
12       Q    Is that in fact what happened?
13       A    No.
14       Q    Can you tell me what happened with respect
15  to the signing of this verification in Exhibit 29?
16       A    Yes.  Well, for one thing I can see that
17  she also said that she doesn't remember ever coming
18  into my office and looking at it and raising her
19  hand and swearing on this document is because she
20  didn't ever come to my office.
21            I always, every time I met with her, went
22  to her house.  She never came to Hartford.  I
23  always went to her house.  And she was 100 percent
24  involved with everything that went into that
25  complaint.  All of the information in it I got
```

1  directly from her, and she reviewed it, corrected
2  errors.  I retyped it.  She reviewed it again.  She
3  reviewed it again before she signed that.  She
4  signed it at her house.
5      Q    Thank you.  And when she signed it, you
6  took the oath that is referred to on the page where
7  her signature appears?
8      A    That's correct.
9      Q    Now, in the course of your representing
10 Susan Tilley -- I'm going to backtrack here for
11 just a second to the question of the documents that
12 you had in your file and whether you brought them
13 today and so forth, but in the course of your
14 representing Ms. Tilley, did you keep a file on
15 that representation?
16     A    I did.
17     Q    At some point you withdrew from
18 representing Ms. Tilley, right?
19     A    Correct.
20     Q    At that time point when you withdrew from
21 representing Ms. Tilley, did you keep that file
22 with you or in your possession or control?
23     A    No, I did not.
24     Q    What happened to that file at that point?
25     A    I returned it all to Susan Tilley so she

```
 1  could forward it on to her next attorney.
 2      Q   Did you keep any documents at all at that
 3  point?
 4      A   No, I did not.
 5      Q   Showing you, again, what's been marked as
 6  Defendants' Exhibit 45.  That's the subpoena that I
 7  served on you.  There were document requests sent
 8  to you in connection with that subpoena, right?
 9      A   Correct.
10      Q   At the time that you got this subpoena,
11  did you have any documents responsive to those
12  requests?
13      A   No.
14      Q   What kinds of -- when you were working
15  with Ms. Tilley, what kinds of documents did you
16  keep in your file?
17      A   Well, I don't remember exactly, but I
18  would guess I had notes and the documents that were
19  filed and the fee agreement.
20      Q   There came a point when you --
21      A   And letters, correspondence.
22      Q   Correspondence as well in the file?
23      A   Correct.
24      Q   There came a point where you represented
25  Ms. Tilley with respect to a slightly different
```

1 related matter as well, correct?

2    A    I'm not sure what you're asking.

3    Q    You had -- you filed this, yes, that
4 wasn't a clear question -- I'm sorry.  You filed
5 the complaint, the verified complaint against Pacer
6 and Anixter and Michael Rosa and so forth that's
7 Defendants' Exhibit 29, and then at some point
8 later, a few months later, you filed another motion
9 in Ms. Tilley's divorce case, right, or a couple of
10 motions perhaps it was?

11    A    I have what you sent me that tells me that
12 I did, but I don't really recall doing that.  It
13 was a long time ago.

14    Q    Yes, I understand. Getting back to the
15 question of what documents you had.  Would you have
16 kept one file with all of the documents regarding
17 the different matter in which you represented
18 Ms. Tilley?

19    A    They would have all been in the same file,
20 yes.

21    Q    You didn't hang on to any of those
22 documents?

23    A    No.

24    Q    You gave them all back to Ms. Tilley when
25 you withdrew --

1    A    Correct.
2    Q    -- from representing her?  Do you recall
3 when you withdrew from representing her?
4    A    Not off the top of my head, but I know
5 there's a letter and a motion that will state that.
6    Q    Okay.  And perhaps this will refresh your
7 recollection.
8
9              (Defendant's Exhibit No. 47:
10             Marked for Identification.)
11
12 BY MR. SMART:
13   Q    Showing you now what has been marked as
14 Defendants' Exhibit 47, is that a letter to
15 Ms. Tilley and with an attached motion to withdraw?
16   A    Yes.
17   Q    That's a letter from you?
18   A    Correct.
19   Q    It's a letter and also the motion are
20 dated December 6, 1999?
21   A    Yes.
22   Q    Does that refresh your recollection as to
23 when you withdrew from representing Ms. Tilley?
24   A    Yes.
25   Q    It was about that date?