UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN C. TILLEY, | No. 3:02CV1312 (JCH) |
| Plaintiff, | |
| v. | |
| ANIXTER INCORPORATED, PACER/ANIXTER INC. and DAVID G. TILLEY, | MAY 6, 2005 |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT ON CORPORATE DEFENDANTS' COUNTERCLAIM**

Plaintiff's motion for summary judgment on the Corporate Defendants' Counterclaim must be denied. As discussed in Corporate Defendants' April 15, 2005 motion papers, there is ample evidence that plaintiff knew about her claims in this case prior to signing the June 17, 1998 Release and that the underlying Superior Court action was brought in connection with those claims. See Memorandum of Law in Support of Corporate Defendants' Motion for Summary Judgment, 4/15/05 (Dkt. #67), pp. 5-9, 37-32, and Local Rule 56(a)(1) Statement (Dkt. #68), ¶¶ 8-29. Indeed, plaintiff's own attorney at that time, Beth Rittenband, has testified that, prior to the June 1998 action, plaintiff knew about the alleged concealment of David Tilley's income by Corporate Defendants through diversion of pay from Mr. Tilley to his new wife, Terri Tilley – the very claim underlying the current case – and that the 1998 Lawsuit was actually based on that claim. See, e.g., Rittenband/Deluco Dep. at 26, 31, 33-35, 50-52 (on cross), 55-56, Tab 9 to Corporate Defendants' Local Rule 56(a)(1) Statement, 4/15/05 (Dkt. #68). Attorney Rittenband even testified that that claim was released through the June 17, 1998 Release. See, e.g., id. at 31-

32, 35. This evidence, in conjunction with the language of the Release and the law regarding its interpretation, precludes summary judgment for plaintiff.[1]

## COUNTER-STATEMENT OF MATERIAL FACTS

Because Anixter Inc. and Pacer/Anixter, a Division of Anixter Inc. (collectively, the "Corporate Defendants") have moved for summary judgment with respect to plaintiff's action on the basis of the June 17, 1998 Release (among other grounds), the relevant facts have already been discussed. See Memorandum of Law in Support of Corporate Defendants' Motion for Summary Judgment, 4/15/05 (Dkt. #67), pp. 5-9. However, for the convenience of the Court, those facts are re-stated here.

**Ms. Tilley's First Action Against the Corporate Defendants Based on Alleged Diversion of David's Income to Terri**

By May 1998, Susan Tilley believed she was owed an arrearage on her support payments because she had been paid less than the $360 per week ordered by the divorce court, dating back to the 1994 initiation of the garnishment order against Mr. Tilley's employer, Pacer Electronics

---

[1] Indeed, plaintiff's evidentiary submission conspicuously omits any evidence that plaintiff was ignorant of this claim prior to the June 1998 Lawsuit and Release, despite the empty assertion of counsel to the contrary in plaintiff's brief. Compare Affidavit of Susan C. Tilley, 4/15/05, its attachments, and Plaintiff's Local Rule 56(a)(1) Statement, 4/15/05 (all Dkt. #66), with Plaintiff's Memorandum, 4/14/05, pp. 6-7 (Dkt. #66). Plaintiff's motion papers thus have the ironic effect of confirming the propriety of summary judgment for Corporate Defendants on the grounds of the Release, as requested in Corporate Defendants' own motion for summary judgment. See Corporate Defendants' Motion for Summary Judgment, 4/15/05, (Dkt. #67), and related submissions.

Inc. ("Pacer"). S. Tilley Dep. 10/6/04 at 25-26, Tab 6;[2] Ex. 13,[3] Letter from S. Tilley to Support Enforcement dated May 12, 1998, Tab 7; Ex. 29, Verified Complaint and Temporary Injunction paperwork, <u>Susan Tilley v. Pacer Electronics, et al</u>, Conn. Sup. Ct., 6/8/98, ¶ 12, Tab 4. In or about May 1998, Susan Tilley began working with an attorney, Beth Rittenband (now known as Beth Deluco), seeking assistance in connection with the alleged arrearage. Rittenband/Deluco Dep. at 10, 23-24, 58, Tab 9;[4] Ex. 18, Fee Agreement, 5/29/98, Tab 10.

