FILED

UNITED STATES DISTRICT COURT 2005 JUN -b P 4: 39
DISTRICT OF CONNECTICUT

US DISTRICT COURT
BRIDGEPORT CT

| | | |
|---|---|---|
| Susan C. Tilley, | : | **Civil Action Number** |
| Plaintiff | : | **3:02cv1312(JCH)** |
| | : | |
| v. | : | |
| | : | |
| Anixter Incorporated, | : | |
| Pacer/Anixter, Inc., and | : | |
| David G. Tilley, | : | |
| Defendants. | : | June 4, 2005 |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

The plaintiff, Susan Tilley, submits the following Memorandum in Opposition to Defendant's Motion for Summary Judgment.

### INTRODUCTION

The plaintiff, Susan C. Tilley filed this tort action alleging that the defendants, Anixter Inc., Pacer/Anixter, Inc., and her former, husband David G. Tilley conspired to and did alter the records of Mr. Tilley income and in doing so intentionally caused plaintiff emotional distress.

### STATEMENT OF THE CASE

There is significant dispute as to the following material facts.

Robert B. Muchinsky, Attorney At Law ~Federal Bar No. CT12702
39 Russ Street ♦ Hartford CT 06106 ~ Tel 860-297-0037 ~ Fax 860-297-0040

1.    **Tilley Divorce and Mr. Tilley's Employment with Pacer**

On October 18, 1994, Susan C. Tilley and David G. Tilley were divorced in the State of
Connecticut Judicial District of Hartford. (Complaint ¶11). Prior to plaintiff's divorce, her ex-
husband worked for IMS in Manchester, Connecticut. (Susan Tilley Affidavit ¶4). David Tilley
began working for Pacer Electronics in January of 1994. (David Tilley Deposition, p. 8). On
October 18, 1994, the Superior Court of the State of Connecticut, dissolved the marriage of
David and Susan Tilley and required that Mr. Tilley pay $100.00 per week in Alimony and
$260.00 per week in child support. In the summer of that same year, Superior Court ordered a
wage garnishment requiring Pacer to garnish David Tilley's wages in the amount of $360.00 per
week in order to pay plaintiff's order of support.

2.    **Ms. Tilley's First Actions against the Corporate Defendants based on
insufficient garnishment of David Tilley's wages.**

On or about October 18, 1994, Susan Tilley began receiving checks from Pacer in the
amount of $311.46. (Verified Complaint, S. Tilley Aff., Tab 10). For 81 weeks from the period
that Pacer was under court order to garnish David Tilley's wages and to pay plaintiff a weekly
amount of $360.00, Pacer paid the plaintiff, $311.46 weekly, $48.54 less than the court ordered
amount (Id. at 10). In May 19, 1998, Plaintiff hired Attorney Beth Rittenband (now Beth Deluca)
to help her receive the correct amount of weekly support. (S. Tilley Aff. ¶10). The plaintiff was
only hiring Attorney Rittenband in 1998 to collect the money from the wrongful withholding of

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

her ex-husband's wage garnishment. (S. Tilley Aff. ¶17). Nowhere in the June 1998 Verified

Complaint, (S. Tilley Aff. at Tab 10) is there any mention of the diverting of income.

In May or June of 1998, Anixter was about to acquire Pacer Electronics. Edward

Stephens, the President of IMS, called Plaintiff and told her about the upcoming merger between

the two companies. (Tilley ¶7). There is no claim for severe emotional distress in the June 1998

Verified Complaint. (S. Tilley Aff. at Tab 10). Attorney Rittenband did not have any

information regarding the fact that Pacer was putting some of David's compensation into his wife

Terri's paycheck in May or June 1998. One year later, when she was filing motions to modify

and motions for contempt, she had not yet gotten information from Anixter which she reportedly

received in August of 1999. She stated in her deposition that the motions language were "broad

so that when we got to court we could argue whatever we came up with for proof of whether or

not there was any difference in what he said at the time and whether or not we could show that it

had increased or whatever". (Rittenband Deposition p. 52-53). She had no proof of any

diversion of David Tilley's income to Terri Tilley until August of 1999.

### 3.    The June 1998 Release.

The June 1998 lawsuit was about a shortfall of $48.54 on 81 weeks of child support and

alimony payments that Pacer Electronics withheld from the plaintiff.    (Deposition of Attorney

Rittenband p. 49). This is also primarily what the settlement was about. (S. Tilley Aff. ¶10). The

release provided that Susan Tilley would release the corporate defendant, among others:

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT  06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

> "from all debts, obligations, suits, actions, causes of actions,
> trespasses, variances, judgments, extents, executions, damages,
> claims or demands, in law or in equity, which against [Pacer,
> Anixter, et al.], the Releasor [Susan Tilley] ever had, now has or
> hereafter can, shall or may have for, upon or by reason of any
> matter, cause or thing whatsoever, from the beginning of the world
> to the day of the date of this Presents. More particularly, all claims
> or demands in law or equity arising or asserted in or in connection
> with [the action then pending against Pacer, Anixter, Rosa, et al.,
> in Superior Court." (Id at Tab 17).

