UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN C. TILLEY, | No. 3:02CV1312 (JCH) |
| Plaintiff, | |
| v. | |
| ANIXTER INCORPORATED, PACER/ANIXTER INC. and DAVID G. TILLEY, | JUNE 20, 2005 |
| Defendants. | |

## CORPORATE DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

DEFENDANTS
ANIXTER INC. and PACER/ANIXTER, A DIVISION
OF ANIXTER INC.

James R. Smart (ct20982)
Steven D. Ecker (ct03762)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103
(860) 278-5555
(860) 249-0012 Fax
E-mail: jsmart@cemlaw.com

Plaintiff cannot raise a genuine issue of material fact in opposition to any of the bases for summary judgment set forth by the Corporate Defendants. Accordingly, as explained further below, summary judgment should enter in defendants' favor.

## I. PLAINTIFF CANNOT AVOID THE BAR ON HER ACTION ARISING FROM THE FAILURE TO DISCLOSE THE INSTANT CLAIM IN BANKRUPTCY.

Plaintiff fails in her attempt to avoid the bar against her action arising from her nondisclosure of the instant claim in her 2000 bankruptcy proceeding. She tries to save her case from the impending jurisdictional and estoppel problems by asserting that she adequately disclosed her tort claim for intentional infliction of emotional distress through her petition's reference to a claim for "child support" valued at $1. P's Opp. Br. 6/4/05 at 11-15.[1] However, this argument suffers from two independently fatal but interrelated problems: (1) notwithstanding plaintiff's attempts to skew the picture, the claim for "child support" disclosed in the bankruptcy petition was just that – a claim for child support – and not a tort claim for intentional infliction of emotional distress; and (2) if the claim pursued by plaintiff now really is the child support claim that plaintiff disclosed in bankruptcy, this action is barred by the rule against federal jurisdiction over domestic relations matters. See, e.g., Friedlander v. Friedlander, 149 F.3d 739, 740 (7th Cir. 1998) ("The core [of the domestic relations exception] is occupied by cases in which the plaintiff is seeking in federal . . . court . . . child support"); American Airlines, Inc. v. Block, 905 F.2d 12, 14 (2nd Cir. 1990).

Given the claims made by plaintiff earlier in this case, her current argument is deeply ironic. The Corporate Defendants earlier moved for dismissal on the basis of the domestic relations exception to diversity jurisdiction. Corp. Ds' Mtn. to Dis. & Mem. of Law 10/2/02 (Dkt. 10, 11). Defendants argued that the action should be dismissed on that basis because it effectively sought child support payments.

---

[1] Page references to plaintiff's brief are to the version submitted to the Clerk's Office and available through the on-line docket. Comparison of that document with the version of the brief served on defendants reveals numerous discrepancies, including differences in pagination.

See, e.g., id. at 8-9. Plaintiff responded that her claims, including her claim for intentional infliction of emotional distress, should survive on the grounds that they were distinct tort claims, supposedly entirely different from a claim for child support: "**Plaintiff's Claims are for Damages Because of the Tortious Actions of Anixter/Pacer and not for Support Payments.**" P's Br. in Opp. to Ds' Mtn to Dis. 11/12/02 (Dkt. 16) at 10 (bold in original, underlining added). Although the Court dismissed Counts I and II (for fraud and conspiracy), Ruling 9/19/03 (Dkt. 23) at 1, the Court at that time accepted plaintiff's argument with respect to the infliction of emotional distress claim in Count III, reasoning that this tort claim was distinct from a claim for support payment. See, e.g., id. at 12.

Plaintiff simply cannot have it both ways. As noted in our main brief, she cannot simultaneously claim that her emotional distress claim is distinct from the issue of child support for jurisdictional purposes under the domestic relations exception to federal jurisdiction, but identical to the issue of child support for jurisdictional purposes under the laws governing bankruptcy disclosures. See Corp. Ds' Br. 4/15/05 at 20 n.12. One way or the other, plaintiff's claim is jurisdictionally defective.

Plaintiff's opposition papers only further support granting summary judgment in favor of defendants. She makes two significant admissions that bolster the conclusion that the claim for "child support" disclosed by plaintiff in bankruptcy was just that – a claim for child support arising out of the divorce case – and not a tort claim such as that pursued here.