Ms. Tilley communicated to Attorney Rittenband that the support payment arrearage had developed because Pacer, through Michael Rosa, was diverting some of David's compensation to his new wife, Terri. Rittenband/Deluco Dep. at 23-26, Tab 9. Ms. Tilley had come to the belief that the arrearage was due to this alleged diversion of income by Pacer from David to Terri because "she had been researching and following the business and financial goings on and doings of her ex-husband and her ex-husband's new wife at the time." Id. at 23. According to Ms. Tilley's communications to her attorney in the May-June 1998 time frame, Pacer's diversion of income from David to Terri allowed David to take advantage of a provision of North Carolina law that bars garnishment for family support purposes of more than a certain percentage of the garnishee's income. Id. at 34-35, 50-52 (on cross).

---

[2] Citations to "Tab __" refer to the attachments to Corporate Defendants' Local Rule 56(a)(1) Statement, 4/15/05 (Dkt. #68), unless otherwise indicated.

[3] References to "Ex. __" refer to the exhibits marked by the Corporate Defendants during depositions in this matter, unless otherwise indicated.

[4] Since representing Ms. Tilley, Attorney Rittenband has changed her last name to Deluco. To avoid confusion, we refer herein to the transcript of her deposition as the "Rittenband/Deluco Dep."

3

On the strength of information provided by Ms. Tilley to her attorney concerning Pacer's alleged shielding of David's income, Attorney Rittenband prepared a lawsuit (the "1998 Lawsuit") asserting fraud and contract claims against Pacer and Michael Rosa. Id. at 26, 11, 55-56; Ex. 29, Verified Complaint and Temporary Injunction paperwork, Susan Tilley v. Pacer Electronics, et al, Conn. Sup. Ct., 6/8/98, Tab 4 ("the 1998 Lawsuit"). Anixter Inc. (which was about to acquire Pacer) and Summit Partners, Inc. (a company alleged to have financial interests in Pacer) were also named as defendants. Id.

Based on the information from Ms. Tilley about the alleged income diversion scheme, the complaint filed in June 1998, like the current action, charged Pacer and Rosa with (among other things) fraudulently violating the divorce court's orders and "willfully and wantonly defraud[ing] plaintiff out of money rightfully due her." Id. at ¶¶ 36-38, 41-44. Moreover, Ms. Tilley claimed in the 1998 Lawsuit – as she claims in the instant matter – that as a result of Pacer and Rosa's fraudulent conduct, she lacked sufficient money to provide for the care and well being of her children or pay for their basic living expenses or medical care, that she suffered the loss of her business, and that she sustained severe emotional distress. Id. at ¶¶ 22-26, 31-35, 40, 45.

According to Attorney Rittenband, the foundation of the 1998 Lawsuit was Susan Tilley's claim that Pacer was putting some of David's compensation into Terri's paychecks. Rittenband/Deluco Dep. at 26, 34-35, 11, Tab. 9; Ex. 29, Verified Complaint and Temporary Injunction paperwork, Susan Tilley v. Pacer Electronics, et al, Conn. Sup. Ct., 6/8/98, Tab 4. Attorney Rittenband believed that her communications with Susan Tilley and the information and documentation that she received from Ms. Tilley provided good grounds for the fraud and breach of contract claims in the June 1998 Lawsuit, generally, and specifically, for the underlying

claim that Pacer was improperly transferring income from David to Terri in order to avoid David's child support obligations. Rittenband/Deluco Dep. at 55, Tab 9.

Susan Tilley does not now have a good memory regarding the 1998 Lawsuit. She cannot remember whether she gave Attorney Rittenband any documents as background material during the course of her representation. S. Tilley Dep. 10/6/04 at 66, Tab 6. Ms. Tilley also does not recall seeing or reading the 1998 Complaint, notwithstanding that the June 1998 Complaint includes a Verification bearing the signature of "Susan C. Tilley" and stating that Ms. Tilley had read the entire Complaint. Id. at 114, 95-96; and Verified Complaint and Temporary Injunction paperwork, Susan Tilley v. Pacer Electronics, et al, Conn. Sup. Ct., 6/8/98, Verification page, Tab 4.