This release was operative "from the beginning of the world to the day of the date of these

presents". The events complained of occurred after June 17, 1998. Anixter did not appear in

the plaintiff's life until May or June 1998. (S. Tilley Aff. ¶7).

### 4.     Tilley's 1998 Assertions Regarding the Conduct Alleged in This Case.

Susan Tilley was always suspicious of the reported earnings by David Tilley to various

Courts and authorities before, during and after her divorce. She knew that her ex-husband was

capable of earning significant sums of money and thought something strange was going on with

his income but did not know exactly what. All of her efforts to find the facts were frustrated by

the lack of true information. (S. Tilley Aff. ¶6). The plaintiff did send a letter to Support

Enforcement Division of Connecticut Superior Court on July 9, 1998. (Defendants Tab 13 to its

Local Rule 56(a) 1 Statement, S. Tilley Aff. ¶18). Support Enforcement Division replied to the

Plaintiff  and stated that "… your information was outdated…" (Id. ¶17). This was the same

information she had received at the time of her divorce in 1994. (Id. 8).

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT  06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

5.    **Ms. Tilley's Pursuant in the Divorce Action For Modification and Contempt.**

In February of 1999, Plaintiff hired Attorney Rittenband, once again, this time to modify her child support orders. When she did, she showed her the same outdated information she had provided to Support Enforcement on July 9, 1998, the information she had received in 1994 at the time of her divorce. (S. Tilley Aff. 18). In the motions prepared by Attorney Rittenband, a Motion for Modification of Orders and Order to Show Cause dated April 19, 1999 (Tab 15 to Corporate Defendant's Local Rule 56(a) 1 Statement) and a Motion for Contempt and Order to Show Cause dated April 19, 1999 (Tab 14 to Corporate Defendant's Rule 56(a) 1 Statement), it does not state anywhere in either of those motions anything about a diversion of compensation from David Tilley to his current spouse.    While Attorney Rittenband in her deposition said she had good grounds to bring these two motions, she also stated in her deposition that the language of her motions dated April 19, 1999 was stated broadly so that when she got to court she could argue whatever proof she came up with. (Rittenband Depo. 52-53). Attorney Rittenband at the time of filing the motions did not have the proof she needed. In order to get the proof she needed, Attorney Rittenband, on August 2, 1999, served the Custodian of Records for Pacer Electronics, A Division of Anixter Inc., with a Subpoena and Notice of Deposition. The subpoena required Pacer Electronics, A Division of Anixter, Inc. to produce:  any and all records, documents, papers, and memoranda regarding David Tilley, social security number (redacted) and Theresa Tilley, social security number (redacted) including but not limited to Salaries,

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

wages, draws, bonuses, sick pay, pensions or retirement plans, 401K, savings plans, life

insurance and any other benefits provided from the date of employment to the present. (S. Tilley

Aff. ¶12). Anixter withheld significant documents from its response tot Attorney Rittenband's

subpoena of August 2, 1999. In its response it provided the following:

1.   W-2s and payroll records for David Tilley for the years 1994
through 1998.

2.   W-2s and payroll records for Terri Tilley for the years 1994 through
1998.

3.   Anixter's payroll records for David Tilley for the period from
January 1, 1999 through August 7, 1999.

4.   Anixter's payroll records for Terri Tilley for the period from
January 1, 19999 through August 7, 1999.

5.   Anixter's Employee Savings Plan statement of account for David
Tilley for the first two quarters of 1999.

6.   Anixter's Employee Savings Plan statement of account for Terri
Tilley for the first two quarters of 1999.

7.   Anixter's Benefits Booklet explaining various Anixter benefit plans.

(Tab 19, Tilley Aff.). Anixter at that time failed to provide the payroll documents, dated October

7, 1998, regarding a branch bonus along with a copy of an email regarding that same bonus from

Karen Ward to David Tilley dated October 5, 1998. (S. Tilley Aff. Tab 11). Anixter also failed

to provide a copy of an email dated January 28, 1999 that discusses bonus payouts for David

Tilley. (S. Tilley Aff. Tab 12). Anixter also failed to provide a copy of the information regarding