First, plaintiff acknowledges that the bankruptcy petition explicitly asserted an exemption for the "child support" claim, and that it specified 11 U.S.C. § 522(d)(10)(D) as the basis for that exemption.[2] Significantly, this subsection provides an exemption not for any tort claims, but rather specifically for domestic support payments. See 11 U.S.C. § 522(d)(10)(D) (exempting from bankruptcy estate "the debtor's right to receive ... alimony, support or separate maintenance, to the extent reasonably necessary

---

[2] See P's R. 56(a)(2) Statement, 6/6/05, ¶ 55; Ex. 31, S. Tilley Bankruptcy Petition 6/8/00 Sched. C ("Property Claimed as Exempt") at 000966, Tab 26 to Corp. Ds' R. 56(a)(1) Statement.

2

for the support of the debtor and any dependent of the debtor"). The claim, in other words, was not merely presented as a claim for "child support" through unfortunate phrasing of the disclosure, as plaintiff now suggests; Ms. Tilley unambiguously urged the Bankruptcy Court to exempt the claim, and did so on the grounds that it constituted a claim for support payments in the family case. The jurisdictional and estoppel implications for her current claim are inescapable.

Second, plaintiff acknowledges that the characterization of the claim in the bankruptcy proceeding was insufficient. She repeatedly states that the claim was "mislabeled" and "mistakenly listed" by her own counsel as a child support claim. P's Opp. Br. 6/4/05 at 7; P's Rule 56(a)(2) Statement, ¶ 54, pp. 9-10. Although her goal is clearly to divert blame onto her attorney, that effort constitutes an implicit admission that her disclosure was inadequate. Notwithstanding the attempt to blame her prior attorney, it is axiomatic that plaintiff is bound here by the inadequate disclosure submitted by her attorney in her name. Any remedy for the alleged attorney error lies elsewhere.[3]

Finally, plaintiff relies on the ridiculous assertion that the mere identification of Mr. Tilley's employer as a potential subject of the claim rendered the listing a sufficient disclosure of the current tort claim for intentional infliction of emotional distress, because the trustee supposedly should have realized that an employer has no liability for child support. P's Opp. Br. 6/4/05 at 13-14. The immediate

---

[3] Relatedly, plaintiff makes a set of admissions which defeat her effort to excuse the inadequate disclosure. She of course admits that she knew of her claim against Corporate Defendants no later than August 1999 – approximately one year before her bankruptcy filing. See P's Opp. Br. 6/4/05 at 13; Complaint at ¶ 15. (She actually had sufficient notice of it much earlier, as discussed below.) She admits that she was represented at the time not only by bankruptcy counsel, but also by Attorney Muchinsky – the attorney asserting the instant emotional distress claim on her behalf in this proceeding. P's R. 56(a)(2) Statement 6/6/05 at ¶ 59. She admits that through Mr. Muchinsky, she contemporaneously pursued claims in the divorce court regarding the alleged shifting of income by Pacer from David to Terri. Id. She further acknowledges that her bankruptcy petition represented that her proceeding was a "no asset" case, id. at ¶ 49, and that she never amended her bankruptcy petition to correct either the "no asset" representation or the failure to disclose the tort claim – notwithstanding the active, informed awareness of her claim which must be attributed to her, given her retention of counsel in connection with the income concealment issue. Id. at ¶ 52.

3

problem with this argument is that it is based on a glaring legal error: In truth, an employer <u>can</u> be the subject of a claim for child support. <u>See</u> C.G.S. § 52-362(f) (creating employer liability for child support payments where there is a garnishment order, as there was in this case).[4] Accordingly, when the trustee, the Bankruptcy Court or Ms. Tilley's creditors saw the disclosure of a claim for "child support" against Mr. Tilley and his employer, and saw the reference to 11 U.S.C. § 522(d)(10)(D) (which provides an exemption for child support payments) as the basis for the asserted exemption, they had absolutely no reason to think the disclosure actually connoted a tort claim – or any claim other than what it purported to be, namely, a claim for child support payments.[5]

The bottom line is that plaintiff did not disclose in her bankruptcy proceeding any tort claim at all. The claim that was disclosed was only a claim for "child support," and if that is the claim pursued here, it is barred by the domestic relations exception to diversity jurisdiction. Confronted with this insurmountable jurisdictional dilemma, plaintiff's main response is a lame attempt to blame someone

---

[4] Section 52-362(f) provides that "If an employer . . . fails to withhold from income due an obligor pursuant to an order for withholding or fails to make those payments, such employer . . . is liable to such person for the full amount of income not withheld . . . and the amount secured in the action shall be applied by such person toward the arrearage owed by the obligor. Such employer . . . shall be subject to a finding of contempt by the court or family support magistrate for failure to honor such order for withholding . . . ." C.G.S. § 52-362(f). The withholding order in the Tilley dissolution case is presented at Tab 3 to Corp. Ds' R. 56(a)(1) Statement.