Ms. Tilley filed the 1998 Lawsuit against Pacer, Anixter Inc., Michael Rosa, et al. on or about June 8, 1998, shortly before the scheduled acquisition of Pacer by Anixter International Inc. (which is the parent corporation of defendant Anixter Inc.). Rittenband/Deluco Dep. at 11, 21, 24, Tab 9; Ex. 29, Verified Complaint and Temporary Injunction paperwork, Susan Tilley v. Pacer Electronics, et al, Conn. Sup. Ct., 6/8/98, first page, Tab 4. Concurrent with the filing of the Verified Complaint, Susan Tilley applied for a temporary injunction to stop the acquisition. Rittenband/Deluco Dep. at 11-12, 21-22, Tab 9; Ex. 29, Verified Complaint and Temporary Injunction paperwork, Susan Tilley v. Pacer Electronics, et al, Conn. Sup. Ct., 6/8/98, Applic. for Temp. Inj.,Tab 4. Plaintiff chose this time to sue because of defendants' vulnerability based on their desire to complete the acquisition on a timely basis. Rittenband/Deluco Dep. at 21-23, 28, Tab 9.

In filing the action at that time, Attorney Rittenband was following the lead of her client, Susan Tilley, who had been closely tracking the business and financial affairs of Pacer and Anixter, as well as her ex-husband and her ex-husband's new wife. Id. at 23. In fact, counsel for Pacer and Anixter advised Attorney Rittenband that plaintiff had indeed caught them at a vulnerable time, and the defendants quickly settled the matter with a $10,000 payment to plaintiff. Id. at 22, 29; Ex. 30, Release, 6/17/98, Tab 11.

**The June 1998 Release**

In return for the settlement payment, Ms. Tilley released Pacer, Mr. Rosa, Summit Investors III, L.P., Summit Ventures IV, L.P., and Anixter International, Inc. (and related entities, subsidiaries, etc., including defendant Anixter Inc.) from her claims, including any claims concerning alleged masking of David's income through transfer to Terri. Rittenband/Deluco Dep. at 29, 31, 34-35, Tab 9. That Release provided for release of:

> all debts, obligations, suits, actions, causes of actions, trespasses, variances, judgments, extents, executions, damages, claims or demands, in law or in equity, which against [Pacer, Anixter, et al.], the Releasor [Susan Tilley] ever had, now has or hereafter can, shall, or may have, for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these Presents.
> More particularly all claims or demands in law or equity arising or asserted in or in connection with [the action then pending against Pacer, Anixter, Rosa, et al., in Superior Court.]

Ex. 30, Release, 6/17/98, Tab 11.

Significantly, according to counsel for Susan Tilley at the time, this release covered the claim that Pacer had shielded David's income by shifting pay from David to Terri, which, according to her, was the basis of the fraud claims in the 1998 Lawsuit. Rittenband/Deluco Dep. at 26, 34-35, 50-52 (on cross), Tab 9. Susan Tilley herself acknowledges that the language of the

Release provides for the release of Pacer and Anixter from all claims that she had against them at the time of her signing the Release. S. Tilley Dep. 10/6/04 at 111, Tab 6. In this regard, it bears emphasis that prior to signing the Release, Susan Tilley had shared with Attorney Rittenband information about her allegation that Pacer had shifted income rightly payable to David and paid it instead to Terri Tilley, and about her allegation that David Tilley and Michael Rosa had misrepresented David's income during the divorce proceeding. Rittenband/Deluco Dep. at 31, Tab 9.

The June 17, 1998 Release contained an explicit exception as to any claims by plaintiff against David Tilley personally. Ex. 30, 6/17/98 Release, Tab 11; Rittenband/Deluco Dep. at 37-38, Tab 9. Accordingly, following the settlement of the June 1998 Lawsuit against Pacer, Anixter Inc. and Michael Rosa, Ms. Tilley pursued remedies against David in the divorce proceeding for the alleged shielding of David's income through Pacer's diversion of compensation from David to Terri, as described further in Corporate Defendants' April 15, 2005 summary judgment motion papers. See Memorandum of Law in Support of Corporate Defendants' Motion for Summary Judgment, 4/15/05 (Dkt. #67), pp. 10-13; Corporate Defendants' Rule 56(a)(1) Statement, 4/15/04 (Dkt. #68), ¶¶ 30-47.

## ARGUMENT

Plaintiff's motion for summary judgment on Corporate Defendants Counterclaim must be denied. The facts summarized above, in conjunction with the law regarding the construction of the Release, require this outcome.