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

David Tilley's payroll information that was provided to North Carolina Support Enforcement Authorities which incorrectly reported his net wages. (S. Tilley Aff. Tab 13). Anixter also failed to provide a summary of information regarding David and Terri Tilley's income dated June 2, 1999. (S. Tilley Aff. Tab 14). Anixter also failed to provide a copy of an email dated February 22, 1999 discussing David Tilley's bonuses and David and Terri Tilley's compensation. (S. Tilley Aff. Tab 15). And finally Anixter failed to provide a copy of a payroll record report sent to North Carolina Enforcement dated February 17, 1999. (S. Tilley Aff. Tab 16). The preceding information was not received by the plaintiff, despite the fact that it was requested in Attorney Rittenband's subpoena dated August 2, 1999, until discovery in the instant case in November 2004. (S. Tilley Aff. ¶13).

### 6. Susan Tilley Made Adequate Bankruptcy Disclosures

Susan Tilley made disclosure in her bankruptcy petition regarding two claims that she believes she had that were contingent and un-liquidated at the time of her petition. Those claims were a claim against her ex-husband for back child support and a claim against her ex-husband's employer. (S. Tilley Aff. ¶19). She also made a claim for exemption which was mislabled as a claim against her ex-husband and ex-husband's employer for back child support. While Susan Tilley's claim against her ex-husband's employer was not specifically identified as a "tort" claim. (S. Tilley Aff., Tab 20 at 966), the claim was listed in her bankruptcy petition.

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

While bankruptcy was pending, plaintiff was pursuing a Motion for Contempt and Motion for Modification of Orders against her ex-husband in order to increase the amount of her child support (Tab 23 and 24 of Corporate Defendant's Local Rule 56(a) 1 Statement). These motions had absolutely nothing to do with Plaintiff's bankruptcy petition as child support is exempt from bankruptcy under 11 U.S.C. §522 (d)(10)(D).

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

### 7. The Instant Action

Nowhere in the Verified Complaint of June 1998 is there a claim for Emotional Distress. (S. Tilley Aff. Tab 10). Plaintiff has been frustrated over her years at attempting to provide for her children because of the diversion of income from David Tilley to his wife and the fact that she was never able to get access to correct payroll documents until August of 1999 and November of 2004. (Tilley Aff. ¶20, 5, 6, 12 and 13). The stressed caused to plaintiff by Anixter due to its concealment of the true income of her ex-husband included chest pains, depression, anxiety, stomach problems and constant fear and worry about the ability to feed, cloth and house her family. (Id. ¶ 20). Karen S. Devassy, M.D. described in her deposition, some of the ways in which that stress has manifested itself in the plaintiff. Ms. Tilley is a patient of Dr. Devassy. (Devassy Depo. at p. 11). Dr. Devassy described a stomach condition that the plaintiff was suffering from on September 24, 2001. (Id. 51-54). The plaintiff complained of chest pains and palpitations to Dr. Devassy and Dr. Devassy noted that it was significant enough for her to note it in her records. (Id. 56-58). The Plaintiff was experiencing some kind of stomach problem that was related to bacteria, and Dr. Devassy stated that it could be made worse by stress and that people under stress have lots of physical problems. (Id. at 62-63). The plaintiff was suffering from chest pains and Dr. Devassy's professional judgment was that it was related to anxiety or depression. She had a lot of anxiety associated with stress and stress is causing chest pain as well, this occurred in September 2001. (Id. at 79). In May of 2003, Dr. Devassy

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

noted that the plaintiff's chest pain was not cardiac related, it was related to anxiety. (Id. at 88). Dr. Devassy stated that the plaintiff experiences anxiety in a long term basis. (Id. at 92-93). Dr. Devassy further stated that there was a legal process as well as the underlying cause that was causing the plaintiff stress. (Id. at 121-123). Dr. Devassy recalled in her deposition that even though she sees thousands of patients a year, she remembers a discussion about the plaintiff's former husband's employer and that the plaintiff was very anxious about her former husband's employer and that it registered strong with Dr. Devassy otherwise she would have forgotten about it. (Id at 122). Others have reported behaviors that are of the type of behavior that Dr. Devassy described as stress. Rebecca Harris in her deposition stated that she saw signs of stress in Sue with depression and tearing and getting emotional and has seen more in the last few years as the kids get older. (Rebecca Harris Deposition at 83). Ms. Harris also noted that the plaintiff has been more stressful since the Spring of 1999. (Id. at 87). And that at her husband leaving for another women, the biggest stress in her life has been financial. (Id. at 100).