[5] Plaintiff's argument would be preposterous even if employers were not potentially liable for child support, given the explicit characterization of the claim as one for "child support," and given the explicit assertion of a child support exemption, 11 U.S.C. § 522(d)(10)(D). Essentially, plaintiff blames the trustee for failing to understand that her unambiguous representations (through counsel) that she had only an exempted claim for back child support actually meant she had an nonexempt tort claim for intentional infliction of emotional distress. To state this absurd argument is to defeat it. Plaintiff wants the Court to relieve her of her burden to make a full and careful disclosure of her assets. 11 U.S.C. § 521(1); <u>see, e.g.</u>, <u>King v. Harry</u>, 131 F. Supp. 252, 254 (D.D.C. 1955) (because the sections of the bankruptcy code "requiring correct scheduling are for the benefit of the creditors and not the debtor, a bankrupt must exercise great care to schedule his assets . . . properly"). She seeks to replace her obligation with a burden on the trustee to determine that plaintiff means the opposite of what she represents. Plaintiff's reliance on such a desperate argument only emphasizes that she has no viable response on the bankruptcy disclosure issue.

else for her problems.[6] "The burden of demonstrating trustee abandonment of estate property is on the party claiming abandonment." Willis v. Ribiero, No. CV 910043057, 1996 WL 798738, *2-3 (Conn. Sup. May 30, 1996) (Tab 8 to P's Opp. Br. 6/4/05) (no automatic abandonment of civil claims where such claims were not scheduled, even where trustee knew of claims from other sources). Plaintiff cannot meet that burden. Her claim for intentional infliction of emotional distress must be dismissed.

## II.  THE CLAIM DOES NOT SURVIVE STATUTE OF LIMITATIONS SCRUTINY.

Plaintiff also cannot escape the operation of the three year statute of limitations applicable to this action. C.G.S. § 52-577. Plaintiff seems to argue that the claim is not time-barred because: (1) she allegedly did not have proof of the supposed payroll diversion until August 1999, a date less than three years from the July 30, 2002 initiation of the instant action, P's Opp. Br. 6/4/05 at 16; and (2) defendants supposedly engaged in fraudulent concealment of the facts of plaintiff's case to delay her pursuit of a remedy, insofar as defendants allegedly withheld certain documents in responding to plaintiff's subpoena in the dissolution action in August 1999. P's Opp. Br. 6/4/05 at 17-19. These arguments fail for many reasons, but the following three factors, alone, render them insufficient to block summary judgment.

First, plaintiff cannot escape the simple fact of her representations to the Connecticut Judicial Branch in 1998, more than three years before the filing of the instant action, that she was certain

---

[6] Plaintiff also makes a half-hearted attempt to suggest that her alleged health problems, and therefore her claims, only arose after the bankruptcy petition. P's Opp. Br. 6/6/05 at 13, 9-11, and attachments 3-7 thereto. This "argument" is nothing but a pretext intended to distract the Court with immaterial allegations. It should simply be ignored. First, plaintiff's "evidence" is merely described in (and attached to) plaintiff's brief, with no reference in any aspect of the Rule 56 statement. It is not presented in accordance with Local Rule 56, and it should be stricken from consideration on that basis alone. If the Court is inclined to consider this material, we would point out that plaintiff has steadfastly asserted that she knew of her claim by August 1999 (a year before her bankruptcy), id. at 13; Complaint, ¶ 15, and she has consistently maintained that her claim extends to years before that time. S. Tilley Aff. 6/6/05 ¶ 20; Complaint, ¶¶ 11-13, 27-29. Indeed, plaintiff's alleged health problems undisputably arose long before her ex-husband even began his employment with Pacer. See, e.g., Devassey Dep. 51-54, attachment 3 to P's Br. (alleged stomach condition dated back to late 1980s); Ex. 55, Letter from Dr. Wan to Dr. Buckman, 9/16/92, Tab 1 hereto (reporting Ms. Tilley's alleged cardiac symptoms in 1992).