Plaintiff's argument consists of two interrelated, faulty assertions. First and foremost, her lawyer's brief (in contrast with her affidavit, the attachments to it, or her Local Rule 56(a)(1)

7

Statement of Facts) asserts that she was supposedly not aware of her claim concerning Corporate Defendants' alleged concealment of David Tilley's earnings until August 1999, "over fourteen months after the execution of the Release of June 17, 1998." Plaintiff's Memorandum in Support of Motion for Summary Judgment, 4/14/05 (Dkt. #66), pp. 6-7. Due to her alleged ignorance, the argument goes, she did not release her claim through the June 1998 Release. Id. Second, and relatedly, she asserts that the June 1998 Release is inapplicable to the plaintiff's claim of alleged income concealment because it is limited to the claims associated with the 1998 Lawsuit – during which she supposedly did not know of her claim that Pacer had diverted income from David to Terri. Id. This flawed argument does not come close to warranting summary judgment on Corporate Defendants' Counterclaim.

## I. SUMMARY JUDGMENT FOR PLAINTIFF ON THE COUNTERCLAIM IS PRECLUDED BY THE AMPLE EVIDENCE THAT PLAINTIFF WAS AWARE OF HER CLAIM OF INCOME DIVERSION BY PACER BEFORE THE 1998 LAWSUIT AND RELEASE, AND THAT THE LAWSUIT WAS ACTUALLY BASED ON THAT CLAIM.

The primary problem with plaintiff's argument is the abundant evidence that she was aware of her claim of income diversion by Pacer before the 1998 Lawsuit and Release, and that the fraud claims in that Lawsuit were actually based on that claim. That evidence, which is described above, includes decisive testimony on each of these points by none other than Ms. Tilley's own attorney at the time of the 1998 Lawsuit and Release, Attorney Beth Rittenband.[5]

---

[5] To summarize, Attorney Rittenband testified that, in advance of filing the June 1998 lawsuit, Ms. Tilley had communicated to Attorney Rittenband that the alleged support payment arrearage existed because Pacer was supposedly diverting some of David's compensation to his new wife, Terri. Rittenband/Deluco Dep. 23-26, 31, Tab 9. Attorney Rittenband stated that, according to Ms. Tilley, Pacer's diversion of income from David to Terri allowed David to take advantage of a provision of North Carolina law that bars garnishment for family support purposes of more than a certain percentage of the garnishee's income, allowing the arrearage to develop. Id. at 34-35, 50-52. Thus, according to Attorney Rittenband, while the June 1998 Lawsuit may

That evidence clearly precludes summary judgment for plaintiff on the Release issue, and would do so even if plaintiff had presented countervailing evidence purporting to suggest her ignorance of the diversion claim at the time of the 1998 Lawsuit and Release. See, e.g., Rodriguez v. Connecticut, 169 F. Supp. 2d 39, 43, 46 (D. Conn. 2001) (Hall, J.) (genuine dispute over material fact precludes summary judgment). In fact, notwithstanding the empty claim in counsel's brief, plaintiff has submitted no such evidence. (Her affidavit, the few documents attached to it, and her Local Rule 56(a)(1) Statement of Facts conspicuously omit any claim or other evidence of such ignorance). Far from supporting summary judgment for plaintiff, plaintiff's submission thus has the ironic effect of confirming that summary judgment should be granted for Corporate Defendants on the release issue.

II.  **THE 1998 RELEASE, PROPERLY CONSTRUED, CONSTITUTES A GENERAL RELEASE, WHICH BARS THE INSTANT ACTION BECAUSE OF PLAINTIFF'S AWARENESS OF HER CLAIMS WHEN SHE EXECUTED THE RELEASE.**

Moreover, nothing plaintiff says about the scope of the Release changes this conclusion. Plaintiff is correct that a release is a contract, and its construction is therefore guided by the well established principles applicable to interpreting contracts. See, e.g., Tallmadge Brothers, Inc. v.