Nathan Tilley, the plaintiff's son, during his depositions noted that he believes that the amount of money being concealed by his father is enough to upset his mother and enough to make a difference in their lives. (Nathan Tilley Deposition at 15). The plaintiff's brother Michael Cavasino noted in his deposition that he saw her taking prescriptions for anxiety. (Michael Cavasino Deposition at 66). Valerie Slayton during her deposition stated that she

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

remembers seeing the plaintiff having chest pains as plaintiff was cutting her hair. (Valerie Slayton Deposition 136-137).

## ARGUMENT

### I.    PLAINTIFF'S CLAIM IN THE INSTANT MATTER WAS ABANDONED BY THE TRUSTEE IN BANKRUPTCY

#### A.    <u>Plaintiff Has Standing to Prosecute This Case</u>

The issue is whether the plaintiff, whose debts were discharged under Chapter 7 of the federal bankruptcy law, has standing to bring a tort cause of action that accrued prior to the commencement of the bankruptcy proceeding. Pursuant to 11 U.S.C. § 541(a)(1), the commencement of a bankruptcy case under Chapter 7 "creates an estate that is comprised of 'all legal or equitable interests of the debtor in property as of the commencement of the case.'··· Once a Chapter 7 petition is filed, the trustee becomes the proper party to maintain a cause of action on behalf of the debtor." *New Milford Savings Bank v. Jajer,* 44 Conn.App. 588, 592 n. 4, 691 A.2d 598 (1997), reversed on other grounds, 244 Conn. 251, 708 A.2d 1378 (1998).   When a debtor commences a bankruptcy proceeding  pursuant to 11 U.S.C. § 541(a)(1), all property of the debtor, including choses in action and pending suits, becomes the property of the bankruptcy estate and comes under the exclusive control of the bankruptcy trustee.  By virtue of 11 U.S.C. § 554(d), this property remains part of the estate unless and until the trustee abandons the lawsuit back to the debtor.   "Property of the estate includes causes of action belonging to the debtor

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

which accrued prior to the filing of the bankruptcy petition." *Seward v. Devine,* 888 F.2d 957, 963 (2d Cir.1989).

Section 554 of the Bankruptcy Code establishes three methods by which property may be abandoned back to the debtor. "First, § 554(a) empowers the trustee, after hearing and notice and without court approval, to abandon expressly any estate property that lacks substantial value or is burdensome to maintain. Second, § 554(b) allows the Bankruptcy Court to order abandonment after hearing and notice. Third, § 554(c) provides for the automatic abandonment of any unadministered estate property, which was scheduled under § 521(1), upon the closing of the estate without court approval or hearing. Any unadministered property which was not abandoned in accordance with any of the three methods described above remains part of the estate under § 554(d)." *Willis v. Ribiero,* Superior Court, judicial district of Windham at Putnam, Docket No. CV91043057 (May 30, 1996, Sferrazza, J.).

"Code §704 (1) provides that a trustee is required to collect and reduce the money the properties estate for which every trustee serves. Indeed, the trustee is bound to exercise, "due diligence" and to discharge his duties and other code." See *Henry Reinboth* 157 F. 672, 674 (2nd Cir. 1907).

In the instant matter, Susan Tilley in her bankruptcy petition listed three contingent or unknown liquidated claims on schedule B to her petition. (S. Tilley Aff., Tab 20). She listed the possible right to a tax refund for 1999, she listed a claim against her ex-husband for back child

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

support and she listed a claim against her ex-husband's employer.  Susan Tilley knew that she had a claim against her ex-husband's employer at the time of her bankruptcy petition because she had received documents which indicated a diversion of income in August of 1999.  Many of the physical and emotional conditions that she suffered as a result of the defendants actions were reported by Dr. Devassy in her deposition and they are after the filing of the plaintiff's bankruptcy petition.  Dr. Devassy described that the plaintiff was suffering from a stomach condition from September 24, 2001.  (Devassy Depo. at 51-54).  The plaintiff also suffered from chest pains and in Dr. Devassy's professional judgment was that it was related to anxiety or depression.  Plaintiff had a lot of anxiety so she was stressed and the stress was causing chest pains in September of 2001 (Id. at 79).  In May of 2003, Dr. Devassy noted further chest pains being suffered by the Plaintiff and that testing was related to anxiety.  (Id. at 88).

Plaintiff did not conceal or not list the claims against her ex-husband's employer.  The trustee in bankruptcy, John J. O'Neil, Jr., made a diligent inquiry into the financial affairs of the debtor, Susan Tilley.  (Corporate Defendants Local Rule 56(a) 1 Statement, Tab 28).  An exercise of due diligence would have found that the Susan Tilley statement represented two claims, a claim against her ex-husband for back child support and a claim against her ex-husband's employer.  Connecticut General Statute §46b-84 and 46b-215 puts the obligation for support of minor children on parents, not employers.