5

defendants were engaged in exactly the misconduct alleged here. For example, in July 1998, she wrote a letter to the Support Enforcement Unit of the Superior Court asserting that "His [her ex-husband's] employer [Pacer] is masking his income, I am positive of it." Ex. 11, S. Tilley Letter to Support Enforcement 7/9/98 at 1689 (emphasis added), Tab 13 to Corp. Ds' R. 56(a)(1) Statement. A short time later she called the same unit and asserted unreservedly that "RESP [DAVID TILLEY] AND EMPLOYER (MIKE ROSA, CEO OF PACER . . .) ARE CONSPIRING TO DIVERT INCOME BY PAYING RESP CURRENT SPOUSE." Sup. Enf. Cs. Note, 12/1/98, Ex. 14 to Aff. of Tim Broderick 2/10/05, Tab 12 to Corp Ds' R. 56(a)(1) Statement. Unsurprisingly, plaintiff has nothing to say about the certainty with which she conveyed her earlier accusations. These statements,[7] four years before the filing of this action, doom plaintiff's case.

In light of her clear, contemporaneous assertions and claims of certainty to the Connecticut Judicial Branch, the protestations in her current affidavit that she earlier had only vague suspicions concerning her claims are beyond reasonable belief. Her self-serving avowals do not raise a genuine issue of material fact. See, e.g., Radobenko v. Automated Equip. Corp., 520 F.2d 540, 544 (9th Cir. 1975) (plaintiff could not defeat "summary judgment motion where the only issue of fact results from the necessity of choosing between the plaintiff's two conflicting versions"); Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572 (2d Cir. 1991) (self-serving affidavits contradicting prior statements will not defeat a motion for summary judgment); Jeffreys v. Rossi, 275 F. Supp.2d 463, 476-77 (S.D.N.Y. 2003).

---

[7] Plaintiff necessarily admits she made these statements. P's Opp. Br. 6/4/05 at 4 ("The plaintiff did send a letter to Support Enforcement division of Connecticut Superior Court on July 9, 1998"); P's R. 56(a)(2) Statement 6/6/05 at ¶¶ 32-34. Plaintiff's admissions on the respective Rule 56(a)(1) assertions include a stray denial that plaintiff had proof of any diversion of income at the time. See, e.g., id., ¶¶ 33, 34. These assertions should be disregarded because – like most of plaintiff's R. 56(a) denials – they are not properly substantiated by evidentiary references in conformity with Local Rule 56(a)(2)-(3). They are also immaterial and unresponsive to anything in Corporate Defendants' original Rule 56(a)(1) assertions.

Second, whatever the basis of plaintiff's knowledge of her claims in 1998 and 1999, we know that it was enough to justify initiation of legal action – because plaintiff herself initiated such action. Indeed, as explained in our original motion papers, plaintiff actually pursued legal action twice on the basis of this knowledge, once through the 1998 Lawsuit against Pacer, Anixter et al. and once through the April 1999 motions for contempt and modification filed by her attorney, Beth Rittenband, in the dissolution action. See Corp. Ds' Br. 4/15/05 at 25-27, and evidence cited therein. Due to space limitations, we focus here solely on the April 1999 motions in the dissolution action.

We know beyond dispute that the April 1999 motions were based on the supposed diversion of income by Pacer from David to Terri Tilley because, among other reasons: (1) the attorney who handled the motions on behalf of Ms. Tilley has testified that they were based on the alleged income diversion, and that information from Ms. Tilley regarding that allegation constituted her good-faith basis for bringing the motions; Rittenband/Deluco Dep. at 38-39, 45, 55-56, Tab 9 to Corp. Ds' R. 56(a)(1) Statement; and (2) that attorney's contemporaneous correspondence records her assertion that information about Terri and David Tilley's income from Pacer was "central" to the pending motions. See Ex. 50, Letter from Beth Rittenband to Steven Ecker 6/11/99, Tab 17 to Corp. Ds' R. 56(a)(1) Statement.[8] (Indeed, <u>that correspondence alone, which was written in June 1999, defeats plaintiff's action on statute of limitations grounds. See id.</u>) Plaintiff does not, and cannot, contend that the April 1999 motions were based on anything else, because she admittedly cannot remember what Attorney Rittenband was asserting through the April 1999 motions or what she was doing in connection with

---

[8] Plaintiff unavoidably admits that Attorney Rittenband testified that the claims of income diversion were the basis of the April 1999 motions. See P's R. 56(a)(2) Statement, 6/6/05, ¶ 41, p. 9. Plaintiff purports to deny that Attorney Rittenband called the income issue "central" to her pending motions (or "essential," as it was inadvertently written in our original brief). Id. ¶ 44. However, her explanation of the denial is so garbled as to be incomprehensible, and the only evidence cited is the very evidence upon which we rely, namely Ms. Rittenband's letter. Id.