---

have focused on the arrearage, the basis of the fraud claims in the 1998 Lawsuit was that Pacer, Michael Rosa and David Tilley had defrauded plaintiff of support payment by diverting David's income to Terri – exactly the alleged conduct at issue in this case. Id. at 11, 26, 55-56; Ex. 29, Verified Complaint and Temporary Injunction paperwork, Susan Tilley v. Pacer Electronics, et al., Conn. Sup. Ct., 6/8/98, ¶¶ 36-38, 41-44, Tab 4. Indeed, Attorney Rittenband stated that she believed her ethical obligation to have good grounds for the 1998 Lawsuit was satisfied by the information from her client regarding the alleged diversion of income from David to Terri to assist the former in avoiding support payments. Rittenband/Deluco Dep. at 55, Tab 9. These facts establish conclusively that the June 1998 release applies to the claim at issue here.

Iroquois Gas Transmission System, L.P., 252 Conn. 479, 498 (2000).[6] However, plaintiff is incorrect about the implications of this rule for the matter at hand. Applied properly, the relevant principles of construction dictate the conclusion that the Release bars the instant action.

Although the Release's closing lines refer "more particularly" to "all claims or demands in law or equity arising or asserted in or in connection with" the 1998 Lawsuit, Ex. 30, Release, 6/17/98, Tab 11, that reference does not detract from the generality of the Release or its applicability to this action, as plaintiff claims. This "more particularly" reference is tagged on at the end of the Release, following very broad, general release language. That earlier text explicitly provides for Ms. Tilley's "remise, release, and discharge" of Pacer and Anixter "from all debts, obligations, reckonings, . . . controversies, suits, actions, causes of actions, trespasses . . . damages, claims or demands, in law or in equity," which Ms. Tilley "ever had, now has or

---

[6] "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact ... [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." Levine v. Massey, 232 Conn. 272, 277, 654 A.2d 737 (1995) (citations omitted; internal quotation marks omitted). In other words, in the absence of ambiguity, the question of the parties' intent is properly answered by reference to the terms of the contract itself:

> [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms.

Pesino v. Atlantic Bank of New York, 244 Conn. 85, 91-92 (1998). In addition, the Connecticut appellate courts "have frowned on interpreting a contract in a way that renders a clause in the contract mere surplusage and inoperative." Patron v. Konover, 35 Conn. App. 504, 518, cert. denied, 231 Conn. 929 (1994).

10

<u>hereafter can, shall or may have, for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these Presents.</u>" Ex. 30, Release, 6/17/98, Tab 11 (emphasis added). As noted in Corporate Defendants' summary judgment brief, 4/15/05 (Dkt. #67, Attachment 2), pp. 31-32, the courts have long recognized that a release structured in this manner, with general release language followed by a "more particularly" reference to a specific matter, remains a general release despite the specific reference. See, e.g., <u>Murphy v. City of New York</u>, 190 N.Y. 413, 83 N.E. 39 (N.Y. 1907) ("the general principle of construction" is that release remains a general release where the words of limitation follow the general release language); <u>Dunbar v. Dunbar,</u> 71 Mass. 103, 5 Gray 103, 105 (Mass. 1855); <u>Slayton v. Hemken,</u> 36 N.Y.S. 249, 250-51 (N.Y. Gen. Term, 1895).

To restate our analysis in our earlier brief, this construction is demanded by the rule that releases, as contracts, are to be read in terms of the "common, natural, and ordinary meaning and usage" of the language therein. <u>Pesino v. Atlantic Bank of New York</u>, 244 Conn. 85, 91-92 (1998). Given the structure of the text and the ordinary meaning of the word "particularly," as the equivalent of "especially" or "in particular," this interpretation is the only plausible construction. Thus, as stated by the Court of Appeals of New York in construing a very similar release:

> [W]e have the word "particularly" qualifying the limiting sentence, and that word is frequently used as meaning "especially." Giving to it this definition, we have the words of general release followed by the sentence which fairly may be construed and paraphrased as "being especially a release and discharge" of [the specifically enumerated claims]. So read, the sentence would not operate as a limitation of the release to the date in question, but would amount to an especial mention of, or a specific reference to [the specifically enumerated claims].

<u>Murphy</u>, 190 N.Y. at 416.