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT  06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

The trustee's actions constituted abandonment on the claim that Susan Tilley had her ex-husband's employer under Section 554(c) of the Bankruptcy Code which provides the automatic abandonment of any unadministered state property, which was scheduled on their Section 521(a), upon the closing of the state without court approval or hearing.  Susan Tilley then retained control of her claim against Anixter and as standing to bring the instant action.

### 1.     Judicial estoppel is inappropriate in the instant case.

The doctrine of judicial estoppel applies to a party who has successfully and unequivocally asserted a position in a prior proceeding; he is estopped from asserting an inconsistent position in a subsequent proceeding.... Judicial estoppel ... is intended to protect the integrity of the judicial process ... The essential function of judicial estoppel is to prevent intentional inconsistency; the object of the rule is to protect the judiciary, as an institution, from the perversion of judicial machinery.... Judicial estoppel addresses the incongruity of allowing a party to assert a position in one tribunal and the opposite in another tribunal. If the second tribunal adopted the party's inconsistent position, then at least one court has probably been misled." *United States v. Starrett City Associates*, 605 F. Supp. 262, 264 (E.D. N.Y. 1985) citing *Edwards v. Aetna Life Insurance Company,* 690 F.2d 595, 598-599 (6th Cir.1982) (citations omitted).

The essential function of judicial estoppel is to prevent intentional inconsistency; the object of the rule is to protect the judiciary, as an institution, from the perversion of judicial

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT  06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

machinery. *See Allen v. Zurich Ins. Co.*, 667 F.2d at 1167; *Konstantinidis v. Chen*, 626 F.2d at 939.

Its essential function and justification is to prevent the use of "intentional self-contradiction ... as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Allen v. Zurich Insurance Company Co.*, 667 F.2d 1162, 1167, *Scarano v. Central R. Co.*, 203 F.2d at 513.

*In re Galerie des Monnaies of Geneva, Ltd.*, 55 B.R.253, 260, the Court found that intentional misconduct is a necessary element to a claim for judicial estoppel. *See Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 n. 6 (8th Cir.1987) (finding that judicial estoppel requires a "knowing misrepresentation to or even fraud on the court"); *In re Neptune World Wide Moving, Inc.*, 111 B.R. 457, 461 (Bankr.S.D.N.Y.1990).

Susan Tilley did not engage in any intentional actions or misconducts in order to conceal her cause of action against Anixter or to misrepresent it to the court. At the time of her bankruptcy petition she did not know how the claim was going to be filed against Anixter, and she told Attorney Neil Ossen, her bankruptcy lawyer, what the claim was and he listed it as is on Schedule B. She did not fail or neglect to disclose her claim in bankruptcy. (S. Tilley Aff. ¶19). Certainly there were no intentional actions on her part to conceal her claim or mislead the court in any way. In fact her claim is listed on her bankruptcy petition. (S. Tilley Aff., Tab 20). It is listed in the way that she knew it at the time, as a claim against her ex-husband's employer.

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT  06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

## II.    THIS ACTION IS NOT BARRED BY THE STATUTE OF LIMITATIONS

### A.    This action is not time barred by the statute of limitations

Susan Tilley may have been suspicious that something was gong on with her husband's income because of the fact that she knew him and she knew what his earning capabilities were (S. Tilley Aff., ¶6), however, she never had any evidence that anything unusual was going on until she received the payroll documents in August of 1999 pursuant to the Subpoena of Attorney Beth Rittenband. The only documents Susan Tilley had that related to her husband's income where documents she received during her divorce in 1994. (Id. at 5). Susan Tilley contacted Support Enforcement many times in an attempt to learn what was going on with her husband's income. On August 6, 1998, State of Connecticut Support Enforcement told her that her information was outdated (S. Tilley Aff., Tab 17).

Connecticut General Statute § 52-577 provides a three year statute of limitations for a claim of Intentional Infliction of Emotional Distress. In late August or early September 1999, Ms. Tilley received a documents from Anixter, Inc. pursuant to a subpoena issued by Attorney Beth Rittenband dated August 2, 1999. Providing the first evidence of payroll diversion from David Tilley to Terri Tilley. The instant suit was filed on July 30, 2002, within the three year statute of limitations.

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

**B.    Fraudulent concealment.**

This is not time barred by the statute of limitations because the defendant concealed the true payroll information from the plaintiff and Support Enforcement authorities in the States of North Carolina and Connecticut. In fact, we now find out through discovery that additional documents were concealed from the plaintiff until November of 2004. Anixter in response to the Subpoena issued by Attorney Beth Rittenband on August 2, 1999 did not produce all of the documents requested. Those documents (Tab 11, 12, 13, 14, 15 and 16 to the Affidavit of Susan Tilley) describe how David Tilley's income was misreported to Support Enforcement authorities and how it was manipulated and diverted to his wife, Terri Tilley.