7

them. S. Tilley Dep. 10/6/04 at 49, 52, 53, 65, 66, Tab 6 to Corp. Ds' R. 56(a)(1) Statement; P's R. 56(a)(2) Statement, ¶ 42.[9] The indisputable fact that the motions filed in April 1999 were based on the very allegations pursued here dooms plaintiff's action on statute of limitations grounds.[10]

---

[9] Plaintiff does suggest that the text of the motions makes no reference to a diversion of income. See P's R. 56(a)(2) Statement at ¶ 39. This claim is of no moment, however, because the language of the motions is entirely consistent with Attorney Rittenband's current and contemporaneous characterizations of the motions as concerning the alleged income diversion. See, e.g., Ex. 15, Motion for Contempt, 4/19/99 ("defendant's actual income was . . . considerably greater than that which he reported at the time of said orders. . . defendant has committed fraud in the reporting of his income"), Tab 14 to Corp. Ds' R. 56(a)(1) Statement.

[10] Plaintiff erroneously assumes that firm knowledge or proof of her claim is necessary to start the statute of limitations clock. However, Connecticut follows the rule that (where plaintiff's state of mind is relevant, as with a fraudulent concealment claim) the clock starts when "plaintiff discovers or should discover, through the exercise of reasonable care," the basis of her injury. See, e.g., Mountaindale Condominium Association, Inc. v. Zappone, 59 Conn. App. 311, 323 (2000). The actual or constructive discovery of "some form of actionable harm, not the fullest manifestation thereof" starts the clock. Id. "The focus is on the plaintiff's knowledge of facts rather than applicable legal theories." Id. "The clock begins to tick when a plaintiff senses 'storm warnings,' not when he hears thunder and sees lightning." Merrill Lynch v. Mathes, No. 0126054, 1995 WL 534247, *7 (Conn. Sup. Sept. 1, 1995) (West, J.) (quoting Jensen v. Snellings, 636 F. Supp. 1305, 1309 (E.D. La. 1986), aff'd in relevant part, 841 F.2d 600 (5th Cir. 1988)). Thus, where fraudulent concealment is alleged, plaintiff is charged with constructive or inquiry notice, starting the limitations clock, when she has grounds for suspicion regarding the facts of her claim. Id.; Mountaindale, 59 Conn. App. at 327-28; Forbes v. Eagleson, 19 F. Supp.2d 352, 358, 375-6 (E.D. Pa. 1998), aff'd, 228 F.3d 471 (3rd Cir. 2000).

Plaintiff clearly crossed the line more than three years before initiating this action, as shown by her contemporaneous words (e.g., "his employer is masking his income, I am positive of it") and her contemporaneous actions (e.g., initiating motions in divorce case based on alleged diversion of income); see also P's July 1998 Letter to Support Enforcement Division of Superior Court, Ex. 11, Tab 13 to Corp. Ds' R. 56(a)(1) Statement (listing numerous bases of plaintiff's suspicions); S. Tilley Aff. 6/6/05 at ¶¶ 5, 6, 8, 9, 14 (same); Ex. 12, Letter from Support Enforcement to S. Tilley 6/2/98, Tab 8 to Corp. Ds' R. 56(a)(1) (explaining that support arrearage on wages garnished from Pacer arose because, given David's salary level and the 40% garnishment ceiling under North Carolina law, the total due could not be garnished, prompting Ms. Tilley to write: "Is he stating that he is still earning the same amount of money as he was 5 years ago?"); Investigative Report on Terri Tilley obtained by plaintiff on or about October 20, 1998, Ex. 14, Tab 31 to Corp. Ds' R. 56(a)(1) Statement (report includes information on Terri Tilley's assets, prompting Susan to note that "she [Terri Tilley] purchased this home days after our divorce, in her name," that Terri also owned two vehicles and a yacht, and that "all assets [of David and Terri Tilley] are in her name"); S. Tilley Dep. 10/6/04 at 39-41, Tab 6 to Corp. Ds' R. 56(a)(1) Statement. Susan Tilley undeniably believed she was seeing stark "storm warnings."