Moreover, this construction is the only one that gives meaning to all parts of the release. If the "more particularly" clause limits the release to only the claims explicitly stated in the June 1998 complaint, not only the general release language becomes surplusage; the specific exception in the release as to "claims Susan Tilley may have directly against David Tilley," Ex. 30, Release, 6/17/98, Tab 11, who was not a defendant in the June 1998 lawsuit, would also become meaningless surplusage. Because Connecticut's appellate courts "have frowned on interpreting a contract in a way that renders a clause in the contract mere surplusage and inoperative," Patron v. Konover, 35 Conn. App. 504, 518, cert denied, 231 Conn. 929 (1994), the current construction of plaintiff's counsel must be rejected.[7]

In short, the June 17, 1998 Release is a general release, notwithstanding the reference "[m]ore particularly" to the 1998 Lawsuit. As such, it bars the claim of income concealment pursued by plaintiff against Corporate Defendants in the instant matter. It is well established that a general release is valid as to all claims of which a signing party is aware at the time of signing – and even to those that she could have discovered upon reasonable inquiry. See, e.g., Fair v. Int'l Flavors & Fragrances, Inc., 905 F.2d 1114, 1116 (7th Cir. 1990); Walker v. Asea Brown Boveri, Inc., 214 F.R.D. 58, 66 n. 6 (D. Conn. 2003); cf. Finz v. Schlesinger, 957 F.2d 78, 83 (2d Cir.), cert. denied, 506 U.S. 822 (1992) ("a plaintiff who has settled a claim for fraud may not subsequently assert that he or she is not bound by the settlement because the extent of the fraud was not fully disclosed"). Because the evidence establishes that Ms. Tilley knew the basis of her

---

[7] Indeed, Ms. Tilley herself admits that the release covered all claims of which she had knowledge, to the date of signing. S. Tilley Dep. 10/6/04 at 111, Tab 6.

12

claims in the instant lawsuit at the time she signed the general release (let alone that she could have discovered them upon reasonable inquiry), it bars her from pursuing the instant action.

### III. EVEN IF THE ONLY OPERATIVE LANGUAGE OF THE RELEASE WERE THE "MORE PARTICULARLY" PHRASE REFERRING TO THE 1998 LAWSUIT, PLAINTIFF WOULD STILL NOT BE ENTITLED TO SUMMARY JUDGMENT ON THE COUNTERCLAIM.

Finally, even if plaintiff were correct that the only operative language of release is the "[m]ore particularly" phrase referring to the 1998 Lawsuit, plaintiff would still not be entitled to summary judgment on the release issue. Once again, the primary problem is the testimony of Ms. Tilley's own attorney handling the 1998 Lawsuit, Attorney Rittenband, who stated explicitly that Ms. Tilley's claim of income diversion by Pacer from David to Terri Tilley was the very basis of the fraud claims asserted in the 1998 Lawsuit. See, e.g., Rittenband/Deluco Dep. at 23-26, Tab 9. The "[m]ore particularly" phrase in the Release refers to "more particularly all claims or demands in law or equity arising . . . or in connection with [the action then pending against Pacer, Anixter, Rosa, et al. in Superior Court]"). Ex. 30, Release, 6/17/98, Tab 11 (emphasis added). Attorney Rittenband's (uncontradicted) testimony concerning the linkage between the 1998 Lawsuit and Ms. Tilley's claims that the Corporate Defendants concealed David's income by shifting it to his new wife establishes the applicability of this release language to the those claims. Because those claims are the very claims at issue here, plaintiff clearly cannot obtain summary judgment on Corporate Defendants' Counterclaim, even if one could ignore everything in the release except the "more particularly" clause.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment on Corporate Defendants' Counterclaim should be denied.

13

DEFENDANTS
ANIXTER INC. and PACER/ANIXTER, A
DIVISION OF ANIXTER INC.

By: _____
James R. Smart  (ct20982)
Steven D. Ecker  (ct03762)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT  06103
(860) 278-5555
(860) 249-0012 Fax
E-mail: jsmart@cemlaw.com

-- Their Attorneys --

## **CERTIFICATION**

This is to certify that I caused a copy of the foregoing to be sent on May 6, 2005, via U.S. mail, first-class, postage pre-paid to all counsel of record as follows:

Robert B. Muchinsky, Esq.
39 Russ Street
Hartford, CT 06106

William M. Bloss, Esq.
Koskoff, Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, CT 06604

Robert A. Nagy, Esq.
Assistant Attorney General
Office of the Attorney General
55 Elm Street
Hartford, CT 06106

_____
James R. Smart