Connecticut General Statutes § 52-595 provides that "if any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefore at the time when the person entitled to sue thereon first discovers its existence."

"Under our case law," our Supreme Court has noted, to prove fraudulent concealment, the plaintiff is required to show: (1) a defendant's actual awareness, rather the imputed knowledge, of facts necessary to establish the plaintiff's cause of action; (2) that defendant's intentional concealment of these facts from the plaintiff[ ]; and (3) that defendant's concealment of the facts for the purpose of obtaining delay on the plaintiff ['s] part in filing a complaint on [its] cause of action. *Colwell v. Colwell,* 214 Conn. 242, 250-51, 571 A.2d 116 (1990); *Bound Brook Assn. v.*

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT  06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

*Norwalk,* [198 Conn. 660], 665-66 [504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S.Ct. 81, 93

L.Ed.2d 36 (1986)]; *Lippitt v. Ashley,* 89 Conn. 451, 480, 94 A. 995 (1915). *Bartone v. Robert L.*

*Day Co.,* 232 Conn. 527, 533, 656 A.2d 221 (1995).

The fact that defendants concealed the payroll documents provided in Tabs 11-16 of the

S. Tilley Affidavit and that these documents show the extent of the manipulation and diversion of

David Tilley's income to the determent of the plaintiff demonstrates the defendants' actual

awareness of the facts necessary to establish the plaintiff's cause of action. It is indisputable the

that the corporate defendant concealed these facts from the plaintiff in that Anixter Incorporated

in responding to a subpoena in August of 1999 did not produce these documents until November

of 2004. Defendant was put on notice by the June 1998 complaint that the regularities had been

occurring in complying with the court order to garnish from the wages of David Tilley, $360.00 a

week. From that time of this disclosure of the diversion of income, between David Tilley and his

wife in August of 1999 and filed two documents with North Carolina authorities that did not

represent the true earnings of David Tilley. Anixter's action in the concealment of the true

earnings of David Tilley caused the delay of the plaintiff in bringing this action until she had the

true facts. Plaintiff has adequately plead in its complaint that the defendant, David G. Tilley,

Pacer Anixter, Inc,. and Anixter Incorporated combined to conceal David Tilley's true earnings

from the plaintiff by altering payroll records and by attributing David Tilley's payroll records to

his wife, Terri Tilley, and the wife's income to Mr. Tilley. (Complaint ¶21).

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

Therefore this actions is not time barred by the statute of limitations for the additional reason that the defendant, Anixter Inc., fraudulently concealed the information necessary to the cause of action.

## III.    THE INSTANT ACTION IS NOT BARRED BY THE JUNE 1998 RELEASE

In June of 1998, plaintiff filed an action in the Connecticut Superior Court entitled *Susan C. Tilley v. Pacer Electronics, Inc.* et al. docket number CV98-580578-S. (S. Tilley Aff. ¶3). That matter was settled for $10,000 and the plaintiff signed a release on June 17, 1998. The release was in the form of a general release and it provided that Susan Tilley would release the corporate defendants among others:

> "from all debts, obligations, suits, actions, causes of actions, trespasses, variances, judgments, extents, executions, damages, claims or demands, in law or in equity, which against [Pacer, Anixter, et al.], the Releasor [Susan Tilley] ever had, now has or hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of this Presents. More particularly, all claims or demands in law or equity arising or asserted in or in connection with [the action then pending against Pacer, Anixter, Rosa, et al., in Superior Court."

"It is well settled that a, being release a contract whereby a party abandons a claim to a person against whom that claim exists, is subject to rules governing the construction of contracts.... The intention of the parties, therefore, controls the scope and effect of the release, and this intent is discerned from the language used and the circumstances of the transaction.... It

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

is similarly stated that a release, no matter how broad its terms, will not be construed to include claims not within the contemplation of the parties ... and, where the language of the release is directed to claims then in existence, it will not be extended to cover claims that may arise in the future...." *Chubb v. Amax Coal Co.,* 125 Ill.App.3d 682, 80 Ill. Dec. 917, 466 N.E.2d 369 (1984).

"Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." *Barnard v. Barnard,* 214 Conn. 99, 109-10, 570 A.2d 690 (1990).

"Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Gateway Co., v. DiNoia,* 232 Conn. 223, 229, 654 A.2d 342 (1995).