Third, and finally, plaintiff's resort to a claim of fraudulent concealment is completely unavailing. The fundamental problem is that, as a matter of law, any tolling available under the fraudulent concealment doctrine ends when plaintiff knows or has reason to know of the basis of her claim. See Mountaindale, 59 Conn. App. at 327-28, and other authorities cited infra, footnote 10 and in Corp. Ds' Br. 4/15/05 at 24-25 n. 16. There can be no genuine dispute that plaintiff knew (or should have known) the basis of her claim by the time of her mid-1998 representations to Support Enforcement – or by the filing of the April 19, 1999 dissolution motions, at the latest. The three-year limitations period therefore expired in mid-2001 – or April 2002, at the latest. Yet, notwithstanding that she was represented by various counsel (including her counsel in the instant case) in connection with this same issue of the alleged concealment of Mr. Tilley's income, Ms. Tilley failed to bring the action until the end of July 2002. The fraudulent concealment doctrine does not salvage plaintiff's action.[11]

### III. PLAINTIFF CAN OVERCOME NEITHER THE BAR POSED BY THE RELEASE NOR THE BAR POSED BY THE COMBINATION OF LACK OF CAUSATION AND THE ABSOLUTE PRIVILEGE.

Abruptly shifting her approach on the issue of the June 17, 1998 Release, plaintiff now argues that the Release does not bar her action because "[t]he actions complained of [supposedly] occurred after the execution of the release." P's Opp. Br. 6/6/05 at 21. This argument is no more successful than those advanced in support of her motion for summary judgment on the counterclaim, which she has evidently abandoned.[12] Contrary to plaintiff's current assertion, "the actions complained of" consist of an alleged

---

[11] Moreover, plaintiff's entire fraudulent concealment argument is based on alleged concealment after the date when even plaintiff admits she discovered her cause of action. Compare Complaint at ¶ 15 (alleging plaintiff learned of claim through August 1999 discovery in divorce case) and S. Tilley Aff. 6/6/05 at ¶¶ 12-13 (same); with P's Opp. Br. 6/4/05 at 17-19 (arguing that fraudulent concealment occurred because defendant supposedly did not turn over all responsive documents at time of that same August 1999 discovery). This argument is wildly off the mark.

[12] Plaintiff had argued in her motion for summary judgment on Corporate Defendants' Counterclaim that the Release did not bar the current action because she supposedly did not know

9

scheme to conceal income going back to 1994. See, e.g., Complaint, ¶¶ 11-13. Because plaintiff indisputably knew of the basis of this claim prior to execution of the general release (and given her apparent acknowledgment of that fact, see footnote 12), the claim is now barred.

Finally, plaintiff does not, and cannot, identify any evidence suggesting that any non-privileged conduct of Corporate Defendants could have caused her any harm. Indeed, plaintiff seems to entirely miss the point of defendants' last argument. The common law privilege for communications connected to a judicial proceeding, Petyan v. Ellis, 200 Conn. 243, 245 (1986), means that claims about harm from low support awards are not actionable, because the privilege would shield any conduct that could have brought about those low awards. Recognizing this constraint, the Court earlier indicated that plaintiff's claim could survive only if plaintiff could prove that, "as a result of learning about the falsification of the payroll records, she suffered severe emotional distress." Ruling 5/20/04 at 8 (Dkt. 38). However, plaintiff fails entirely to address the point raised by the Court's earlier ruling. Indeed, because she has acknowledged that she has not been harmed by learning about the alleged falsification of records, but only by the economic impact of the allegedly low support award itself, there is nothing she could say to save her action on this point. P's R. 56(a)(2) Statement, ¶ 63. Accordingly, summary judgment should enter against her.

## CONCLUSION

For the foregoing reasons, summary judgment should enter in favor of Corporate Defendants.

---

anything about her income concealment claim until after the execution of the Release, and because the Release, by its terms, was supposedly strictly limited to the claims specifically articulated in the June 1998 Lawsuit. P's Br. 4/14/05 (Dkt. 66). Having now admitted that she had (at least) serious suspicions concerning the alleged income concealment before the 1998 Lawsuit, S. Tilley Aff. 6/6/05 at ¶¶ 4-9, having failed to produce any evidence to counter Attorney Rittenband's testimony that the 1998 Lawsuit was based on the alleged concealment of income, and having admitted that the Release is a general release barring all claims against Corporate Defendants that she had at the time of execution, P's Br. in Opp. 6/6/05 at 20; P's R. 56(a)(2) Statement at ¶ 27, plaintiff has apparently abandoned the arguments in support of her summary judgment motion.

DEFENDANTS
ANIXTER INC. and PACER/ANIXTER, A DIVISION
OF ANIXTER INC.

By: _____
James R. Smart  (ct20982)
Steven D. Ecker  (ct03762)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT  06103
(860) 278-5555
(860) 249-0012 Fax
E-mail: jsmart@cemlaw.com

-- Their Attorneys --