In the instant action the release provided by the plaintiff to Anixter is in the form of a general release. The present action concerns damages resulting from the emotional distress suffered by the plaintiff caused by Anixter's concealment of David Tilley's true earnings which prevented Plaintiff from receiving the proper amount of support and caused her much difficulty. The Plaintiff had learned of the concealment of her former husband's wages in August of 1999. Due to the concealment of information by Anixter Incorporated she learned of additional efforts

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

to divert her ex-husbands wages in November 2004. The date of the release was June 17, 1998. Anixter's actions continued well beyond June 17, 1998. Anixter concealed the true income of David Tilley causing it to be falsely reported to Support Enforcement authorities in both North Carolina and Connecticut. In fact, the concealment of their efforts to divert David Tilley's income continued until November 2004. The June 1998 actions had to do with a shortfall of weekly child support payments of $48.54 per week. (Rittenband Depo. p. 49). The instant action arises out of a different set of facts first discovered over 14 months after the execution of the release of June 17, 1998. "This construction of the release [as limited to claims in existence at the time of the release] is further justified by considerations of public policy regarding the effect of the release on the parties' future relationship. As noted in legal commentary on the subject of releases, a release covering all claims that might later arise between the parties 'would plainly be against public policy." H. Havighurst "Principles of Construction and the Parole Evidence Rule as Applied to Releases," 60 Nw. U.L. Rev. 599, 611 (1965).

The actions complained of occurred after the execution of the release. To bar the plaintiff from pursuing recovery against Anixter for those actions of 1999 and beyond would be against public policy.

## IV.    PLAINTIFF HAS A VALID CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The tort of intentional infliction of emotional distress has been recognized and *Murray v.*

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

*Bridgeport Hospital,* 40 Conn. Sup. 56, 62, 480 A.2d 610 (1984), provides appropriate guidelines for determining whether a successful cause of action will lie. "In order for the plaintiff to prevail in a case for liability under. . . [the intentional infliction of emotional distress], four elements must be established.  It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe. *Petyan v. Ellis*, 200 Conn. 243, 253.  Whether the alleged misconduct is sufficient to satisfy these elements is initially a question of law for the court. *See Mellaly v. Eastman Kodak Co.,* 42 Conn.Supp. 17, 18, 597 A.2d 846 (1991).

"[T]he rule which seems to have emerged is that there is liability for conduct exceeding *all bounds* usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Emphasis added.) Prosser & Keeton, Torts (5th Ed.) § 12, p. 60. Petyan at 253.   Liability has been found only when the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, 'Outrageous!' *Scandura v. Friendly's Ice Cream Corp., Inc.,* No. CV 930529109S, 1996 WL 409337. The

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

court should conclude that there remains a disputed issue of material fact with respect to whether the defendant's alleged conduct, if found to have occurred, was sufficiently extreme and outrageous as to constitute the intentional infliction of emotional distress.

Anixter should have known that diverting David Tilley's income to his wife, Terri Tilley, and concealing that fact and misreporting it to authorities in order to accomplish David Tilley's goal of paying his children less money each month would cause of emotional distress to the plaintiff. This type of conduct is outrageous and against public policy. The conduct was so outrageous that it caused Dr. Karen Devassy to remember a conversation she had with the plaintiff about her ex-husband's employer out of the thousands of conversations she has every year with her patients. (Devassy Depo at 122). Anixter's conduct was the cause of the plaintiff's distress in that Dr. Devassy stated in her deposition that she recalled that even though she sees thousands of patients a year, she remembers a discussion about the plaintiff's former husband's employer and that plaintiff was very anxious about her former husband's employer and that it registered strongly with Dr. Devassy otherwise she would have forgotten about it. (Devassy Depo 122). Dr. Devassy also reported about the severity of the plaintiff's emotional distress that she had a lot of anxiety associated with stress and that stress was causing chest pains in September 2001. (Id. at 79).

Plaintiff has established the four elements of intentional infliction of emotional distress.

## A.     Anixter's Actions Are Not Protected By Any Privilege.

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

With regard to the common law privilege for communications and judicial proceedings, Plaintiff repeats its argument of November 20, 2003.

Most statements made by participants in a judicial proceeding enjoy a privilege. "It has long been established that there is an absolute privilege for statements made in judicial proceedings. *Briscoe v. Lahue*, 460 U.S. 325, 331-32. "There is a long standing common law rule that communications uttered or published during the course of judicial proceedings are absolute privileged so long as they are in some way pertinent to the subject of the controversy. …The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." *Petyan v. Ellis*, supra, 200 Conn. at 243, 246, 510 A.2d 1337.

The privilege can even extend to the pleadings and documents of the case.

"The common law privilege itself does not confine to the testimony of a witness but extends to any statement made in the course of a judicial proceeding, whether or not given under oath, so long as its pertinent to the controversy… thus it applies to statements made in pleadings or other documents prepared in connection with a court proceeding." *Petyan* at 251-252.

"Witnesses and parties to judicial proceedings must be permitted to speak freely, without subjecting their statements and intentions to later scrutiny by an indignant jury, if the judicial process is to function…. While no civil remedies can guard against lies, the oath and the fear of

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT  06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

being charged with perjury are adequate to warrant an absolute privilege for a witness' statements." *DeLaurentis v. New Haven*, 220 at 225, 264.

The privilege may also be extended to case preparation. "The right of private parties to combine and make presentations to an official meeting and, as a necessary incident thereto, to prepare materials to be presented is a fundamental adjunct to the right of access to judicial and quasijudicial proceedings. To make such preparations and presentations effective, there must be an open channel of communication between the persons interested and the forum, unchilled by the thought of subsequent judicial action against such participants; provided always, of course, that such preliminary meetings, conduct and activities are directed toward the achievement of the objects of the litigation or other proceedings." *Kelley v. Bonney*, 221 Conn. 549, 573-74.

In *Circuit Circuit Hotels, Inc. et al v. Jerry Witherspoon*, 99 NEV. 56 (1983), a letter from Mr. Witherspoon's former employer to the Unemployment Security Department that accused the plaintiff Witherspoon of embezzling from the casino was found to be absolutely privileged.

However as one becomes more removed from a judicial or quasijudicial procedure, the protection of the doctrine of absolute privilege begins to erode. In *Walsh v. Consolidated Freightways, Inc.*, 563 E.2d 1205 (OR 1977) the Court held that a former employer has a privilege to make otherwise defamatory communications about the character or conduct of former employees to present or prospective employers, as they have a common interest in the

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

subject matter of the statements, however, the privilege was determined to be qualified and conditional.

In *David Galligan v. Edward D. Jones & Company* et al. 2000 WL 1785041, a Connecticut Superior Court case, Judge Levin found that where there is no pending or impending quasijudicial proceeding, only a qualified privilege exists regarding comments made on a document filed with the National Association of Security Dealers and The New York Stock Exchange, two groups that monitor the activities of security dealers, concerning a former security dealer.

In *Heim v. California Federal Bank,* 78 Conn. App. 351, (2003) the Connecticut Appellate Court found the doctrine of Absolute Judicial Immunity did not apply and did not bar plaintiff's claim for intentional infliction of emotional distress (although it was defeated on other grounds). The court found that some of the allegations in the case were based on non-verbal conduct that occurred outside the scope of judicial proceedings concerning the collection activities of a law firm prosecuting a foreclosure.

In the present matter, Anixter engaged in acts well removed from the judicial forum. Anixter, while not a party to any judicial or quasijudicial proceeding, altered the payroll records of the Defendant, David G. Tilley and his wife Terry Tilley. Anixter's actions set in motion a plan so that some time in the future, when it became necessary to report Mr. Tilley's income to a judicial proceeding or otherwise, a clerk could inquire of the payroll records and make his report

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

as to Mr. Tilley's income to the said judicial, quasijudicial authority or other authority. Those

safeguards used to justify the existence of the privilege such as penalties for perjured testimony

or statements or scrutiny of pleadings made in ongoing litigations would never confront the type

of conduct employed by Anixter. As in *Hiem v. California Federal Bank*, Anixter's actions were

based on non-verbal conduct that occurred outside the scope of judicial proceedings and the

common law privilege does not apply.

## CONCLUSION

Therefore because of all of the foregoing the Defendants Motion for Summary Judgment

should be denied.

Respectfully submitted,
**The Plaintiff,**
**Susan C. Tilley**

By: _____
Robert B. Muchinsky
*HER ATTORNEY*
39 Russ Street
Hartford, CT 06106
Telephone: (860) 297-0037
Federal Bar No. CT12702

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040

## CERTIFICATION

I hereby certify that a true and correct copy of the foregoing was mailed, postage pre-paid to the parties and counsel of record on June _15_, 2005.

**Defendant,**
**Anixter Inc. & Pacer/Anixter**

Steven D. Ecker, Atty.
Cowdery, Ecker & Murphy, LLC
750 Main Street
Hartford, CT 06103
Federal Bar No. ct03762

**Defendant**
**David G. Tilley**

William M. Bloss, Esq.
Kosskoff, Kosskoff & Beider
PO Box 1661
Bridgeport, CT 06604

**Filing Location:**

Clerk of Court
U.S. District Court
915 Lafayette Boulevard
Brigeport, CT 06604

ROBERT B. MUCHINSKY

Robert B. Muchinsky, Attorney at Law ■ Federal Bar No. CT12702
39 Russ Street, Hartford, CT 06106 ■ Tel: 860-297-0037 ■ Fax: 860-297-0040